# EXHIBIT D

Minutes of January 17, 2006 meeting of WMI Board of Directors

Minutes of January 17, 2006 meeting of WMB Board of Directors

Minutes of February 17, 2006 meeting of WMI Board of Directors

# WASHINGTON MUTUAL, INC.
## CERTIFICATE OF ASSISTANT SECRETARY

I, Linda O'Brien, Assistant Secretary of Washington Mutual, Inc., a Washington corporation ("WMI") and formerly Assistant Secretary of Washington Mutual Bank, former subsidiary of Washington Mutual, Inc. and now a division of JP Morgan Chase Bank ("WMB"), do hereby certify that at a meeting duly called and held on January 17, 2006, the Board of Directors of WMI gave approval (see excerpt of minutes Exhibit A) of the resolutions attached as Exhibit B;

The undersigned further certifies that at a meeting duly called and held on February 21, 2006, the Board of Directors of WMI gave approval (see excerpt of minutes Exhibit C) of the resolutions attached as Exhibit D;

The undersigned further certifies that at a meeting duly called and held on January 17, 2006, the Board of Directors of WMB gave approval (see excerpt of minutes Exhibit E) of the resolutions attached as Exhibit F;

<u>EXHIBIT A</u>

**<u>Support for Capital Raising Transaction by WMB</u>**

      Ms. Pugh reported that the Finance Committee had received a report from the Treasurer on equity and funding strategies. The strategy with regard to equity capital is to minimize the cost of capital by using hybrid securities. The Committee reviewed a proposal for the issuance of securities (the "LLC Preferred Securities") by a Delaware limited liability company that would be organized as an operating subsidiary under WMB's indirect subsidiary, University Street, Inc. Investors would purchase certain other securities (the "SPE Securities") from two special purpose entities, each of which will use the proceeds of its issuance of SPE Securities to finance the purchase of one of the two classes of LLC Preferred Securities. The Company will serve as a source of strength for WMB, as the SPE Securities will automatically be exchangeable into one share of a new class of preferred stock of the Company ("WMI Preferred") or a share of depositary stock representing a fractional interest in WMI Preferred, upon the occurrence of a "Supervisory Event" (defined to refer to WMB (a) becoming "undercapitalized" under the OTS's "prompt corrective action" regulations, (b) being placed into bankruptcy, reorganization, conservatorship or receivership, or (c) being determined by the OTS, in its sole discretion, to be in such condition as to cause the OTS to direct an exchange of SPE Securities for WMI Preferred in anticipation that WMB will become "undercapitalized" in the near term, or to cause the OTS to take supervisory action that limits the payment of distributions or dividends). The Committee recommended approval of the proposal. On motion duly made and seconded, the Board unanimously resolved to approve this transaction. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

## Appendix B – Approval of Issuance of REIT Preferred Securities

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street proposes to cause the formation of a Delaware limited liability company (the "LLC") and in connection therewith University Street and Washington Mutual Bank will contribute to the LLC assets of approximately $5 billion in the aggregate;

WHEREAS, it is proposed that the LLC will issue common interests, substantially all of which will be issued to University Street;

WHEREAS, it is proposed that the LLC will issue to WMB or its designee two series or classes of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $2.0 billion;

WHEREAS, it is proposed that one class of the LLC Preferred Interests will have a fixed dividend rate and the other class will have a dividend rate which is fixed for 5 years and thereafter is variable;

WHEREAS, it is proposed that the LLC Preferred Interests will be transferred to two special purpose entities which in turn will issue substantially similar securities (the "SPE Securities") to investors;

WHEREAS, under specified circumstances, each class of SPE Securities will automatically be exchanged for preferred stock of the Company or for depositary shares representing fractional interests in preferred stock of the Company; and

WHEREAS, the Board desires to authorize the issuance of two series of such preferred stock, to establish substantive terms of each series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and relative rights, preferences and limitations of each series and to provide for other matters relating to the preferred stock and the LLC preferred interests.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series I Perpetual Non-cumulative Fixed/Floating Rate Preferred Stock" (the "Series I Preferred Stock") and a series of preferred stock designated as the "Series J Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series J Preferred Stock"). The number of shares constituting each series shall not exceed 2,000; provided that the aggregate amount of shares in both series shall not exceed 2,000. The stock in each series shall have no par value.

FURTHER RESOLVED, that the Series I Preferred Stock and the Series J Preferred Stock (collectively, the "Preferred Stock") shall each have rights, preferences and limitations which are consistent with the following:

Ranking. The Preferred Stock shall, with respect to dividend rights and liquidation rights, rank (a) on a parity with each series or class of the Company's preferred stock issued in the future unless the terms of such future series or class expressly state that it is junior to the Preferred Stock; (b) rank on a parity with each other; and (c) rank senior to the Company's common stock and the Company's Series RP Preferred Stock.

Liquidation Account. The per share liquidation amount of each share of the Preferred Stock will not exceed $1,000,000.

Dividends. Dividends on the Preferred Stock, if and when declared by the Board, will be paid quarterly. Dividends will be non-cumulative.

The dividend rate on the Series I Preferred Stock will be at a fixed rate for a period of 5 years from the issuance of the SPE Securities. Such rate will be set on or about the date that the SPE Securities are issued and will not exceed 7.0% per annum, calculated on a 30/360 basis. After the expiration of such 5-year period, the dividend rate will become variable and for each dividend period will be an amount equal to the product of (A) the liquidation amount and (B) 3-month LIBOR applicable to such period plus a spread which shall not exceed 275 basis points, calculated on a 30/360 basis.

The dividend rate on the Series J Preferred Stock will be at a fixed rate and will be set on or about the date that the SPE Securities are issued. Such fixed rate shall not exceed 8.0% per annum, calculated on a 30/360 basis.

If dividends are not declared and paid in full on the Preferred Stock for any quarterly dividend period, then the Company shall not declare or pay, during such quarterly period, dividends or other distributions with respect to, or redeem, purchase, or acquire or make a liquidation payment with respect to, any of its capital securities, except dividends in connection with its shareholders' rights plan, or any successor plan, to the extent required therein, or dividends in connection with benefit plans.

Maturity. The Preferred Stock will be perpetual and, accordingly, will have no maturity date.

Redemption. The Preferred Stock will not be redeemable at the option of the holders.

The Company will be able to redeem the Preferred Stock at its option any time after 5 years from the date of issuance of the SPE Securities at a price equal to the liquidation amount with appropriate adjustments for declared and unpaid dividends, subject, however, to certain limits on the sources of funds for such redemption.

Sinking Fund. The Preferred Stock will not be subject to a sinking fund.

Convertibility. The Preferred Stock will not be convertible into any of the Company's other securities.

<u>Voting</u>. The holders of the Preferred Stock shall have no voting rights except (i) to the extent, if any, required by Washington law and (ii) in the event that dividends are not declared and paid on a series of Preferred Stock for 6 quarters (whether or not consecutive), then the holders of that series of Preferred Stock (together with the holders of any other parity series of preferred stock of WMI then outstanding which has the same voting rights) will have the right to elect two directors of WMI at the next annual shareholders meeting, provided that such right shall terminate when such holders have been paid dividends for 4 consecutive quarters (or in the case of the fourth quarter, dividends have been declared and set aside).

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy & Development, (vi) the Senior Vice President and Treasurer, (vii) the Senior Vice President and Assistant Treasurer and (viii) the Senior Vice President and Controller.

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any two of the Authorized Officers to designate, finalize, determine and complete the rights, preferences and limitations of the Preferred Stock, subject to the limits specified in these resolutions;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of each series of Preferred Stock to be authorized, to determine the dividend rates and the liquidation amount, to designate further situations in which the Company has the option to redeem the Preferred Stock with or without make-whole provisions, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for each series of Preferred Stock with the Secretary of State of the State of Washington;

RESOLVED FURTHER, that the Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the SPE Securities in a private/Regulation S offering, to prepare, or cause to be prepared, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action

shall approve in connection therewith in order to effect the offering of such securities in a private offering; and

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) purchase agreements with Goldman Sachs & Co. or an affiliate, (ii) exchange agreements relating to the exchange of the LLC Preferred Interests and the SPE Securities into the Preferred Stock, (iii) declaration of covenants or other agreements, in favor of holders of SPE Securities and/or specified indebtedness of the Company, prohibiting the issuance by the Company of preferred stock senior to the Preferred Stock, restricting sources of funds used to redeem the SPE Securities, or restricting dividends and distributions on the Company's stock if dividends are not paid on the SPE Securities), any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Preferred Stock, the LLC Preferred Interests or the SPE Securities or to further the intent of these resolutions, subject to the limits set forth in these resolutions.

EXHIBIT C

## Clarification of Support for Capital Raising Transaction by WMB

      Mr. Killinger submitted a proposal for clarifying amendments of the resolutions adopted by the Board at its January meeting in connection with the planned issuance of securities (the "LLC Preferred Securities") by a Delaware limited liability company that would be organized as an operating subsidiary under WMB's indirect subsidiary, University Street, Inc. Investors would purchase certain other securities (the "SPE Securities") from two special purpose entities, each of which will use the proceeds of its issuance of SPE Securities to finance the purchase of one of the two classes of LLC Preferred Securities. The Company will serve as a source of strength for WMB, as the SPE Securities will automatically be exchangeable into one share of a new class of preferred stock of the Company ("WMI Preferred") or a share of depositary stock representing a fractional interest in WMI Preferred, upon the occurrence of a "Supervisory Event" (as defined in the materials submitted to the Board). In response to questions by Mr. Matthews, Mr. Casey confirmed that executives do not have any personal interest in the special purpose entities being used to effectuate this transaction. On motion duly made and seconded, the Board unanimously adopted the clarifying resolutions. A copy of these resolutions will be kept in the minute book as an appendix to these minutes.

## Appendix G – University Street, Inc. – Issuance of Preferred Securities

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street proposes to cause the formation of a Delaware limited liability company (the "LLC") and in connection therewith University Street and Washington Mutual Bank will contribute to the LLC assets of approximately $5.4 billion in the aggregate;

WHEREAS, it is proposed that the LLC will issue common interests, substantially all of which will be issued to University Street;

WHEREAS, it is proposed that the LLC will issue to WMB or its designee two series or classes of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $2.0 billion;

WHEREAS, it is proposed that one class of the LLC Preferred Interests will have a fixed dividend rate and the other class will have a dividend rate which is fixed for approximately 5 years and thereafter is variable;

WHEREAS, it is proposed that the LLC Preferred Interests will be transferred to two special purpose entities which in turn will issue substantially similar securities (the "SPE Securities") to investors;

WHEREAS, under specified circumstances, each class of SPE Securities will automatically be exchanged for preferred stock of the Company or for depositary shares representing fractional interests in preferred stock of the Company;

WHEREAS, in a set of resolutions adopted at its January 17, 2006 meeting (the "Prior Resolutions"), the Board previously authorized the issuance of two series of such preferred stock of the Company, established substantive terms of each series, delegated authority to appropriate officers of the Company to determine, within the limits specifically prescribed in the Prior Resolutions, the designation and relative rights, preferences and limitations of each series and provided for other matters relating to the preferred stock and the LLC preferred interests; and

WHEREAS, the Board now desires to amend and supplement certain of the terms of each of the series of preferred stock of the Company and certain of the provisions in the Prior Resolutions.

THEREFORE, IT IS HEREBY RESOLVED, that the two series of preferred stock authorized by the Prior Resolutions shall be designated as the "Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock" (the "Series I Preferred Stock") and the "Series J Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series J Preferred Stock"), respectively;

RESOLVED FURTHER, that notwithstanding the Prior Resolutions, the Series I Preferred Stock and the Series J Preferred Stock (collectively, the "Preferred Stock") shall each have rights, preferences and limitations which are set forth in the respective designations for each series presented at this meeting subject to the completion and any modification by Authorized Officers as herein provided (the "Designations");

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any two of the Authorized Officers (as defined in the Prior Resolutions) to designate, finalize, determine and complete the rights, preferences, privileges, restrictions and other matters, and to take such other actions, relating to the Preferred Stock, subject to the limits in the Prior Resolutions relating to the number of shares in each series, liquidation amount, maturity, holders' redemption rights, sinking fund and convertibility and to the following limits:

(i)     the Series I Preferred Stock will be at a fixed rate from issuance not to exceed 7.50% per annum until March 15, 2011 or another date in March 2011 as provided in the completed Designation and thereafter will be at a floating rate for each dividend period at a rate equal to the 3-month LIBOR applicable to such period (or in circumstances set forth in the Designation 4.75% per annum, if higher) plus a spread which will not exceed 275 basis points;

(ii)    the Series J Preferred Stock will be at a fixed rate not to exceed 8.0% per annum;

(iii)   the Company will be able to redeem the Preferred Stock any time on or after March 15, 2011 or another date in March 2011 as provided in the completed Designation; and

(iv)    the holders of the Preferred Stock will have no voting rights except (i) to the extent, if any, required by Washington law and (ii) in the event that dividends are not declared and paid on a series of the Preferred (or on certain other classes or series as described in the completed Designation) then holders of the Preferred Stock (together with any other classes or series described in the completed Designation) will have the right to elect two directors of the Company at the next annual meeting;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolution shall, subject to the limits therein, include, without limitation, the authority to determine the number of shares of each series of Preferred Stock to be authorized, to determine the dividend rates, to specify additional redemption rights of the Company, to specify limits on the Company's rights to pay dividends on other equity securities if dividends have not been paid on the Preferred Stock, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for each series of Preferred Stock with the Secretary of State of the State of Washington;

RESOLVED FURTHER, that the number of shares authorized in the Designations as completed by the Authorized Officers as provided herein shall upon filing of the articles of amendment for each series be fully reserved for issuance;

RESOLVED FURTHER, that the declaration of covenants or other agreements referred to in clause (iii) of the last resolution in the Prior Resolutions may also include such other provisions or items as any Authorized Officer deems necessary or advisable including without limitation restrictions on dividends and distributions on the Company's other equity securities if dividends are not paid on the Preferred Stock after its issuance and restrictions on the sources of funds for any redemptions;

RESOLVED FURTHER, that except as hereby amended and supplemented, the Prior Resolutions remain in full force and effect; and

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards

and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Preferred Stock, the LLC Preferred Interests or the SPE Securities or to further the intent of these resolutions or the Prior Resolutions, subject to the limits set forth in these resolutions.

<u>EXHIBIT E</u>

## **Capital Raising Transaction**

      Ms. Pugh reported that the Finance Committee had received a report from the Treasurer on equity and funding strategies. The strategy with regard to equity capital is to minimize the cost of capital by using hybrid securities. The Committee reviewed a proposal for the issuance of securities by a Delaware limited liability company that would be organized as an operating subsidiary under the Association's indirect subsidiary, University Street, Inc. Investors would purchase certain other securities (the "SPE Securities") from two special purpose entities (not under the Association's control), each of which will use the proceeds of its issuance of SPE Securities to finance the purchase of one of the two classes of LLC Preferred Securities. The Holding Company will serve as a source of strength for the Association, as the SPE Securities will automatically be exchangeable into one share of a new class of preferred stock of the Holding Company ("WMI Preferred") or a share of depositary stock representing a fractional interest in WMI Preferred, upon the occurrence of a "Supervisory Event" (defined to refer to the Association doing any of the following: (a) becoming "undercapitalized" under the OTS's "prompt corrective action" regulations, (b) being placed into bankruptcy, reorganization, conservatorship or receivership, or (c) being determined by the OTS, in its sole discretion, to be in such condition as to cause the OTS to direct an exchange of SPE Securities for WMI Preferred in anticipation that the Association will become "undercapitalized", or to cause the OTS to take supervisory action that limits the Association's payment of distributions or dividends). The Committee recommended approval of the proposal. On motion duly made and seconded, the Board unanimously resolved to approve this transaction. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

## Appendix A – Approval of Issuance of REIT Preferred Securities

WHEREAS, Washington Mutual Bank (the "Bank") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, it is proposed that the Bank will make a contribution to University Street to consist of loans or interests thereon not to exceed $1.2 billion in book value (the "University Street Contribution) in exchange for preferred stock issued by University Street;

WHEREAS, University Street proposes to cause the formation of a Delaware limited liability company (the "LLC") and in connection therewith University Street and the Bank will contribute to the LLC assets of approximately $5 billion, with the Bank's portion (the "LLC Contribution") to consist of loans or interests therein not to exceed $1.0 billion in book value;

WHEREAS, in exchange for such contributions, University Street will receive substantially all of the common interests of the LLC and the Bank or its designee will receive two classes or series preferred stock of the LLC ("LLC Preferred Interests");

WHEREAS, it is proposed that the LLC Preferred Interests will be transferred by WMB or its designee to two special purpose entities ("SPEs") which in turn will issue substantially similar securities (the "SPE Securities") to investors; and

WHEREAS, it is proposed that the Bank's parent, Washington Mutual, Inc. ("WMI"), will authorize two series of preferred stock (the "WMI Preferred Stock") for which under certain circumstances each class of SPE Securities will be automatically exchanged.

THEREFORE, IT IS HEREBY RESOLVED, that the University Street Contribution and the LLC Contribution are hereby authorized and approved, and any Authorized Officer (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements or documents as such Authorized Officer deems necessary or appropriate in connection with the University Street Contribution or the LLC Contribution.

RESOLVED FURTHER, that the Bank is hereby authorized to transfer, or to cause its designee to transfer, the LLC Preferred Interests to the SPEs in exchange for cash and any Authorized Officer is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements or documents as such Authorized Officer deems necessary or appropriate in connection with such transfers;

RESOLVED FURTHER, each of the Authorized Officers is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements with the LLC as such Authorized Officer deems necessary or appropriate in connection with the management, operation or administration of the LLC;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Bank and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the SPE Securities in a private/Regulation S offering, to prepare, cause to be prepared or to participate in the preparation of, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private/Regulation S offering;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Bank (including, without limitation, those authorized from time to time pursuant to the Bank's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Bank (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the University Street Contribution, the LLC Contribution or the transfers of the LLC Preferred Interests or to further the intent of these resolutions; and

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) any Executive Vice President, (vi) the Senior Vice President and Treasurer, (vii) the Senior Vice President and Assistant Treasurer and (viii) the Senior Vice President and Controller.



Minutes of October 17, 2006 meeting of WMI Board of Directors

# WASHINGTON MUTUAL, INC.
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual, Inc. (the "Company") held its October meeting on Tuesday, October 17, 2006 in Seattle, Washington. Present were: Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. Mr. Killinger presided. Also present, at the beginning of the meeting, were the Company's officers, Casey, Cathcart, Chapman, Rotella, Schneider and Lynch (secretary). The Board of the Company met in joint session with the Board of Directors of the Company's primary banking institution subsidiary, Washington Mutual Bank ("WMB").

…

## Support for WMB Capital Raising Transaction

Ms. Pugh reported that the Finance Committee had recommended a proposal for a contingent issuance of depositary shares representing fractional interests in a new series of preferred stock of the Company (the "Series L Preferred"). The Series L Preferred automatically would be exchanged, under specified circumstances, for securities (the "SPE Securities") issued by a special purpose entity (the "SPE"). The SPE would use the proceeds of its pending issuance of SPE Securities to finance the purchase of a third series of preferred securities (the "LLC Preferred Securities") that are to be issued by a Delaware limited liability company that was organized as an operating subsidiary under WMB's indirect subsidiary, University Street, Inc., as discussed at the January 2006 Board meeting. Thus the Company will serve as a source of strength for WMB. On motion duly made and seconded, the Board unanimously resolved to approve this transaction. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

...

There being no further business the meeting was adjourned.

## Appendices:

**A - Resolutions Declaring Dividend on Common Stock**

**B - Resolutions Authorizing Support for WMB Preferred Funding LLC Capital Issuance**

**C - Resolutions related to Trust Subsidiary's Redemption of Trust Preferred Stock**

**D - Schedule of Officer Elections, Promotions, Transfers and Other Changes**

### Appendix B - Resolutions Authorizing Support for WMB Preferred Funding LLC Capital Issuance

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, Washington Mutual Preferred Funding LLC, a Delaware limited liability company ("WMPF LLC"), is a subsidiary of University Street;

WHEREAS, WMPF LLC previously issued $2 billion liquidation preference of preferred membership interests, in two series, to Washington Mutual Bank ("WMB") in exchange for a corresponding amount of mortgage loan assets;

WHEREAS, it is proposed that WMPF LLC will issue to University Street or to a special purpose entity (the "SPE") a new series or class of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $1.0 billion;

WHEREAS, if the LLC Preferred Interests are issued to University Street, then University Street will, in turn, transfer or sell the LLC Preferred Interests to the SPE;

WHEREAS, upon receipt of the LLC Preferred Interests, the SPE will, in turn, issue substantially similar securities (the "SPE Securities") to investors for cash and will pay University Street or WMPF LLC an amount equal to the proceeds of such sale in payment for the LLC Preferred Interests;

WHEREAS, under specified circumstances, the SPE Securities will automatically be exchanged for depositary shares representing fractional interests in a new series of preferred stock of the Company; and

WHEREAS, the Board desires to authorize the issuance of such new series of such preferred stock, to establish substantive terms of such series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and relative rights, voting powers, preferences and limitations of such series and to provide for other matters relating to the preferred stock and the LLC Preferred Interests.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the

2

authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series L Perpetual Non-cumulative Fixed/Floating Rate Preferred Stock" (the "Series L Preferred Stock"). The number of shares constituting such series shall not exceed 1,000. The stock in such series shall have no par value.

FURTHER RESOLVED, that the Series L Preferred Stock shall have preferences, limitations, voting powers and relative rights set forth below, subject to completion or modification by the Authorized Officers as provided herein:

## DESIGNATION

I.    <u>Designation</u>. There is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock" (the "Series L Preferred Stock"). The number of shares constituting such series shall be _____. The Series L Preferred Stock shall have no par value per share and the liquidation preference of the Series L Preferred Stock shall be $1,000,000.00 per share. Shares of Series L Preferred Stock shall be issued if and only if a Conditional Exchange occurs.

II.    <u>Ranking</u>.

The Series L Preferred Stock will, with respect to dividend rights and rights on liquidation, winding-up and dissolution, rank (i) on a parity with the Company's Series I Perpetual Non-cumulative Fixed Floating Rate Preferred Stock (the "Series I Preferred Stock"), the Company's Series J Perpetual Non-cumulative Fixed Rate Preferred Stock (the "Series J Preferred Stock"), the Company's Series K Perpetual Non-Cumulative Floating Rate Preferred Stock (the "Series K Preferred Stock") and with each other class or series of preferred stock established after the Designation Date by the Company the terms of which expressly provide that such class or series will rank on a parity with the Series L Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Parity Securities") and (ii) senior to the Company's common stock (the "Common Stock"), the Company's Series RP Preferred Stock and each other class of capital stock outstanding or established after the Designation Date by the Company the terms of which do not expressly provide that it ranks on a parity with the Series L Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company, including the Common Stock (collectively referred to as "Junior Securities").

III.     Definitions.  Unless the context or use indicates another meaning or intent, the following terms shall have the following meanings, whether used in the singular or the plural:

Section 1.     "3-Month USD LIBOR" means, with respect to any Dividend Period, a rate determined on the basis of the offered rates for three-month U.S. dollar deposits of not less than a principal amount equal to that which is representative for a single transaction in such market at such time, commencing on the first day of such Dividend Period, which appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, on the LIBOR Determination Date for such Dividend Period.  If on any LIBOR Determination Date no rate appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, the Company or an affiliate of the Company on behalf of the Company will on such LIBOR Determination Date request four major reference banks in the London interbank market selected by the Company to provide the Company with a quotation of the rate at which three-month deposits in U.S. dollars, commencing on the first day of such Dividend Period, are offered by them to prime banks in the London interbank market as of approximately 11:00 a.m., London time, on such LIBOR Determination Date and in a principal amount equal to that which is representative for a single transaction in such market at such time.  If at least two such quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of such quotations as calculated by the Company.  If fewer than two quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of the rates quoted as of approximately 11:00 am., New York time, on the first day of such Dividend Period by three major banks in New York City, New York selected by the Company for loans in U.S. dollars to leading European banks, for a three-month period commencing on the first day of such Dividend Period and in a principal amount of not less than $1,000,000.

Section 2.     "Business Day" means any day other than a Saturday, Sunday or any other day on which banks in New York City, New York, or Seattle, Washington are generally required or authorized by law to be closed.

Section 3.     "Common Stock" has the meaning set forth in Section 2.

Section 4.     "Company" means Washington Mutual, Inc., a Washington corporation.

Section 5.     "Comparable Treasury Issue" means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Dividend Payment Date in _____, 2016 that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Series L Preferred Stock with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding-up of the issuer of such preferred stock.

Section 6.     "Comparable Treasury Price" means with respect to any Redemption Date the average of the Reference Treasury Dealer Quotations for such Redemption Date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

Section 7.     "<u>Conditional Exchange</u>" means the automatic exchange of the Trust Securities into depositary shares representing an interest in the Series L Preferred Stock which occurs upon the written direction of the OTS upon or after the occurrence of an Exchange Event.

Section 8.     [Intentionally Omitted]

Section 9.     "<u>Designation Date</u>" means _____, 2006.

Section 10.    "<u>Dividend Payment Date</u>" has the meaning set forth in Section 4(b).

Section 11.    "<u>Dividend Period</u>" has the meaning set forth in Section 4(b).

Section 12.    "<u>Exchange Event</u>" means the occurrence of any one of the following at a time as the Trust Securities are issued and outstanding:

(a)     WMB becomes undercapitalized under the Prompt Corrective Action Regulations;

(b)     WMB is placed into conservatorship or receivership; or

(c)     the OTS, in its sole discretion, directs an exchange of the Trust Securities into depositary shares representing an interest in the Series L Preferred Stock in anticipation of WMB becoming undercapitalized under the Prompt Corrective Action Regulations or of the OTS taking any supervisory action that limits the payment of dividends by WMB.

Section 13.    "<u>Fixed-to-Floating Rate Delaware Preferred Securities</u>" means the Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series [     ], liquidation preference $[1,000] per security, issued or to be issued by Washington Mutual Preferred Funding LLC, a Delaware limited liability company.

Section 14.    "<u>Independent Investment Banker</u>" means an independent investment banking institution of national standing appointed by the Company.

Section 15.    "<u>Junior Securities</u>" has the meaning set forth in Section 2.

Section 16.    "<u>LIBOR Business Day</u>" means any day on which commercial banks are open for general business (including dealings in deposits in U.S. dollars) in London.

Section 17.    "<u>LIBOR Determination Date</u>" means, as to each Dividend Period, the date that is two LIBOR Business Days prior to the first day of such Dividend Period.

Section 18.    "<u>US LIBOR Telerate Page 3750</u>"' means the display page of Moneyline's Telerate Service designated as 3750 (or such other page as may replace that page on that service, or such other service as may be nominated as the information vendor, for the purpose of displaying rates comparable to 3-Month USD LIBOR).

5

Section 19.    "OTS" means the Office of Thrift Supervision or any successor regulatory entity.

Section 20.    "Parity Securities" has the meaning set forth in Section 2.

Section 21.    "Primary Treasury Dealer" has the meaning set forth in Section 3(x).

Section 22.    "Prompt Corrective Action Regulation" means 12 C.F.R. Part 565 as in effect from time to time, or any successor regulation.

Section 23.    "Redemption Date" means any date that is designated by the Company in a notice of redemption delivered pursuant to Section 7.

Section 24.    "Reference Treasury Dealer" means each of the three primary U.S. government securities dealers (each, a "Primary Treasury Dealer"), as specified by the Company; provided that if any Primary Treasury Dealer as specified by the Company ceases to be a Primary Treasury Dealer, the Company will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Company fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Company.

Section 25.    "Reference Treasury Dealer Quotations" means, with respect to the Reference Treasury Dealer and any Redemption Date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such Redemption Date.

Section 26.    A "Regulatory Capital Event" occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Fixed-to-Floating Rate Delaware Preferred Securities will no longer constitute core capital of WMB for purposes of the capital adequacy regulations issued by the OTS as a result of a change in applicable laws, regulations or related interpretations after issuance of the Fixed-to-Floating Rate Delaware Preferred Securities.

Section 27.    "Treasury Rate" means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for the relevant Redemption Date. The Treasury Rate will be calculated on the third Business Day preceding the relevant Redemption Date.

Section 28.    "Trust Securities" means the Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities, Series [A-___], liquidation preference $100,000 per security, issued by Washington Mutual Preferred Funding Trust II, a Delaware statutory trust.

Section 29.    "Voting Parity Securities" has the meaning set forth in Section 8(b).

Section 30.    "WMB" means Washington Mutual Bank, a federal savings association and a subsidiary of the Company, or its successor.

6

## IV.    Dividends.

Section 1.    Holders of shares of Series L Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors, out of the funds legally available therefor, non-cumulative cash dividends in the amount determined as set forth in Section 4(c), and no more.

Section 2.    Subject to Section 4(a), dividends shall be payable in arrears on March 15, June 15, September 15 and December 15 of each year commencing on the first such day after the issuance of the Series L Preferred Stock or, in each case, if any such day is not a Business Day, the next Business Day (each, a "Dividend Payment Date"). Each dividend will be payable to holders of record as they appear on the stock books of the Company on the first day of the month in which the relevant Dividend Payment Date occurs or, if such date is not a Business Day, the first Business Day of such month.  Each period from and including a Dividend Payment Date (or the date of issuance of the Series L Preferred Stock) to but excluding the following Dividend Payment Date (or the Redemption Date) is herein referred to as "Dividend Period", except that, if the Series L Preferred Stock is outstanding on _____ 15, 2016, the Dividend Period ending in _____ 2016 shall be to but excluding _____ 15, 2016 (whether or not a Business Day) and the Dividend Period ending in _____ [2017] shall commence on _____, 2016 (whether or not a Business Day).

Section 3.    If the date of issuance of the Series L Preferred Stock is prior to the day immediately preceding _____ 15, 2016 or, if _____ 15, 2016 is not a Business Day, the first Business Day after _____ 15, 2016, then from such date of issuance to but not including _____ 15, 2016 (whether or not a Business Day), dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series L Preferred Stock, at an annual rate of _____% on the per share liquidation preference of the Series L Preferred Stock.  From the later of the (i) _____ 15, 2016 and (ii) the date of issuance of the Series L Preferred Stock, dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series L Preferred Stock, at an annual rate on the per share liquidation preference of the Series L Preferred Stock equal to [the greater of (x)] 3-Month USD LIBOR for the related Dividend Period plus _____% [or (y) _____ percent (___%)].  Dividends payable for any Dividend Period greater or less than a full Dividend Period will be computed on the basis of twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period if such Dividend Period ends in or prior to _____ 2016; thereafter dividends payable for any period greater or less than a full dividend period will be computed on the basis of the actual number of days in the relevant period divided by 360.  No interest will be paid on any dividend payment of the Series L Preferred Stock.

Section 4.    Dividends in the Series L Preferred Stock are non-cumulative. If the Board of Directors does not declare a dividend on the Series L Preferred Stock or declares less than a full dividend in respect of any Dividend Period, the holders of the Series L Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and the Company will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Series L Preferred Stock or the Common Stock or any other class or series of the Company's preferred stock.

142457

Section 5.    If full dividends on all outstanding shares of the Series L Preferred Stock for any Dividend Period have not been declared and paid, the Company shall not declare or pay dividends with respect to, or redeem, purchase or acquire any of, its equity capital securities during the next succeeding Dividend Period, except dividends in connection with the Series RP Preferred Stock or other shareholders' rights plan, if any, or dividends in connection with benefit plans.

V.    Liquidation.

Section 1.    In the event the Company voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series L Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $1,000,000 per share of Series L Preferred Stock, plus an amount equal to any declared but unpaid dividends thereon for the current Dividend Period to and including the date of such liquidation, out of assets legally available for distribution to its shareholders, before any distribution of assets is made to the holders of Common Stock or any securities ranking junior to the Series L Preferred Stock. After payment of the full amount of such liquidating distributions, the holders of Series L Preferred Stock will not be entitled to any further participation in any distribution of assets by, and shall have no right or claim to any remaining assets of, the Company.

Section 2.    In the event the assets of the Company available for distribution to shareholders upon any liquidation, dissolution or winding-up of the affairs of the Company, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to all outstanding shares of the Series L Preferred Stock and the corresponding amounts payable on any other Securities of equal ranking, the holders of Series L Preferred Stock and the holders of such other securities of equal ranking shall share ratably in any distribution of assets of the Company in proportion to the full respective liquidating distributions to which they would otherwise be respectively entitled.

VI.    Maturity.  The Series L Preferred Stock shall be perpetual unless redeemed by the Company in accordance with Section 7.

VII.    Redemptions.

Section 1.    The Series L Preferred Stock shall not be redeemable at the option of the holders at any time.

Section 2.    The Series L Preferred Stock shall be redeemable at the option of the Company, in whole but not in part, upon the occurrence of a Regulatory Capital Event at a cash redemption price equal to the sum of:  (X) the greater of (i) $1,000,000 per share, or (ii) the sum of present values of $1,000,000 per share and all undeclared dividends for the Dividend Period from the Redemption Date to and including the Dividend Payment Date in _____, 2016, discounted to the Redemption Date on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate (as calculated by an Independent Investment Banker), plus 0.30%; and (Y) any declared but unpaid dividends to the Redemption Date.

Section 3.    In addition to the redemption described in Section 7(b), the Series L Preferred Stock shall be redeemable in whole or in part at the option of the Company, on (i) _____ 15, 2016 (or, in the event that _____ 15, 2016 is not a

8

Business Day, the next Business Day) and (ii) on each _____ 15 (or if such day is not a Business Day, the next Business Day) of each [fifth or tenth] year after 2016. Such redemption shall be at a cash redemption price of $1,000,000 per share, plus any declared and unpaid dividends to the Redemption Date, without accumulation of any undeclared dividends.

Section 4.    In the case of any redemption under this Section 7, notice shall be mailed to each holder of record of the Series L Preferred Stock, not less than thirty nor more than 60 days prior to the Redemption Date specified in such notice; provided, however, that a longer minimum notice may be agreed to by the Company, including in a deposit agreement relating to depositary shares representing interests in the Series L Preferred Stock.  The notice of redemption shall include a statement of (i) the redemption date, (ii) the redemption price, and (iii) the number of shares to be redeemed.

Section 5.    Any shares of Series L Preferred Stock redeemed pursuant to this Section 7 or otherwise acquired by the Company in any manner whatsoever shall become authorized but unissued preferred shares of the Company but such preferred shares shall not under any circumstances be reissued as Series L Preferred Shares. The Company shall from time-to-time take such appropriate action as may be necessary to reduce the authorized number of shares of Series L Preferred Stock accordingly.

VIII.    Voting Rights.

Section 1.    Holders of the Series L Preferred Stock will not have any voting rights, including the right to elect any directors, except (i) voting rights, if any, required by law, or (ii) voting rights, if any, described in Section 8(b).

Section 2.    If after issuance of the Series L Preferred Stock the Company fails to pay, or declare and set aside for payment, full dividends on the Series L Preferred Stock or any other class or series of Parity Securities having similar voting rights ("Voting Parity Securities") for six Dividend Periods or their equivalent, the authorized number of the Company's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Series L Preferred Stock, voting together as a single and separate class with the holders of any outstanding Voting Parity Securities, will have the right to elect two directors in addition to the directors then in office at the Company's next annual meeting of shareholders. This right will continue at each subsequent annual meeting until the Company pays dividends or the Series L Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or declares and sets aside for payment dividends for the fourth consecutive Dividend Period or its equivalent.

Section 3.    The term of such additional directors will terminate, and the total number of directors will be decreased by two, at the first annual meeting of shareholders after the Company pays dividends for three consecutive Dividend Periods or their equivalent and declares and pays or sets aside for payment dividends on the Series L Preferred Stock and any Voting Parity Securities for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series L Preferred Stock.  After the term of such additional directors terminates, the holders of the Series L Preferred Stock will not be able to elect additional directors unless dividends on the Series L Preferred Stock

9

have again not been paid or declared and set aside for payment for six future Dividend Periods.

Section 4.    Any additional director elected by the holders of the Series L Preferred Stock and the Voting Parity Securities may only be removed by the vote of the holders of record of the outstanding Series L Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at a meeting of the Company shareholders called for that purpose.  As long as dividends on the Series L Preferred Stock or any Voting Parity Securities have not been paid for six Dividend Periods or their equivalent, any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series L Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at the same meeting at which such removal is considered.

IX.    <u>Certificates</u>.  The Company may at its option issue the Series L Preferred Stock without certificates.

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer":  (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy & Development, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller.

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any one of the Authorized Officers to designate, finalize, determine and complete the preferences, limitations, voting powers and relative rights of the Series L Preferred Stock, subject to the limits specified in these resolutions;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of the Series L Preferred Stock to be authorized, to determine the dividend rates and the liquidation amount, to designate further situations in which the Company has the option to redeem the Series L Preferred Stock with or without make-whole provisions, to designate circumstances involving amendments to the Company's articles of incorporation (as amended) or involving mergers or other combinations or similar events in which holders of Series L Preferred Stock shall have voting rights, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for each series of Series L Preferred Stock with the Secretary of State of the State of Washington; provided, however, that (i) the number of shares of Series L Preferred Stock authorized shall not

exceed 1,000, (ii) the liquidation preferences shall not exceed $1,000,000 per share, (iii) the dividend rate will be at a fixed rate not to exceed 9.00% per annum from the date of the issuance until a date which is approximately 10 years from the date of issuance of the LLC Preferred Interests, as provided in the completed Designation and thereafter will be at a floating rate equal to the 3-month LIBOR applicable to such period plus a spread which will not exceed 275 basis points, except that such floating rate may be subject each dividend period to a floor which shall not exceed 6.00% per annum, and (iv) the Company will have the right to redeem the Series L Preferred Stock on a date that occurs no later than the first dividend payment date which is more than 10 years after the date on which the LLC Preferred Interests and the SPE Securities are issued.

RESOLVED FURTHER, that the Series L Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Series L Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that the number of shares authorized in the Designation as completed by an Authorized Officer shall upon filing of the articles of amendment for the S4eries L Preferred Stock be fully reserved for issuance;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the SPE Securities in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (the "Securities Act"), to prepare, or cause to be prepared, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering; and

11

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) purchase agreements with Goldman Sachs & Co., or an affiliate thereof, and/or other institutional purchasers, (ii) exchange agreements relating to the exchange of the LLC Preferred Interests and the SPE Securities into the Series L Preferred Stock, and (iii) declaration of covenants or other agreements, in favor of holders of SPE Securities and/or specified indebtedness of the Company, prohibiting the issuance by the Company of preferred stock senior to the Series L Preferred Stock, restricting sources of funds used to redeem the SPE Securities, or restricting dividends and distributions on the Company's stock if dividends are not paid on the SPE Securities), any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Series L Preferred Stock, the LLC Preferred Interests or the SPE Securities or to further the intent of these resolutions, subject to the limits set forth in these resolutions.



**Minutes of October 17, 2006 meeting of WMB Board of Directors**

## WASHINGTON MUTUAL BANK
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual Bank (the "Association") held its October meeting on Tuesday, October 17, 2006 in Seattle, Washington. Present were: Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. Mr. Killinger presided. Also present, at the beginning of the meeting, were the Association's officers, Casey, Cathcart, Chapman, Rotella, Schneider and Lynch (secretary). The Board met in joint session with the Board of Directors of Washington Mutual, Inc. (the "Holding Company").

...

### Preferred Funding LLC Capital Issuance

Ms. Pugh reported that the Finance Committee had recommended a proposal for the issuance of a third series of preferred securities (the "LLC Preferred Securities") by a Delaware limited liability company that was organized as an operating subsidiary under the Association's indirect subsidiary, University Street, Inc., as previously discussed at the January 2006 Board meeting. Investors would purchase securities (the "SPE Securities") to be issued by a special purpose entity that will be organized (not under the Association's control), and that will use the proceeds of its issuance of SPE Securities to finance the purchase of LLC Preferred Securities. The Holding Company will serve as a source of strength for the Association, as the SPE Securities will automatically be exchangeable into depositary shares representing fractional interests in Series L preferred stock of the Holding Company upon the occurrence of certain events. The Committee recommended approval of the proposal. On motion duly made and seconded, the Board unanimously resolved to approve this transaction. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

...

There being no further business, the meeting was adjourned.

### Appendices:

**A – Clarification of Pricing Authority for Covered Bonds**

**B – Preferred Funding LLC Capital Issuance**

**C – Schedule of Officer Elections, Promotions, Transfers and Other Changes**

### Appendix B - Preferred Funding LLC Capital Issuance

WHEREAS, Washington Mutual Bank (the "Bank") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street owns all of the issued and outstanding common interests in Washington Mutual Preferred Funding LLC ("WMPF LLC");

WHEREAS, WMPF LLC proposes to issue a new class or series of preferred interests (the "LLC Preferred Interests") to either (a) a newly formed special purpose entity ("SPE") or (b) University Street;

WHEREAS, following such contribution, University Street will continue to own all of the common interests of WMPF LLC;

WHEREAS, it is proposed that the LLC Preferred Interests will be sold or transferred by WMPF LLC or University Street, as the case may be, to the SPE which, in turn, will issue substantially similar securities (the "SPE Securities") to investors; and

WHEREAS, it is proposed that the Bank's parent, Washington Mutual, Inc. ("WMI"), will authorize a new series of preferred stock (the "WMI Preferred Stock") and under certain circumstances the SPE Securities will be automatically exchanged into depositary shares representing interests in the WMI Preferred Stock.

THEREFORE, IT IS HEREBY RESOLVED,

RESOLVED FURTHER, each of the Authorized Officers (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements with WMPF LLC as such Authorized Officer deems necessary or appropriate in connection with the transactions contemplated by these resolutions, as well as the management, operation or administration of WMPF LLC;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Bank and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, in the event that it is deemed necessary or desirable so to do, in connection with the transfer, sale or offering of the LLC Preferred Interests or SPE Securities, as the case may be, in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (a "Reg S Offering"), to prepare, cause to be prepared or to participate in the preparation of, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering or a Reg S Offering;

2

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Bank (including, without limitation, those authorized from time to time pursuant to the Bank's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Bank (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the transfers of the LLC Preferred Interests or to further the intent of these resolutions; and

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) any Executive Vice President, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller.

# Minutes of February 27, 2007 meeting of WMI Board of Directors

# WASHINGTON MUTUAL, INC.
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual, Inc. (the "Company") held its February meeting on Tuesday, February 27, 2007 in Seattle, Washington. Present were: Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. Mr. Killinger presided. Also present, at the beginning of the meeting, were Casey, Cathcart, Chapman, David, Rotella, Vuoto (to replace Mr. Saunders as Card Services President) and Lynch (secretary). The Board of the Company met in joint session with the Board of Directors of Washington Mutual Bank ("WMB"), which is the primary banking institution subsidiary of the Company.

...

## Support for WMB Capital Raising Transaction

Mr. Killinger submitted a proposal for a contingent issuance of depositary shares representing fractional interests in a new series of preferred stock of the Company (the "Series M Preferred"). The Series M Preferred automatically would be exchanged, under specified circumstances, for securities (the "SPE Securities") issued by a special purpose entity (the "SPE"). The SPE would use the proceeds of its pending issuance of SPE Securities to finance the purchase of a third series of preferred securities (the "LLC Preferred Securities") that are to be issued by a Delaware limited liability company that was organized as an operating subsidiary under WMB's indirect subsidiary, University Street, Inc., as discussed at the January 2006 Board meeting. Thus the Company will serve as a source of strength for WMB. On motion duly made and seconded, the Board unanimously adopted the clarifying resolutions. A copy of these resolutions will be kept in the minute book as an appendix to these minutes.

...

There being no further business the meeting was adjourned.

## Appendices:

**A – Approval of Director Independence Determinations**

**B – Approval of Nominees for Election to the Board by Shareholders**

**C – Approval of Comprehensive Preparations for 2007 Annual Meeting**

**D – Approval of Actions related to REIT Preferred Issuance**

**E – Approval of Actions related to Trust Preferred Redemption**

**F – Designation of Section 16/Reg O Officers**

**G – Schedule of Officer Elections, Promotions, Transfers and Other Changes**

## Appendix D – Approval of Actions related to REIT Preferred Issuance

### Board of Directors Resolutions

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, Washington Mutual Preferred Funding LLC, a Delaware limited liability company ("WMPF LLC"), is a subsidiary of University Street;

WHEREAS, WMPF LLC previously issued $2.5 billion liquidation preference of preferred membership interests to Washington Mutual Bank ("WMB"), in three series, in exchange for a corresponding amount of mortgage loan assets;

WHEREAS, it is proposed that WMPF LLC will issue to University Street, to a special purpose entity (the "SPE") or to WMB, as the case may be, a new series or class of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $1 billion;

WHEREAS, if the LLC Preferred Interests are issued to University Street, then University Street will, in turn, transfer or sell the LLC Preferred Interests to the SPE and if the WMPF LLC interests are issued to WMB, then WMB will, in turn, transfer or sell the LLC Preferred interests to the SPE;

WHEREAS, upon receipt of the LLC Preferred Interests, the SPE will, in turn, issue substantially similar securities (the "SPE Securities") to investors for cash;

WHEREAS, under specified circumstances, the SPE Securities will automatically be exchanged for depositary shares representing fractional interests in a new series of preferred stock of the Company; and

WHEREAS, the Board desires to authorize the issuance of such new series of such preferred stock, to establish substantive terms of such series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and relative rights, voting powers, preferences and limitations of such series and to provide for other matters relating to the preferred stock and the LLC Preferred Interests.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock which, depending on whether the Authorized Officers select a fixed-to-floating dividend rate or a fixed dividend rate, shall be designated as the "Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock" or the "Series M Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series M Preferred Stock"). The number of shares constituting such series shall not exceed 1,000. The stock in such series shall have no par value.

FURTHER RESOLVED, that the Series M Preferred Stock shall have preferences, limitations, voting powers and relative rights set forth below, subject to completion or modification by the Authorized Officers as provided herein:

## DESIGNATION

Section 1.     Designation.  There is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as [the "Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock" or the "Series M Perpetual Non-cumulative Fixed-Rate Preferred Stock", depending on whether a fixed-to-floating dividend rate or a fixed dividend rate is selected] (the "Series M Preferred Stock"). The number of shares constituting such series shall be _____. The Series M Preferred Stock shall have no par value per share and the liquidation preference of the Series M Preferred Stock shall be $1,000,000.00 per share.  Shares of the Series M Preferred Stock shall be issued if and only if a Conditional Exchange occurs.

Section 2.     Ranking.

The Series M Preferred Stock will, with respect to dividend rights and rights on liquidation, winding-up and dissolution, rank (i) on a parity with the Company's Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series I Preferred Stock"), the Company's Series J Perpetual Non-cumulative Fixed Rate Preferred Stock (the "Series J Preferred Stock"), the Company's Series K Perpetual Non-Cumulative Floating Rate Preferred Stock (the "Series K Preferred Stock"), the Company's Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series L Preferred Stock") and with each other class or series of preferred stock established after the Designation Date by the Company the terms of which expressly provide that such class or series will rank on a parity with the Series M Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Parity Securities") and (ii) senior to the Company's common stock (the "Common Stock"), the Company's Series RP Preferred Stock and each other class of capital stock outstanding or established after the Designation Date by the Company the terms of which do not expressly provide that it ranks on a parity with or senior to the Series M Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company, including the Common Stock (collectively referred to as "Junior Securities").  The Company shall have the right to authorize and/or issue additional shares or series of Junior Securities and Parity Securities without the consent of the holders of the Series M Preferred Stock.

Section 3.     Definitions.  Unless the context or use indicates another meaning or intent, the following terms shall have the following meanings, whether used in the singular or the plural:

(a)     "3-Month USD LIBOR" means, with respect to any Dividend Period, a rate determined on the basis of the offered rates for three-month U.S. dollar deposits of not less than a principal amount equal to that which is representative for a single transaction in such market at such time, commencing on the first day of such Dividend Period, which appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, on the LIBOR Determination Date for such Dividend Period. If on any LIBOR Determination Date no rate appears on US LIBOR Telerate Page 3750 as of approximately 11:00 a.m., London time, the Company or an affiliate of the Company on behalf of the Company will on such LIBOR Determination Date request four major reference banks in the London interbank market selected by the Company to provide the Company with a quotation of the rate at which three-month deposits in U.S. dollars, commencing on the first day of such Dividend Period, are offered by them to prime banks in the London interbank market as of approximately 11:00 a.m., London time, on such LIBOR Determination Date and in a principal amount equal to that which is

representative for a single transaction in such market at such time. If at least two such quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of such quotations as calculated by the Company. If fewer than two quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of the rates quoted as of approximately 11:00 am., New York time, on the first day of such Dividend Period by three major banks in New York City, New York selected by the Company for loans in U.S. dollars to leading European banks, for a three-month period commencing on the first day of such Dividend Period and in a principal amount of not less than $1,000,000.

(b)     "<u>Business Day</u>" means any day other than a Saturday, Sunday or any other day on which banks in New York City, New York, or Seattle, Washington are generally required or authorized by law to be closed.

(c)     "<u>Common Stock</u>" has the meaning set forth in Section 2.

(d)     "<u>Company</u>" means Washington Mutual, Inc., a Washington corporation.

(e)     "<u>Comparable Treasury Issue</u>" means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Dividend Payment Date in _____, [2017] that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Series M Preferred Stock with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding-up of the issuer of such preferred stock.

(f)     "<u>Comparable Treasury Price</u>" means with respect to any Redemption Date the average of the Reference Treasury Dealer Quotations for such Redemption Date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

(g)     "<u>Conditional Exchange</u>" means the automatic exchange of the Trust Securities into depositary shares representing an interest in the Series M Preferred Stock which occurs upon the written direction of the OTS upon or after the occurrence of an Exchange Event.

(h)     "<u>Delaware Preferred Securities</u>" means [the Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series [__] or the Fixed Rate Perpetual Non-cumulative Preferred Securities, Series [__], depending on whether a fixed-to-floating rate or a fixed rate is selected], liquidation preference $[1,000] per security, issued or to be issued by Washington Mutual Preferred Funding LLC, a Delaware limited liability company.

(i)     "<u>Designation Date</u>" means _____, 2007.

(j)     "<u>Dividend Payment Date</u>" has the meaning set forth in Section 4(b).

(k)     "<u>Dividend Period</u>" has the meaning set forth in Section 4(b).

(l)    "Exchange Event" means the occurrence of any one of the following at a time as the Trust Securities are issued and outstanding:

(i)    WMB becomes undercapitalized under the Prompt Corrective Action Regulations;

(ii)    WMB is placed into conservatorship or receivership; or

(iii)    the OTS, in its sole discretion, directs an exchange of the Trust Securities into depositary shares representing an interest in the Series M Preferred Stock in anticipation of WMB becoming undercapitalized under the Prompt Corrective Action Regulations or of the OTS taking any supervisory action that limits the payment of dividends by WMB.

(m)    "Independent Investment Banker" means an independent investment banking institution of national standing appointed by the Company.

(n)    "Junior Securities" has the meaning set forth in Section 2.

(o)    "LIBOR Business Day" means any day on which commercial banks are open for general business (including dealings in deposits in U.S. dollars) in London.

(p)    "LIBOR Determination Date" means, as to each Dividend Period, the date that is two LIBOR Business Days prior to the first day of such Dividend Period.

(q)    "OTS" means the Office of Thrift Supervision or any successor regulatory entity.

(r)    "Parity Securities" has the meaning set forth in Section 2.

(s)    "Primary Treasury Dealer" has the meaning set forth in Section 3(x).

(t)    "Prompt Corrective Action Regulation" means 12 C.F.R. Part 565 as in effect from time to time, or any successor regulation.

(u)    "Rating Agencies" means, at any time, Standard & Poor's Rating Services, a Division of the McGraw-Hill Companies, Inc., Moody's Investors Service, Inc. and Fitch, inc., but only in the case of each such agency if it is rating the relevant security, including the Delaware Preferred Securities at the relevant time or, if none of them is providing a rating for the relevant security, including the Delaware Preferred Securities at such time, then any "*nationally recognized statistical rating organization*" as that phrase is defined for purposes of Rule 436(g)(2) under the Securities Act of 1933, as amended, which is rating such relevant Security.

(v)    A "Rating Agency Event" occurs when the Company reasonably determines that an amendment, clarification or change has occurred in the equity criteria for securities such as the Delaware Preferred Securities of any Rating Agency that then publishes a rating for the Company which amendment, clarification or change results in a lower equity credit for the Company than the respective equity credit assigned by such Rating Agency to the Delaware Preferred Securities on the Designation Date.

(w)　"Redemption Date" means any date that is designated by the Company in a notice of redemption delivered pursuant to Section 7.

(x)　"Reference Treasury Dealer" means each of the three primary U.S. government securities dealers (each, a "Primary Treasury Dealer"), as specified by the Company; provided that if any Primary Treasury Dealer as specified by the Company ceases to be a Primary Treasury Dealer, the Company will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Company fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Company.

(y)　"Reference Treasury Dealer Quotations" means, with respect to the Reference Treasury Dealer and any Redemption Date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such Redemption Date.

(z)　A "Regulatory Capital Event" occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Fixed-to-Floating Rate Delaware Preferred Securities will no longer constitute core capital of WMB for purposes of the capital adequacy regulations issued by the OTS as a result of a change in applicable laws, regulations or related interpretations after issuance of the Fixed-to-Floating Rate Delaware Preferred Securities.

(aa)　"Series I Preferred Stock" has the meaning set forth in Section 2.

(bb)　"Series J Preferred Stock" has the meaning set forth in Section 2.

(cc)　"Series K Preferred Stock" has the meaning set forth in Section 2.

(dd)　"Series L Preferred Stock" has the meaning set forth in Section 2.

(ee)　"Series M Preferred Stock" has the meaning set forth in Section 1.

(ff)　["Ten-Year Date"] means the Dividend Payment Date in [_____ 2017] and the Dividend Payment Date of each tenth succeeding year (i.e., [_____ 2027, _____ 2037], etc.) assuming in each case that the Series M Preferred Stock has been issued.

(gg)　"Treasury Rate" means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for the relevant Redemption Date. The Treasury Rate will be calculated on the third Business Day preceding the relevant Redemption Date.

(hh)　"Trust Securities" means the Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities, Series [___], liquidation preference $100,000 per security, issued by Washington Mutual Preferred Funding Trust III, a Delaware statutory trust.

(ii)　"US LIBOR Telerate Page 3750" means the display page of Moneyline's Telerate Service designated as 3750 (or such other page as may replace that page on that

service, or such other service as may be nominated as the information vendor, for the purpose of displaying rates comparable to 3-Month USD LIBOR).

(jj)     "Voting Parity Securities" has the meaning set forth in Section 8(b).

(kk)     "WMB" means Washington Mutual Bank, a federal savings association and a subsidiary of the Company, or its successor.

Section 4.     Dividends.

(a)     Holders of shares of Series M Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors, out of the funds legally available therefor, non-cumulative cash dividends in the amount determined as set forth in Section 4(c), and no more.

(b)     Subject to Section 4(a), dividends shall be payable in arrears on March 15, June 15, September 15 and December 15 of each year commencing on the first such day after the issuance of the Series M Preferred Stock or, in each case, if any such day is not a Business Day, the next Business Day (each, a "Dividend Payment Date"). Each dividend will be payable to holders of record as they appear on the stock books of the Company on the first day of the month in which the relevant Dividend Payment Date occurs or, if such date is not a Business Day, the first Business Day of such month. Each period from and including a Dividend Payment Date (or the date of the issuance of the Series M Preferred Stock) to but excluding the following Dividend Payment Date (or the Redemption Date) is herein referred to as "Dividend Period"[ the following clause to be added if a fixed-to-floating rate is selected: , except that, if the Series M Preferred Stock is outstanding on _____ 15, [____], the Dividend Period ending in _____ [____] shall be to but excluding _____ 15, [____] (whether or not a Business Day) and the Dividend Period ending in _____ [____] shall commence on _____ 15, [____] (whether or not a Business Day)].

(c)     If the date of issuance of the Series M Preferred Stock is prior to the day immediately preceding _____ 15, [____] or, if _____ 15, [____] is not a Business Day, the first Business Day after _____ 15, [____], then from such date of issuance to but not including _____ 15, [____] (whether or not a Business Day), [if fixed rate is selected, delete preceding language in Section 4(c) and insert "After issuance of the Series M Preferred Stock"], dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series M Preferred Stock, at an annual rate of _____% on the per share liquidation preference of the Series M Preferred Stock. [For fixed-to-floating rate selection: From the later of the (i) _____ 15, [____] and (ii) the date of issuance of the Series M Preferred Stock, dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series M Preferred Stock, at an annual rate on the per share liquidation preference of the Series M Preferred Stock equal to [the greater of (x)] 3-Month USD LIBOR for the related Dividend Period plus _____% [or (y) _____ percent (___%)]]. Dividends payable for any Dividend Period greater or less than a full Dividend Period will be computed on the basis of twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period [For fixed-to-floating rate – if such Dividend Period ends in or prior to _____ [____]; thereafter dividends payable for any period greater or less than a full dividend period will be computed on the basis of the actual number of days in the relevant period divided by 360.] No interest will be paid on any dividend payment of the Series M Preferred Stock.

(d)     Dividends on the Series M Preferred Stock are non-cumulative.  If the Board of Directors does not declare a dividend on the Series M Preferred Stock or declares less than a full dividend in respect of any Dividend Period, the holders of the Series M Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and the Company will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Series M Preferred Stock or the Common Stock or any other class or series of the Company's preferred stock.

(e)     If full dividends on all outstanding shares of the Series M Preferred Stock for any Dividend Period have not been declared and paid, the Company shall not declare or pay dividends with respect to, or redeem, purchase or acquire any of, its equity capital securities during the next succeeding Dividend Period, except dividends in connection with the Series RP Preferred Stock or other shareholders' rights plan, if any, or dividends in connection with benefit plans.

Section 5.     Liquidation.

(a)     In the event the Company voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series M Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $1,000,000 per share of Series M Preferred Stock, plus an amount equal to any declared but unpaid dividends thereon for the current Dividend Period to and including the date of such liquidation, out of assets legally available for distribution to its shareholders, before any distribution of assets is made to the holders of Common Stock or any securities ranking junior to the Series M Preferred Stock. After payment of the full amount of such liquidating distributions, the holders of Series M Preferred Stock will not be entitled to any further participation in any distribution of assets by, and shall have no right or claim to any remaining assets of, the Company.

(b)     In the event the assets of the Company available for distribution to shareholders upon any liquidation, dissolution or winding-up of the affairs of the Company, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to all outstanding shares of the Series M Preferred Stock and the corresponding amounts payable on any other Securities of equal ranking, the holders of Series M Preferred Stock and the holders of such other securities of equal ranking shall share ratably in any distribution of assets of the Company in proportion to the full respective liquidating distributions to which they would otherwise be respectively entitled.

Section 6.     Maturity.  The Series M Preferred Stock shall be perpetual unless redeemed by the Company in accordance with Section 7.

Section 7.     Redemptions.

(a)     The Series M Preferred Stock shall not be redeemable at the option of the holders at any time.

(b)     The Series M Preferred Stock shall be redeemable at the option of the Company in any of the following circumstances:

        (i)     in whole but not in part, prior to the Dividend Payment Date in _____, [2017] upon the occurrence of a Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to the sum of:

        (A)     the greater of:

        (1)     $1,000,000 per share of Series M Preferred Stock and

        (2)     The sum of the present value of $1,000,000 per share of Series M Preferred Stock, discounted from the Dividend Payment Date in _____, [2017] to the redemption date, and the present values of all undeclared dividends for each Dividend Period from the redemption date to and including the Dividend Payment Date in _____, [2017] discounted from their applicable Dividend Payment Dates to the redemption date, in each case on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, *plus 0.50%; plus*

        (B)     any declared but unpaid dividends to the redemption date;

        (ii)     in whole but not in part, on any Dividend Payment Date prior to the Dividend Payment Date in _____, [2017] for any reason other than the occurrence of a Rating Agency Event or a Regulatory Capital Event, at a cash redemption price equal to:

        (A)     the greater of:

        (1)     $1,000,000 per share of Series M Preferred Stock, or

        (2)     the sum of the present value of $1,000,000 per share of Series M Preferred Stock discounted from the Dividend Payment Date in _____, [2017] to the redemption date, and the present values of all undeclared dividends for the Dividend Periods from the redemption date to and including the Dividend Payment Date in _____, [2017] , discounted from their applicable Dividend Payment Dates to the redemption date, in each case on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, plus 0.35%; *plus*

        (B)     any declared but unpaid dividends to the redemption date;

        (iii)     in whole but not in part, on any Dividend Payment Date after the Dividend Payment Date in _____, [2017] that is not a [Ten-Year Date], upon the occurrence of a Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to $1,000,000 per share of Series M Preferred Stock, *plus* any declared and unpaid dividends to the redemption date;

        (iv)     in whole or in part, on each Dividend Payment Date that is a [Ten-Year Date], at a cash redemption price of $1,000,000 per share of Series M Preferred Stock, *plus* any declared and unpaid dividends to the redemption date; and

APPROVED BY THE BOARD OF DIRECTORS JUNE 19, 2007

(v)     in whole but not in part, on any Dividend Payment Date after the Dividend Payment Date in _____, [2017] that is not a [Ten-Year Date] for any reason other than the occurrence of a Rating Agency Event or a Regulatory Capital Event, at a cash redemption price equal to:

(A)     the greater of:

(1)     $1,000,000 per share of Series M Preferred Stock, or

(2)     the sum of the present value of $1,000,000 per share of Series M Preferred Stock, discounted from the next succeeding [Ten-Year Date] to the redemption date, and the present values of all undeclared dividends for the Dividend Periods from the redemption date to and including the next succeeding [Ten-Year Date], discounted from their applicable Dividend Payment Dates to the redemption date, in each case on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the 3-month USD LIBOR Rate applicable to the Dividend Period immediately preceding such redemption date (which 3-month USD LIBOR Rate will also, for the purposes of calculating such redemption price, be the rate used in calculating the amount for each undeclared dividend), as calculated by an Independent Investment Banker; *plus*

(B)     any declared but unpaid dividends to the redemption date;

in each case, without accumulation of any undeclared dividends with respect to Dividend Payment Dates prior to the redemption date.

(c)     Dividends will cease to accrue on the Series M Preferred Stock called for redemption on and as of the date fixed for redemption and such Series M Preferred Stock will be deemed to cease to be outstanding, *provided* that the redemption price, including any authorized and declared but unpaid dividends for the current Dividend Period, if any, to the date fixed for redemption, has been duly paid or provision has been made for such payment.

(d)     In the case of any redemption under this Section 7, notice shall be mailed to each holder of record of the Series M Preferred Stock, not less than thirty nor more than 60 days prior to the Redemption Date specified in such notice; provided, however, that a longer minimum notice may be agreed to by the Company, including in a deposit agreement relating to depositary shares representing interests in the Series M Preferred Stock. The notice of redemption shall include a statement of (i) the redemption date, (ii) the redemption price, and (iii) the number of shares to be redeemed.

(e)     Any shares of Series M Preferred Stock redeemed pursuant to this Section 7 or otherwise acquired by the Company in any manner whatsoever shall become authorized but unissued preferred shares of the Company but such preferred shares shall not under any circumstances be reissued as Series M Preferred Shares. The Company shall from time-to-time take such appropriate action as may be necessary to reduce the authorized number of shares of Series M Preferred Stock accordingly.

Section 8.     <u>Voting Rights.</u>

APPROVED BY THE BOARD OF DIRECTORS JUNE 19, 2007

(a)     Holders of the Series M Preferred Stock will not have any voting rights, including the right to elect any directors, except (i) voting rights, if any, required by law, and (ii) voting rights, if any, described in this Section 8.

(b)     Holders of the Series M Preferred Stock will in the circumstances to the extent set forth in this Section 8(b), have the right to elect two directors.

(i)     If after the issuance of the Series M Preferred Stock the Company fails to pay, or declare and set aside for payment, full dividends on the Series M Preferred Stock or any other class or series of Parity Securities having similar voting rights ("Voting Parity Securities") for six Dividend Periods or their equivalent, the authorized number of the Company's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Series M Preferred Stock, voting together as a single and separate class with the holders of any outstanding Voting Parity Securities, will have the right to elect two directors in addition to the directors then in office at the Company's next annual meeting of shareholders.  This right will continue at each subsequent annual meeting until the Company pays dividends in full on the Series M Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or declares and sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series M Preferred Stock.

(ii)     The term of such additional directors will terminate, and the total number of directors will be decreased by two, at such time as  the Company pays dividends in full on the Series M Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series M Preferred Stock.  After the term of such additional directors terminates, the holders of the Series M Preferred Stock will not be entitled to elect additional directors unless full dividends on the Series M Preferred Stock have again not been paid or declared and set aside for payment for six future Dividend Periods.

(iii)     Any additional director elected by the holders of the Series M Preferred Stock and the Voting Parity Securities may only be removed by the vote of the holders of record of the outstanding Series M Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at a meeting of the Company shareholders called for that purpose.  Any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series M Preferred Stock and Voting Parity Securities, voting together as a single and separate class.

(c)     So long as any shares of Series M Preferred Stock are outstanding, the vote or consent of the holders of at least 66 2/3% of the shares of Series M Preferred Stock at the time outstanding, voting as a class with all other classes and series of Parity Securities upon which like voting rights have been conferred and are exercisable, given in person or by proxy, either in writing without a meeting or by vote at any meeting called for the purpose, will be necessary for effecting or validating any of the following actions, whether or not such approval is required by Washington law:

(i)     any amendment, alteration or repeal of any provision of the Company's Amended and Restated Articles of Incorporation (including the Articles of Amendment creating the Series M Preferred Stock) or the Company's bylaws that would alter or

change the voting powers, preferences or special rights of the Series M Preferred Stock so as to affect them adversely;

(ii)     any amendment or alteration of the Company's Amended and Restated Articles of Incorporation to authorize or create, or increase the authorized amount of, any shares of, or any securities convertible into shares of, any class or series of the Company's capital stock ranking prior to the Series M Preferred Stock in the payment of dividends or in the distribution of assets on any liquidation, dissolution or winding up of the Company; or

(iii)     the consummation of a binding share exchange or reclassification involving the Series M Preferred Stock or a merger or consolidation of the Company with another entity, except that holders of Series M Preferred Stock will have no right to vote under this provision or under §23B.11.035 of the Revised Code of Washington or otherwise under Washington law if in each case (x) the Series M Preferred Stock remains outstanding or, in the case of any such merger or consolidation with respect to which the Company is not the surviving or resulting entity, is converted into or exchanged for preference securities of the surviving or resulting entity or its ultimate parent, and (y) such Series M Preferred Stock remaining outstanding or such preference securities, as the case may be, have such rights, preferences, privileges and voting powers, taken as a whole, as are not materially less favorable to the holders thereof than the rights, preferences, privileges and voting powers of the Series M Preferred Stock, taken as a whole;

*provided, however,* that any increase in the amount of the authorized or issued Series M Preferred  Stock or authorized preferred stock or the creation and issuance, or an increase in the authorized or issued amount, of other series of preferred stock ranking equally with and/or junior to the Series M Preferred Stock with respect to the payment of dividends (whether such dividends are cumulative or non-cumulative) and/or the distribution of assets upon the Company's liquidation, dissolution or winding up will not be deemed to adversely affect the voting powers, preferences or special rights of the Series M Preferred stock and, notwithstanding §23B.10.040(1)(a), (e) or (f) of the Revised Code of Washington or any other provision of Washington law, holders of Series M Preferred Stock will have no right to vote on such an increase, creation or issuance.

(d)     If an amendment, alteration, repeal, share exchange, reclassification, merger or consolidation described above would adversely affect one or more but not all series of preferred stock with like voting rights (including the Series M Preferred Stock for this purpose), then only the series affected and entitled to vote shall vote as a class in lieu of all such series of preferred stock.

Section 9.     <u>Certificates</u>.  The Company may at its option issue the Series M Preferred Stock without certificates.

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy & Development, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller;

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any one of the Authorized Officers to designate, finalize, determine and complete the preferences, limitations, voting powers and relative rights of the Series M Preferred Stock, subject to the limits specified in these resolutions;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of the Series M Preferred Stock to be authorized, to determine the dividend rates and whether such rates are fixed or fixed-to-floating, to determine the liquidation amount, to designate situations in which the Company has the option to redeem the Series M Preferred Stock with or without make-whole provisions (including without limitation changing references to "10-Year Date" to a shorter time period), to designate circumstances involving amendments to the Company's articles of incorporation as amended or involving mergers or other combinations or similar events in which holders of Series M shall have voting rights, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for the Series M Preferred Stock with the Secretary of State of the State of Washington; provided, however, that (i) the number of shares of Series M Preferred Stock authorized shall not exceed 1,000, (ii) the liquidation preferences shall not exceed $1,000,000 per share, (iii) the dividend rate will be at a fixed rate not to exceed 9.00% per annum from the date of the issuance and, in the case of a fixed-to-floating rate election, after a date which is approximately either 5 or 10 years from the date of issuance of the LLC Preferred Interests, as provided in the completed Designation and thereafter will be at a floating rate equal to the 3-month LIBOR applicable to such period plus a spread which will not exceed 300 basis points, except that such floating rate may be subject each dividend period to a floor which shall not exceed 4.00% per annum, and (iv) the Company will have the right to redeem the Series M Preferred Stock on a date that occurs no later than the first dividend payment date which is more than 10 years after the date on which the LLC Preferred Interests and the SPE Securities are issued;

RESOLVED FURTHER, that the Series M Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Series M Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that the number of shares authorized in the Designation as completed by an Authorized Officer as provided in these resolutions shall upon filing of the articles of amendment for the Series M Preferred Stock be fully reserved for issuance;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the SPE Securities in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (the "Securities Act"), to prepare, or cause to be prepared, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or

any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering;

RESOLVED FURTHER, that after filing with the Secretary of State of the State of Washington the respective articles of amendment designating the terms of the Series M Preferred Stock, the Company's Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock, the Company's Series J Series Perpetual Non-cumulative Fixed Rate Preferred Stock or the Company's Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock, but prior to the issuance of the shares of the respective series, the authority of each of the Authorized Officer to execute and file an amendment to each such articles of amendment is hereby authorized, approved and confirmed, provided that any such filing shall be made only in order to make technical, clarifying or similar corrections or modifications and provided further that such corrections or modifications are consistent with the limitations previously established in the prior board resolutions authorizing such series and with the description of such series in the offering circular relating to such series; and

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) purchase agreements with Goldman Sachs & Co. or an affiliate and/or other institutional purchasers, (ii) exchange agreements relating to the exchange of the LLC Preferred Interests and the SPE Securities into the Series M Preferred Stock, and (iii) declaration of covenants or other agreements, in favor of holders of SPE Securities and/or specified indebtedness of the Company, prohibiting the issuance by the Company of preferred stock senior to the Series M Preferred Stock, restricting sources of funds used to redeem the SPE Securities, or restricting dividends and distributions on the Company's stock if dividends are not paid on the SPE Securities), any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Series M Preferred Stock, the LLC Preferred Interests or the SPE Securities or to further the intent of these resolutions, subject to the limits set forth in these resolutions.



**Minutes of February 27, 2007 meeting of WMB Board of Directors**

## WASHINGTON MUTUAL BANK
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual Bank (the "Association") held its February meeting on Tuesday, February 27, 2007 in Seattle, Washington. Present were: Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. Mr. Killinger presided. Also present, at the beginning of the meeting, were Casey, Cathcart, Chapman, David, Rotella, Vuoto (to replace Mr. Saunders as Card Services President) and Lynch (secretary). The Board of the Association met in joint session with the Board of Directors of Washington Mutual, Inc. (the "Holding Company").

…

### Preferred Funding LLC Capital Issuance

Mr. Killinger submitted a proposal for the issuance of a third series of preferred securities (the "LLC Preferred Securities") by a Delaware limited liability company that was organized as an operating subsidiary under the Association's indirect subsidiary, University Street, Inc. Investors would purchase securities (the "SPE Securities") to be issued by a special purpose entity that will be organized (not under the Association's control), and that will use the proceeds of its issuance of SPE Securities to finance the purchase of LLC Preferred Securities. The Holding Company will serve as a source of strength for the Association, as the SPE Securities will automatically be exchangeable into depositary shares representing fractional interests in Series M preferred stock of the Holding Company upon the occurrence of certain events. On motion duly made and seconded, the Board unanimously resolved to approve this transaction. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

…

There being no further business the meeting was adjourned.

### Appendices:

**A – Approve Director Independence Determinations**

**B – Amend Bylaws**

**C – Approve Actions related to REIT Preferred Issuance**

**D – Clarification of Officer Authority**

**E – Schedule of Officer Elections, Promotions, Transfers and Other Changes**

APPROVED BY THE BOARD OF DIRECTORS JUNE 19, 2007

<u>**Appendix C – Approve REIT Preferred Issuance**</u>

**Board of Directors Resolutions**

WHEREAS, Washington Mutual Bank (the "Bank") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street owns all of the issued and outstanding common interests in Washington Mutual Preferred Funding LLC ("WMPF LLC");

WHEREAS, WMPF LLC proposes to issue a new class or series of preferred interests (the "LLC Preferred Interests") to either (a) a newly formed special purpose entity ("SPE"), (b) University Street or (c) the Bank;

WHEREAS, it is proposed that the LLC Preferred Interests will be sold or transferred by WMPF LLC, University Street or the Bank, as the case may be, to the SPE which, in turn, will issue substantially similar securities (the "SPE Securities") to investors; and

WHEREAS, it is proposed that the Bank's parent, Washington Mutual, Inc. ("WMI"), will authorize a new series of preferred stock (the "WMI Preferred Stock") and under certain circumstances the SPE Securities will be automatically exchanged into depositary shares representing interests in the WMI Preferred Stock.

THEREFORE, IT IS HEREBY RESOLVED, that each of the Authorized Officers (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements with WMPF LLC, the SPE or any other party as such Authorized Officer deems necessary or appropriate in connection with the transactions contemplated by these resolutions, as well as the management, operation or administration of WMPF LLC;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Bank and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, in the event that it is deemed necessary or desirable so to do, in connection with the transfer, sale or offering of the LLC Preferred Interests or SPE Securities, as the case may be, in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (a "Reg S Offering"), to prepare, cause to be prepared or to participate in the preparation of, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering or a Reg S Offering;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Bank (including, without limitation, those authorized from time to time pursuant to the Bank's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Bank (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be

necessary or advisable in connection with the issuance or transfers of the LLC Preferred Interests or to further the intent of these resolutions;

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) any Executive Vice President, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller; and

RESOLVED FURTHER, that in the event WMPF LLC issues the LLC Preferred Interests to the SPE, then the Bank is hereby authorized from time to time to sell loans to WMPF LLC in exchange for some or all of the proceeds from the sale of the LLC Preferred Interests or otherwise for cash or cash equivalents.

# Minutes of August 21, 2007 meeting of WMI Board of Directors

# WASHINGTON MUTUAL, INC.
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual, Inc. (the "Company") held a special telephonic meeting on August 21, 2007.  Present were:  Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Pugh, Reed, Smith and Stever.  The meeting was purely telephonic, with all Directors participating by means of a conference telephone enabling all participants to hear one another.  Mr. Killinger presided.  Also present, at the beginning of the meeting, were the Company's officers, Casey, Cathcart, Chapman, Rotella, Williams, and Lynch (secretary).  The Board of the Company met in joint session with the Board of Directors of Washington Mutual Bank ("WMB"), which is the primary banking institution subsidiary of the Company.

…

## CEO's Report

…

Mr. Casey noted that the Moody's bond rating agency is currently re-evaluating the Company's ratings, and has commented favorably on the Company's capital and liquidity.  He submitted information about the short-term capital plan and capital forecast.  Mr. Killinger noted the proposal to issue up to $1.5 billion in preferred securities (the "Delaware Preferred Securities") by the Delaware limited liability company that was organized in 2006 as an indirect operating subsidiary of WMB (the "WaMu Preferred Funding IV" issuance).  Investors would purchase certain other securities (the "Trust Securities") from a special purpose entity, which will use the proceeds of its issuance of Trust Securities to finance the purchase of the Delaware Preferred Securities.  The Company will serve as a source of strength for WMB, as the Trust Securities will automatically be exchanged into depositary shares representing a fractional interest in a share of a new class of preferred stock of the Company ("Series N Preferred") upon the occurrence of a "Exchange Event" (as defined in the resolutions submitted to the Board).  In response to a question by Mr. Stever, Mr. Casey explained the possible interest rate to be paid on the securities.  In response to a question by Mr. Stever, Mr. Casey identified likely investors and their locations.  On motion duly made and seconded, the Board resolved to approve the Company's actions in support of the WaMu Preferred Funding IV issuance.  A copy of the resolutions will be kept in the minute book as an appendix to these minutes.

…

There being no further business, the meeting was adjourned.


## A - Resolutions for Capital Raising Transaction

## Appendix A – Resolutions for Capital Raising Transaction
### Board of Directors Resolutions
### (Series N Preferred Stock)

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, Washington Mutual Preferred Funding LLC, a Delaware limited liability company ("WMPF LLC"), is a subsidiary of University Street;

WHEREAS, WMPF LLC previously issued preferred membership interests to Washington Mutual Bank ("WMB"), in exchange for transfers of mortgage loan assets;

WHEREAS, it is proposed that WMPF LLC will issue to University Street, to a special purpose entity (the "SPE") and/or to WMB a new series or class of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $[1.0] billion;

WHEREAS, if LLC Preferred Interests are issued to University Street, then University Street will, in turn, transfer or sell the LLC Preferred Interests to the SPE and if WMPF LLC interests are issued to WMB, then WMB will, in turn, transfer or sell the LLC Preferred interests to the SPE;

WHEREAS, upon or concurrently with receipt of the LLC Preferred Interests, the SPE will, in turn, issue substantially similar securities (the "SPE Securities") to investors for cash;

WHEREAS, under specified circumstances, the SPE Securities will automatically be exchanged for depositary shares representing fractional interests in shares of a new series of preferred stock of the Company; and

WHEREAS, the Board desires to authorize the issuance of such new series of such preferred stock, to establish substantive terms or limits of such series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and relative rights, voting powers, preferences and limitations of such series and to provide for other matters relating to the preferred stock and the LLC Preferred Interests.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock which, unless an Authorized Officer determines that such series should bear a fixed-to-floating dividend rate or a floating dividend rate, shall be designated as the "Series N Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series N Preferred Stock"). The number of shares constituting such series shall not exceed 1,000. The stock in such series shall have no par value.

FURTHER RESOLVED, that the Series N Preferred Stock shall have preferences, limitations, voting powers and relative rights set forth below, subject to completion or modification by the Authorized Officers as provided herein:

# DESIGNATION

Section l.    <u>Designation</u>. There is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series N Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series N Preferred Stock"). The number of shares constituting such series shall be _____. The Series N Preferred Stock shall have no par value per share and the liquidation preference of the Series N Preferred Stock shall be $1,000,000.00 per share.  Shares of the Series N Preferred Stock shall be issued if and only if a Conditional Exchange occurs.

Section 2.    <u>Ranking.</u>

The Series N Preferred Stock will, with respect to dividend rights and rights on liquidation, winding-up and dissolution, rank (i) on a parity with the Company's Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series I Preferred Stock"), the Company's Series J Perpetual Non-cumulative Fixed Rate Preferred Stock (the "Series J Preferred Stock"), the Company's Series K Perpetual Non-Cumulative Floating Rate Preferred Stock (the "Series K Preferred Stock"), the Company's Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series L Preferred Stock"), the Company's Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the Series M Preferred Stock") and with each other class or series of preferred stock established after the Designation Date by the Company the terms of which expressly provide that such class or series will rank on a parity with the Series N Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Parity Securities") and (ii) senior to the Company's common stock (the "Common Stock"), the Company's Series RP Preferred Stock and each other class of capital stock outstanding or established after the Designation Date by the Company the terms of which do not expressly provide that it ranks on a parity with or senior to the Series N Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company, including the Common Stock (collectively referred to as "Junior Securities").  The Company shall have the right to authorize and/or issue additional shares or series of Junior Securities and Parity Securities without the consent of the holders of the Series N Preferred Stock.

Section 3.        <u>Definitions</u>.  Unless the context or use indicates another meaning or intent, the following terms shall have the following meanings, whether used in the singular or the plural:

(a)    "<u>Business Day</u>" means any day other than a Saturday, Sunday or any other day on which banks in New York City, New York, or Seattle, Washington are generally required or authorized by law to be closed.

(b)    "<u>Common Stock</u>" has the meaning set forth in Section 2.

(c)    "<u>Company</u>" means Washington Mutual, Inc., a Washington corporation.

(d)    "<u>Comparable Treasury Issue</u>" means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Dividend Payment Date in _____, [2012] that would be utilized,

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Series N Preferred Stock with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding-up of the issuer of such preferred stock.

(e)     "Comparable Treasury Price" means with respect to any Redemption Date the average of the Reference Treasury Dealer Quotations for such Redemption Date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

(f)     "Conditional Exchange" means the automatic exchange of the Trust Securities into depositary shares representing an interest in the Series N Preferred Stock which occurs upon the written direction of the OTS upon or after the occurrence of an Exchange Event.

(g)     "Delaware Preferred Securities" means the ___% Perpetual Non-cumulative Preferred Securities, Series 2007-B, liquidation preference $1,000 per security, issued or to be issued by Washington Mutual Preferred Funding LLC, a Delaware limited liability company.

(h)     "Designation Date" means _____, 2007.

(i)     "Dividend Payment Date" has the meaning set forth in Section 4(b).

(j)     "Dividend Period" has the meaning set forth in Section 4(b).

(k)     "Exchange Event" means the occurrence of any one of the following at a time as the Trust Securities are issued and outstanding:

(i)     WMB becomes undercapitalized under the Prompt Corrective Action Regulations;

(ii)     WMB is placed into conservatorship or receivership; or

(iii)     the OTS, in its sole discretion, directs an exchange of the Trust Securities into depositary shares representing an interest in the Series N Preferred Stock in anticipation of WMB becoming undercapitalized under the Prompt Corrective Action Regulations or of the OTS taking any supervisory action that limits the payment of dividends by WMB.

(l)     "Independent Investment Banker" means an independent investment banking institution of national standing appointed by the Company.

(m)     "Junior Securities" has the meaning set forth in Section 2.

(n)     "OTS" means the Office of Thrift Supervision or any successor regulatory entity.

(o)     "Parity Securities" has the meaning set forth in Section 2.

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

(p)     "<u>Primary Treasury Dealer</u>" has the meaning set forth in Section 3(u).

(q)     "<u>Prompt Corrective Action Regulation</u>" means 12 C.F.R. Part 565 as in effect from time to time, or any successor regulation.

(r)     "<u>Rating Agencies</u>" means, at any time, Standard & Poor's Rating Services, a Division of the McGraw-Hill Companies, Inc., Moody's Investors Service, Inc. and Fitch, Inc., but only in the case of each such agency if it is rating the relevant security, including the Delaware Preferred Securities at the relevant time or, if none of them is providing a rating for the relevant security, including the Delaware Preferred Securities at such time, then any "*nationally recognized statistical rating organization*" as that phrase is defined for purposes of Rule 436(g)(2) under the Securities Act of 1933, as amended, which is rating such relevant security.

(s)     A "<u>Rating Agency Event</u>" occurs when the Company reasonably determines that an amendment, clarification or change has occurred in the equity criteria for securities such as the Delaware Preferred Securities of any Rating Agency that then publishes a rating for the Company which amendment, clarification or change results in a lower equity credit for the Company than the respective equity credit assigned by such Rating Agency to the Delaware Preferred Securities on the Designation Date.

(t)     "<u>Redemption Date</u>" means any date that is designated by the Company in a notice of redemption delivered pursuant to Section 7.

(u)     "<u>Reference Treasury Dealer</u>" means each of the three primary U.S. government securities dealers (each, a "<u>Primary Treasury Dealer</u>"), as specified by the Company; provided that if any Primary Treasury Dealer as specified by the Company ceases to be a Primary Treasury Dealer, the Company will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Company fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Company.

(v)     "<u>Reference Treasury Dealer Quotations</u>" means, with respect to the Reference Treasury Dealer and any Redemption Date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such Redemption Date.

(w)     A "<u>Regulatory Capital Event</u>" occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Delaware Preferred Securities will no longer constitute core capital of WMB for purposes of the capital adequacy regulations issued by the OTS as a result of a change in applicable laws, regulations or related interpretations after issuance of the Delaware Preferred Securities.

(x)     "<u>Series I Preferred Stock</u>" has the meaning set forth in Section 2.

(y)     "<u>Series J Preferred Stock</u>" has the meaning set forth in Section 2.

(z)     "<u>Series K Preferred Stock</u>" has the meaning set forth in Section 2.

(aa)     "<u>Series L Preferred Stock</u>" has the meaning set forth in Section 2.

(bb)     "<u>Series M Preferred Stock</u>" has the meaning set forth in Section 2.

(cc)     "<u>Series N Preferred Stock</u>" has the meaning set forth in Section 1.

(dd)     "<u>Treasury Rate</u>" means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for the relevant Redemption Date. The Treasury Rate will be calculated on the third Business Day preceding the relevant Redemption Date.

(ee)     "<u>Trust Securities</u>" means the ___% Perpetual Non-cumulative Trust Securities, liquidation preference $100,000 per security, issued by Washington Mutual Preferred Funding Trust IV, a Delaware statutory trust.

(ff)     "<u>Voting Parity Securities</u>" has the meaning set forth in Section 8(b).

(gg)     "<u>WMB</u>" means Washington Mutual Bank, a federal savings association and a subsidiary of the Company, or its successor.

Section 4.     <u>Dividends</u>.

(a)     Holders of shares of Series N Preferred Stock shall be entitled to receive, if, when and as declared by the Board of Directors, out of the funds legally available therefor, non-cumulative cash dividends in the amount determined as set forth in Section 4(c), and no more.

(b)     Subject to Section 4(a), dividends shall be payable in arrears on March 15, June 15, September 15 and December 15 of each year commencing on the first such day after the issuance of the Series N Preferred Stock or, in each case, if any such day is not a Business Day, the next Business Day (each, a "Dividend Payment Date"). Each dividend will be payable to holders of record as they appear on the stock books of the Company on the first day of the month in which the relevant Dividend Payment Date occurs or, if such date is not a Business Day, the first Business Day of such month. Each period from and including a Dividend Payment Date (or the date of the issuance of the Series N Preferred Stock) to but excluding the following Dividend Payment Date (or the Redemption Date) is herein referred to as "Dividend Period".

(c)     After issuance of the Series N Preferred Stock, dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series N Preferred Stock, at an annual rate of _____% on the per share liquidation preference of the Series N Preferred Stock. Dividends payable for any Dividend Period greater or less than a full Dividend Period will be computed on the basis of twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period. No interest will be paid on any dividend payment of the Series N Preferred Stock.

(d)     Dividends on the Series N Preferred Stock are non-cumulative. If the Board of Directors does not declare a dividend on the Series N Preferred Stock or declares less than a full dividend in respect of any Dividend Period, the holders of the Series N

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and the Company will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Series N Preferred Stock or the Common Stock or any other class or series of the Company's preferred stock.

(e)     If full dividends on all outstanding shares of the Series N Preferred Stock for any Dividend Period have not been declared and paid, the Company shall not declare or pay dividends with respect to, or redeem, purchase or acquire any of, its equity capital securities during the next succeeding Dividend Period, except dividends in connection with the Series RP Preferred Stock or other shareholders' rights plan, if any, or dividends in connection with benefit plans.

Section 5.     Liquidation.

(a)     In the event the Company voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series N Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $1,000,000 per share of Series N Preferred Stock, plus an amount equal to any declared but unpaid dividends thereon for the current Dividend Period to and including the date of such liquidation, out of assets legally available for distribution to its shareholders, before any distribution of assets is made to the holders of Common Stock or any securities ranking junior to the Series N Preferred Stock. After payment of the full amount of such liquidating distributions, the holders of Series N Preferred Stock will not be entitled to any further participation in any distribution of assets by, and shall have no right or claim to any remaining assets of, the Company.

(b)     In the event the assets of the Company available for distribution to shareholders upon any liquidation, dissolution or winding-up of the affairs of the Company, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to all outstanding shares of the Series N Preferred Stock and the corresponding amounts payable on any other Securities of equal ranking, the holders of Series N Preferred Stock and the holders of such other securities of equal ranking shall share ratably in any distribution of assets of the Company in proportion to the full respective liquidating distributions to which they would otherwise be respectively entitled.

Section 6.     Maturity.  The Series N Preferred Stock shall be perpetual unless redeemed by the Company in accordance with Section 7.

Section 7.     Redemptions.

(a)     The Series N Preferred Stock shall not be redeemable at the option of the holders at any time.

(b)     The Series N Preferred Stock shall be redeemable at the option of the Company in any of the following circumstances:

(i)     in whole but not in part, on any Dividend Payment Date prior to the Dividend Payment Date in _____, [2012] upon the occurrence of a

Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to the sum of:

(A)     the greater of:

(1)     $1,000,000 per share of Series N Preferred Stock and

(2)     The sum of the present value of $1,000,000 per share of Series N Preferred Stock, discounted from the Dividend Payment Date in _____, [2012] to the Redemption Date, and the present values of all undeclared dividends for each Dividend Period from the Redemption Date to and including the Dividend Payment Date in _____, [2012] discounted from their applicable Dividend Payment Dates to the Redemption Date, in each case on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, plus [_____%]; *plus*

(B)     any declared but unpaid dividends to the Redemption Date;

or

(ii)     in whole or in part, on any Dividend Payment Date on or after the Dividend Payment Date in _____, [2012], at a cash redemption price equal to $1,000,000 per share of Series N Preferred Stock, *plus* any declared and unpaid dividends to the Redemption Date;

In each case, without accumulation of any undeclared dividends with respect to Dividend Payment Date prior to the Redemption Date.

(c)     Dividends will cease to accrue on the Series N Preferred Stock called for redemption on and as of the date fixed for redemption and such Series N Preferred Stock will be deemed to cease to be outstanding, *provided* that the redemption price, including any authorized and declared but unpaid dividends for the current Dividend Period, if any, to the date fixed for redemption, has been duly paid or provision has been made for such payment.

(d)     In the case of any redemption under this Section 7, notice shall be mailed to each holder of record of the Series N Preferred Stock, not less than 30 nor more than 60 days prior to the Redemption Date specified in such notice; provided, however, that a longer minimum notice may be agreed to by the Company, including in a deposit agreement relating to depositary shares representing interests in the Series N Preferred Stock. The notice of redemption shall include a statement of (i) the Redemption Date, (ii) the redemption price, and (iii) the number of shares to be redeemed.

(e)     Any shares of Series N Preferred Stock redeemed pursuant to this Section 7 or otherwise acquired by the Company in any manner whatsoever shall become authorized but unissued preferred shares of the Company but such preferred shares shall not under any circumstances be reissued as Series N Preferred Stock. The Company shall

from time-to-time take such appropriate action as may be necessary to reduce the authorized number of shares of Series N Preferred Stock accordingly.

Section 8.     Voting Rights.

(a)     Holders of the Series N Preferred Stock will not have any voting rights, including the right to elect any directors, except (i) voting rights, if any, required by law, and (ii) voting rights, if any, described in this Section 8.

(b)     Holders of the Series N Preferred Stock will in the circumstances to the extent set forth in this Section 8(b), have the right to elect two directors.

(i)     If after the issuance of the Series N Preferred Stock the Company fails to pay, or declare and set aside for payment, full dividends on the Series N Preferred Stock or any other class or series of Parity Securities having similar voting rights ("Voting Parity Securities") for six Dividend Periods or their equivalent, the authorized number of the Company's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Series N Preferred Stock, voting together as a single and separate class with the holders of any outstanding Voting Parity Securities, will have the right to elect two directors in addition to the directors then in office at the Company's next annual meeting of shareholders.  This right will continue at each subsequent annual meeting until the Company pays dividends in full on the Series N Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or declares and sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series N Preferred Stock.

(ii)     The term of such additional directors will terminate, and the total number of directors will be decreased by two, at such time as the Company pays dividends in full on the Series N Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and declares and pays or sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series N Preferred Stock.  After the term of such additional directors terminates, the holders of the Series N Preferred Stock will not be entitled to elect additional directors unless full dividends on the Series N Preferred Stock have again not been paid or declared and set aside for payment for six future Dividend Periods.

(iii)     Any additional director elected by the holders of the Series N Preferred Stock and the Voting Parity Securities may only be removed by the vote of the holders of record of the outstanding Series N Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at a meeting of the Company shareholders called for that purpose.  Any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series N Preferred Stock and Voting Parity Securities, voting together as a single and separate class.

(c)     So long as any shares of Series N Preferred Stock are outstanding, the vote or consent of the holders of at least 66 2/3% of the shares of Series N Preferred Stock at the time outstanding, voting as a class with all other classes and series of Parity Securities upon which like voting rights have been conferred and are exercisable, given in

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

person or by proxy, either in writing without a meeting or by vote at any meeting called for the purpose, will be necessary for effecting or validating any of the following actions, whether or not such approval is required by Washington law:

(i) any amendment, alteration or repeal of any provision of the Company's Amended and Restated Articles of Incorporation (including the Articles of Amendment creating the Series N Preferred Stock) or the Company's bylaws that would alter or change the voting powers, preferences or special rights of the Series N Preferred Stock so as to affect them adversely;

(ii) any amendment or alteration of the Company's Amended and Restated Articles of Incorporation to authorize or create, or increase the authorized amount of, any shares of, or any securities convertible into shares of, any class or series of the Company's capital stock ranking prior to the Series N Preferred Stock in the payment of dividends or in the distribution of assets on any liquidation, dissolution or winding up of the Company; or

(iii) the consummation of a binding share exchange or reclassification involving the Series N Preferred Stock or a merger or consolidation of the Company with another entity, except that holders of Series N Preferred Stock will have no right to vote under this provision or under §23B.11.035 of the Revised Code of Washington or otherwise under Washington law if in each case (x) the Series N Preferred Stock remains outstanding or, in the case of any such merger or consolidation with respect to which the Company is not the surviving or resulting entity, is converted into or exchanged for preference securities of the surviving or resulting entity or its ultimate parent, and (y) such Series N Preferred Stock remaining outstanding or such preference securities, as the case may be, have such rights, preferences, privileges and voting powers, taken as a whole, as are not materially less favorable to the holders thereof than the rights, preferences, privileges and voting powers of the Series N Preferred Stock, taken as a whole;

*provided, however*, that any increase in the amount of the authorized or issued Series N Preferred Stock or authorized preferred stock or the creation and issuance, or an increase in the authorized or issued amount, of other series of preferred stock ranking equally with and/or junior to the Series N Preferred Stock with respect to the payment of dividends (whether such dividends are cumulative or non-cumulative) and/or the distribution of assets upon the Company's liquidation, dissolution or winding up will not be deemed to adversely affect the voting powers, preferences or special rights of the Series N Preferred stock and, notwithstanding §23B.10.040(1)(a), (e) or (f) of the Revised Code of Washington or any other provision of Washington law, holders of Series N Preferred Stock will have no right to vote on such an increase, creation or issuance.

(d) If an amendment, alteration, repeal, share exchange, reclassification, merger or consolidation described above would adversely affect one or more but not all series of preferred stock with like voting rights (including the Series N Preferred Stock for this purpose), then only the series affected and entitled to vote shall vote as a class in lieu of all such series of preferred stock.

Section 9.    <u>Certificates</u>.  The Company may at its option issue the Series N Preferred Stock without certificates.

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy & Development, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller.

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any one of the Authorized Officers to designate, finalize, determine and complete (it being understood that this authority includes without limitation making appropriate modifications of the preceding designation) the preferences, limitations, voting powers and relative rights of the Series N Preferred Stock, subject to the limits specified in these resolutions;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of the Series N Preferred Stock to be authorized, to determine the dividend rates and whether such rates are fixed, fixed-to-floating or floating (and to make appropriate modifications in other provisions to reflect such rates), to determine the liquidation amount, to designate situations in which the Company has the option to redeem the Series N Preferred Stock with or without make-whole provisions (including without limitation the terms of such make-whole provisions), to designate circumstances involving amendments to the Company's articles of incorporation as amended or involving mergers or other combinations or similar events in which holders of Series N Preferred Stock shall have voting rights, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for the Series N Preferred Stock with the Secretary of State of the State of Washington; provided, however, that (i) the number of shares of Series N Preferred Stock authorized shall not exceed 1,000, (ii) the liquidation preferences shall not exceed $1,000,000 per share, (iii) the dividend rate will be at a fixed rate not to exceed 10.5% per annum from the date of the issuance and, in the case of a fixed-to-floating rate election (upon the time the floating rate applies) or a floating rate election, will be at a floating rate equal to the relevant LIBOR applicable to such period plus a spread which will not exceed 600 basis points, and (iv) the Company will have the right to redeem the Series N Preferred Stock on a date that occurs no later than the first dividend payment date which is more than 10 years after the date on which the LLC Preferred Interests and the SPE Securities are issued.

RESOLVED FURTHER, that the Series N Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Series N Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that the number of shares authorized in the Designation as completed by an Authorized Officer as provided in these resolutions shall upon filing of the articles of amendment for the Series N Preferred Stock be fully reserved for issuance;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the SPE Securities in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (the "Securities Act"), to prepare, or cause to be prepared, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering;

RESOLVED FURTHER, that after filing with the Secretary of State of the State of Washington the articles of amendment designating the terms of the Series N Preferred Stock, but prior to the issuance of the shares of the series, the authority of each of the Authorized Officer to execute and file an amendment to the articles of amendment is hereby authorized, approved and confirmed, provided that any such filing shall be made only in order to make technical, clarifying or similar corrections or modifications and provided further that such corrections or modifications are consistent with the limitations established in these board resolutions and with the description of the series in the offering circular;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) purchase agreements with Goldman Sachs & Co. or an affiliate and/or other institutional purchasers, (ii) exchange agreements relating to the exchange of the LLC Preferred Interests and the SPE Securities into depositary shares representing interests in the Series N Preferred Stock, and (iii) declaration of covenants or other agreements, in favor of holders of SPE Securities and/or specified indebtedness of the Company, prohibiting the issuance by the Company of preferred stock senior to the Series N Preferred Stock, restricting sources of funds used to redeem the SPE Securities, or restricting dividends and distributions on the Company's stock if dividends are not paid on the SPE Securities), any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Series N Preferred Stock, the LLC Preferred Interests or the SPE Securities or to further the intent of these resolutions, subject to the limits set forth in these resolutions; and

RESOLVED FURTHER, that any actions taken by any of the Authorized Officers or any other proper officer of the Company prior to the adoption of these resolutions that is otherwise within the scope of the authority conferred by these resolutions is hereby ratified, confirmed and approved.



# Minutes of August 21, 2007 meeting of WMB Board of Directors

# WASHINGTON MUTUAL BANK
# BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual Bank (the "Association") held a special telephonic meeting on August 21, 2007.  Present were:  Farrell, Frank, Killinger, Leppert, Lillis, Matthews, Montoya, Murphy, Pugh, Reed, Smith and Stever.  The meeting was purely telephonic, with all Directors participating by means of a conference telephone enabling all participants to hear one another.  Mr. Killinger presided.  Also present, at the beginning of the meeting, were the Company's officers, Casey, Cathcart, Chapman, Rotella, Williams, and Lynch (secretary).  The Board met in joint session with the Board of Directors of Washington Mutual, Inc. (the "Holding Company").

…

## Capital Raising Transaction

Mr. Killinger submitted a proposal for the issuance of up to $1.5 billion in preferred securities (the "Delaware Preferred Securities") by the Delaware limited liability company that was organized in 2006 as an indirect operating subsidiary of the Association (the "WaMu Preferred Funding IV" issuance), depending on market conditions.  Investors would purchase certain other securities (the "Trust Securities") from a special purpose entity, which will use the proceeds of its issuance of Trust Securities to finance the purchase of the Delaware Preferred Securities.  The Holding Company will serve as a source of strength for the Association, as the Trust Securities will automatically be exchanged into depositary shares representing a fractional interest in a share of a new class of preferred stock of the Holding Company (the "WMI Preferred") upon the occurrence of certain possible events.  In response to a question by Mr. Stever, Mr. Casey explained the possible interest rate to be paid on the Trust Securities.  In response to a question by Mr. Stever, Mr. Casey identified likely investors and their locations.  On motion duly made and seconded, the Board unanimously resolved to approve the Association's actions in support of the WaMu Preferred Funding IV issuance.  A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes.

There being no further business, the meeting was adjourned.

## Appendix:

## A – Resolutions for Capital Raising Transaction

**Error! Unknown document property name.**          **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007

<u>**Appendix A – Resolutions for Capital Raising Transaction**</u>

**Board of Directors Resolutions**

WHEREAS, Washington Mutual Bank (the "Bank") directly owns all of the issued and outstanding common stock of Seneca Holdings, Inc. ("Seneca Holdings"), indirectly owns all of the interests in WM Marion Holdings, LLC ("WM Marion") and indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street owns all of the issued and outstanding common interests in Washington Mutual Preferred Funding LLC ("WMPF LLC");

WHEREAS, it is proposed that the Bank will make an equity contribution to Seneca Holdings to consist of loans or interests therein not to exceed $3.4 billion in book value (the "Seneca Holdings Contribution"); that Seneca Holdings will make an equity contribution of such loans or interests to WM Marion; that WM Marion will make an equity contribution of such loans to University Street; and that University Street will make an equity contribution of such loans to WMPF LLC;

WHEREAS, it is proposed that in addition to the Seneca Holdings Contribution, the Bank will contribute to WMPF LLC assets consisting of loans or interests therein not to exceed $1.0 billion (the "LLC Contribution);

WHEREAS, WMPF LLC proposes to issue a new class or series of preferred interests (the "LLC Preferred Interests") to either (a) a newly formed special purpose entity ("SPE"), (b) University Street or (c) the Bank;

WHEREAS, it is proposed that the LLC Preferred Interests will be sold or transferred by WMPF LLC, University Street or the Bank, as the case may be, to the SPE which, in turn, will issue substantially similar securities (the "SPE Securities") to investors; and

WHEREAS, it is proposed that the Bank's parent, Washington Mutual, Inc. ("WMI"), will authorize a new series of preferred stock (the "WMI Preferred Stock") and under certain circumstances the SPE Securities will be automatically exchanged into depositary shares representing interests in the WMI Preferred Stock.

THEREFORE, IT IS HEREBY RESOLVED, that the Seneca Holdings Contribution and the LLC Contribution are hereby authorized and approved (and any and all prior contributions or transfers to University Street and the LLC relating to transactions with WMPF LLC are approved, confirmed and ratified), and any Authorized Officer (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements or documents as such Authorized Officer deems necessary or appropriate in connection with such contributions;

RESOLVED FURTHER, that the Bank is hereby authorized to transfer, or to cause its designee to transfer, any LLC Preferred Interests that it may receive to the SPE in exchange for cash and any Authorized Officer is hereby authorized on behalf of

the Bank to negotiate, execute and deliver any agreements or documents as such Authorized Officer deems necessary or appropriate in connection with such transfers;

RESOLVED FURTHER, that each of the Authorized Officers (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements with WMPF LLC, the SPE or any other party as such Authorized Officer deems necessary or appropriate in connection with the transactions contemplated by these resolutions, as well as the management, operation or administration of WMPF LLC;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Bank and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, in the event that it is deemed necessary or desirable so to do, in connection with the transfer, sale or offering of the LLC Preferred Interests or SPE Securities, as the case may be, in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (a "Reg S Offering"), to prepare, cause to be prepared or to participate in the preparation of, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering or a Reg S Offering;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Bank (including, without limitation, those authorized from time to time pursuant to the Bank's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Bank (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance or transfers of the LLC Preferred Interests or to further the intent of these resolutions;

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) any Executive Vice President, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller; and

RESOLVED FURTHER, that any actions taken by any of the Authorized Officers or any other proper officer of the Bank prior to the adoption of these resolutions that is otherwise within the scope of the authority conferred by these resolutions is hereby ratified, confirmed and approved.

**Error! Unknown document property name.**　　　3　　　**WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS SEPTEMBER 25, 2007



**Minutes of October 16, 2007 meeting of WMI Board of Directors**

# WASHINGTON MUTUAL, INC.
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual, Inc. (the "Company") held its October meeting on Tuesday, October 16, 2007 in Seattle, Washington. Present were: Frank, Killinger, Leppert, Lillis, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. (Ms. Osmer McQuade participated by means of a conference telephone enabling all participants to hear one another.) Mr. Killinger presided. Also present, at the beginning of the meeting, were the Company's officers, Casey, Cathcart, Chapman, David, Rotella and Lynch (secretary). The Board of the Company met in joint session with the Board of Directors of the Company's primary banking institution subsidiary, Washington Mutual Bank ("WMB").

...

## Preferred Stock - Modified Series N Authorization and Series O and P Approval

Ms. Pugh reported that the Finance Committee had reviewed proposals with regard to the issuance of capital securities, including a proposal to modify the authorization for the Company's Series N Preferred stock and proposals to authorize the Company's issuance of Series O Preferred stock and Series P Preferred stock. The Company would serve as a source of strength for WMB in specific circumstances, when depositary shares representing a fractional interest in Series N or Series O Preferred stock automatically would be issued in exchange for certain other securities (the "Entity Securities") to be issued by one of two or more entities, which will use the proceeds of issuance of Entity Securities to finance the purchase in preferred securities ("Delaware Preferred Securities") to be issued by the Delaware limited liability company that was organized in 2006 as an indirect operating subsidiary of WMB. The Company would issue the Series N Preferred stock upon the occurrence of a Exchange Event affecting up to $1.5 billion in Delaware Preferred Securities (as authorized under the resolutions that were adopted by the Board at its August 21, 2007, meeting) and would issue the Series O Preferred stock upon the occurrence of a Exchange Event affecting certain Entity Securities issued by a Cayman Islands or other foreign entity to purchase up to $2.0 billion in Delaware Preferred Securities. In response to market conditions, the coupon range for the Series N Preferred stock would be wider than authorized at the August 21 meeting, whereas the issuance of Series P Preferred stock would be independent of the issuance of Entity Securities and Delaware Preferred Securities. Ms. Pugh reported that the Finance Committee recommended approval of all of these proposals. On motion duly made and seconded, the Board resolved to modify the authorization for the Series N Preferred stock and to authorize the issuance of Series O Preferred stock and Series P Preferred stock. A copy of the resolutions will be kept in the minute book as an appendix to these minutes.

...

There being no further business the meeting was adjourned.

## Appendices:

**A – Resolutions Declaring Dividend on Common Stock and Series K Preferred Stock**

**B – Resolutions for Series N Preferred Stock, Series O Preferred Stock, and Series P DRD Preferred Stock**

**C – Schedule of Officer Elections, Promotions, Transfers and Other Changes**

**Error! Unknown document property name.**          2          **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

## Appendix B – Resolutions related to Series N Preferred Stock, Series O Preferred Stock, and Series P DRD Preferred Stock

### (Series N Preferred Stock – Supplemental Resolutions)

WHEREAS, at a meeting of the Board of Directors (the "Board") of Washington Mutual, Inc. (the "Company") duly called and held on August 21, 2007, the Board adopted resolutions (the "Original Resolutions") relating to and authorizing the creation out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock initially designated as the "Series N Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series N Preferred Stock");

WHEREAS, the Original Resolutions also, among other matters, delegated authority to appropriate officers of the Company to determine, complete and modify, within the limits specifically prescribed in the Original Resolutions, the designation, relative rights, voting powers, preferences and limitations of the Series N Preferred Stock;

WHEREAS, the Board is contemplating the authorization of additional series of preferred stock of the Company whose designation will include the term "Series O" (the "Series O Preferred Stock"); and

WHEREAS, the Board now desires, because of recent changes in capital market conditions, to adjust certain of the limits in the Original Resolutions.

THEREFORE, IT IS HEREBY RESOLVED, that notwithstanding anything to the contrary contained in the Original Resolutions, the Authorized Officers (as that term is defined in the Original Resolutions), and any one of them acting alone, shall have the authority to determine the dividend rate of the Series N Preferred Stock and the number of shares of the Series N Preferred Stock, provided that (i) the dividend rate will be at a fixed rate not to exceed 13.0% per annum from the date of the issuance and, in the case of a fixed-to-floating rate election (upon the time the floating rate applies) or a floating rate election, will be at a floating rate equal to the relevant LIBOR applicable to such period plus a spread which will not exceed 800 basis points and (ii) the number of authorized shares of Series N Preferred Stock shall not exceed 2,000 and, in addition, the sum of the number of authorized shares of Series N Preferred Stock and the number of authorized shares of Series O Preferred Stock shall not exceed 2,000; and

RESOLVED FURTHER, that except as set forth herein, the Original Resolutions and all of the other terms, limits, delegations of authority and other conditions with respect to the Series N Preferred Stock set forth therein shall remain in full force and effect and are hereby ratified and confirmed in all respects.

**(Series O Preferred Stock)**

WHEREAS, Washington Mutual, Inc. (the "Company") indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, Washington Mutual Preferred Funding LLC, a Delaware limited liability company ("WMPF LLC"), is a subsidiary of University Street;

WHEREAS, WMPF LLC previously issued preferred membership interests to Washington Mutual Bank ("WMB"), in exchange for transfers of mortgage loan assets;

WHEREAS, it is proposed that WMPF LLC will issue to University Street, to a Cayman Islands or other foreign entity (the "Cayman Entity") and/or to WMB one or more new series or class (or classes, as the case may be) of preferred interests (the "LLC Preferred Interests") which LLC Preferred Interests in the aggregate will not exceed $2.0 billion;

WHEREAS, if LLC Preferred Interests are issued to University Street, then University Street will, in turn, transfer or sell the LLC Preferred Interests to the Cayman Entity and if WMPF LLC interests are issued to WMB, then WMB will, in turn, transfer or sell the LLC Preferred interests to the Cayman Entity;

WHEREAS, upon or concurrently with receipt of the LLC Preferred Interests, the Cayman Entity will, in turn, issue substantially similar securities (the "Cayman Securities") to investors for cash;

WHEREAS, under specified circumstances, the Cayman Securities will automatically be exchanged for depositary shares representing fractional interests in shares of a new series of preferred stock of the Company; and

WHEREAS, the Board desires to authorize the issuance of such new series of such preferred stock, to establish substantive terms or limits of such series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and relative rights, voting powers, preferences and limitations of such series and to provide for other matters relating to the preferred stock and the LLC Preferred Interests.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock which, unless an Authorized Officer determines that such series should bear a fixed-to-floating dividend rate or a floating dividend rate, shall be designated as the "Series O Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series O Preferred Stock"). The number of shares constituting such series shall not exceed 2,000; provided that, in addition, the sum of the shares constituting such series and the shares constituting the Company's series of preferred stock defined as "Series N Preferred Stock" in resolutions adopted by the Board at its meeting held on August 21, 2007, shall not exceed 2,000. The stock in such series shall have no par value;

FURTHER RESOLVED, that the Series O Preferred Stock shall have preferences, limitations, voting powers and relative rights set forth below, subject to completion or

**Error! Unknown document property name.**     4     **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

modification by the Authorized Officers as provided herein:

## DESIGNATION

Section 1. <u>Designation</u>. There is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series O Perpetual Non-cumulative Fixed Rate Preferred Stock" (the "Series O Preferred Stock"). The number of shares constituting such series shall be _____. The Series O Preferred Stock shall have no par value per share and the liquidation preference of the Series O Preferred Stock shall be $1,000,000.00 per share. Shares of the Series O Preferred Stock shall be issued if and only if a Conditional Exchange occurs.

Section 2. <u>Ranking</u>.

The Series O Preferred Stock will, with respect to dividend rights and rights on liquidation, winding-up and dissolution, rank (i) on a parity with the Company's Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series I Preferred Stock"), the Company's Series J Perpetual Non-cumulative Fixed Rate Preferred Stock (the "Series J Preferred Stock"), the Company's Series K Perpetual Non-Cumulative Floating Rate Preferred Stock (the "Series K Preferred Stock"), the Company's Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series L Preferred Stock"), the Company's Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock (the "Series M Preferred Stock"), the Company's Series N Perpetual Non-cumulative Fixed-Rate Preferred Stock (the "Series N Preferred Stock") and with each other class or series of preferred stock established after the Designation Date by the Company the terms of which expressly provide that such class or series will rank on a parity with the Series O Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Parity Securities") and (ii) senior to the Company's common stock (the "Common Stock"), the Company's Series RP Preferred Stock and each other class of capital stock outstanding or established after the Designation Date by the Company the terms of which do not expressly provide that it ranks on a parity with or senior to the Series O Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company, including the Common Stock (collectively referred to as "Junior Securities"). The Company shall have the right to authorize and/or issue additional shares or series of Junior Securities and Parity Securities without the consent of the holders of the Series O Preferred Stock.

Section 3. <u>Definitions.</u> Unless the context or use indicates another meaning or intent, the following terms shall have the following meanings, whether used in the singular or the plural:

(a) "<u>Business Day</u>" means any day other than a Saturday, Sunday or any other day on which banks in New York City, New York, or Seattle, Washington are generally required or authorized by law to be closed.

(b) "<u>Cayman Preferred Securities</u>" means the ___% Perpetual Non-cumulative Preferred Securities, Series 2007-[__], liquidation preference $1,000 per security, issued or to be issued by [Washington Mutual Preferred Funding (Cayman) II Ltd.], a [_____].

(c) "<u>Common Stock</u>" has the meaning set forth in Section 2.

(d)    "Company" means Washington Mutual, Inc., a Washington corporation.

(e)    "Comparable Treasury Issue" means the United States Treasury security selected by the Independent Investment Banker as having a maturity comparable to the term remaining to the Dividend Payment Date in _____, [2012] that would be utilized, at the time of selection and in accordance with customary financial practice, in pricing new issues of perpetual preferred securities having similar terms as the Series O Preferred Stock with respect to the payment of dividends and distributions of assets upon liquidation, dissolution or winding-up of the issuer of such preferred stock.

(f)    "Comparable Treasury Price" means with respect to any Redemption Date the average of the Reference Treasury Dealer Quotations for such Redemption Date, after excluding the highest and lowest of such Reference Treasury Dealer Quotations, or if the Independent Investment Banker obtains fewer than five such Reference Treasury Dealer Quotations, the average of all such quotations.

(g)    "Conditional Exchange" means the automatic exchange of the Cayman Securities into depositary shares representing an interest in the Series O Preferred Stock which occurs upon the written direction of the OTS upon or after the occurrence of an Exchange Event.

(h)    "Delaware Preferred Securities" means the ___% Perpetual Non-cumulative Preferred Securities, Series 2007-C, liquidation preference $1,000 per security, issued or to be issued by Washington Mutual Preferred Funding LLC, a Delaware limited liability company.

(i)    "Designation Date" means _____, 2007.

(j)    "Dividend Payment Date" has the meaning set forth in Section 4(b).

(k)    "Dividend Period" has the meaning set forth in Section 4(b).

(l)    "Exchange Event" means the occurrence of any one of the following at a time as the Cayman Securities are issued and outstanding:

(i)    WMB becomes undercapitalized under the Prompt Corrective Action Regulations;

(ii)    WMB is placed into conservatorship or receivership; or

(iii)    the OTS, in its sole discretion, directs an exchange of the Cayman Securities into depositary shares representing an interest in the Series O Preferred Stock in anticipation of WMB becoming undercapitalized under the Prompt Corrective Action Regulations or of the OTS taking any supervisory action that limits the payment of dividends by WMB.

(m)    "Independent Investment Banker" means an independent investment banking institution of national standing appointed by the Company.

(n)    "Junior Securities" has the meaning set forth in Section 2.

**Error! Unknown document property name.**    6    **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

(o)     "OTS" means the Office of Thrift Supervision or any successor regulatory entity.

(p)     "Parity Securities" has the meaning set forth in Section 2.

(q)     "Primary Treasury Dealer" has the meaning set forth in Section 3(u).

(r)     "Prompt Corrective Action Regulation" means 12 C.F.R. Part 565 as in effect from time to time, or any successor regulation.

(s)     "Rating Agencies" means, at any time, Standard & Poor's Rating Services, a Division of the McGraw-Hill Companies, Inc., Moody's Investors Service, Inc. and Fitch, Inc., but only in the case of each such agency if it is rating the relevant security, including the Delaware Preferred Securities at the relevant time or, if none of them is providing a rating for the relevant security, including the Delaware Preferred Securities at such time, then any "nationally recognized statistical rating organization" as that phrase is defined for purposes of Rule 436(g)(2) under the Securities Act of 1933, as amended, which is rating such relevant security.

(t)     A "Rating Agency Event" occurs when the Company reasonably determines that an amendment, clarification or change has occurred in the equity criteria for securities such as the Delaware Preferred Securities of any Rating Agency that then publishes a rating for the Company which amendment, clarification or change results in a lower equity credit for the Company than the respective equity credit assigned by such Rating Agency to the Delaware Preferred Securities on the Designation Date.

(u)     "Redemption Date" means any date that is designated by the Company in a notice of redemption delivered pursuant to Section 7.

(v)     "Reference Treasury Dealer" means each of the three primary U.S. government securities dealers (each, a "Primary Treasury Dealer"), as specified by the Company; provided that if any Primary Treasury Dealer as specified by the Company ceases to be a Primary Treasury Dealer, the Company will substitute for such Primary Treasury Dealer another Primary Treasury Dealer and if the Company fails to select a substitute within a reasonable period of time, then the substitute will be a Primary Treasury Dealer selected by the Independent Investment Banker after consultation with the Company.

(w)     "Reference Treasury Dealer Quotations" means, with respect to the Reference Treasury Dealer and any Redemption Date, the average, as determined by the Independent Investment Banker, of the bid and asked prices for the Comparable Treasury Issue (expressed, in each case, as a percentage of its principal amount) quoted in writing to the Independent Investment Banker by such Reference Treasury Dealer at 5:00 p.m., New York City time, on the third Business Day preceding such Redemption Date.

(x)     A "Regulatory Capital Event" occurs when the Company determines, based upon receipt of an opinion of counsel, that there is a significant risk that the Delaware Preferred Securities will no longer constitute core capital of WMB for purposes of the capital adequacy regulations issued by the OTS as a result of a change in applicable laws, regulations or related interpretations after issuance of the Delaware Preferred Securities.

(y)     "Series I Preferred Stock" has the meaning set forth in Section 2.

**Error! Unknown document property name.**          7          **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

(z)  "Series J Preferred Stock" has the meaning set forth in Section 2.

(aa)  "Series K Preferred Stock" has the meaning set forth in Section 2.

(bb)  "Series L Preferred Stock" has the meaning set forth in Section 2.

(cc)  "Series M Preferred Stock" has the meaning set forth in Section 2.

(dd)  "Series N Preferred Stock" has the meaning set forth in Section 2.

(ee)  "Series O Preferred Stock" has the meaning set forth in Section 1.

(ff)  "Treasury Rate" means the rate per year equal to the quarterly equivalent yield to maturity of the Comparable Treasury Issue, calculated using a price for the Comparable Treasury Issue (expressed as a percentage of its principal amount) equal to the Comparable Treasury Price for the relevant Redemption Date.  The Treasury Rate will be calculated on the third Business Day preceding the relevant Redemption Date.

(gg)  "Voting Parity Securities" has the meaning set forth in Section 8(b).

(hh)  "WMB" means Washington Mutual Bank, a federal savings association and a subsidiary of the Company, or its successor.

Section 4  Dividends.

(a)  Holders of shares of Series O Preferred Stock shall be entitled to receive, if, when and as declared by the Board of Directors, out of the funds legally available therefor, non-cumulative cash dividends in the amount determined as set forth in Section 4(c), and no more.

(b)  Subject to Section 4(a), dividends shall be payable in arrears on March 15, June 15, September 15 and December 15 of each year commencing on the first such day after the issuance of the Series O Preferred Stock or, in each case, if any such day is not a Business Day, the next Business Day (each, a "Dividend Payment Date"). Each dividend will be payable to holders of record as they appear on the stock books of the Company on the first day of the month in which the relevant Dividend Payment Date occurs or, if such date is not a Business Day, the first Business Day of such month.  Each period from and including a Dividend Payment Date (or the date of the issuance of the Series O Preferred Stock) to but excluding the following Dividend Payment Date (or the Redemption Date) is herein referred to as "Dividend Period".

(c)  After issuance of the Series O Preferred Stock, dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series O Preferred Stock, at an annual rate of _____% on the per share liquidation preference of the Series O Preferred Stock.  Dividends payable for any Dividend Period greater or less than a full Dividend Period will be computed on the basis of twelve 30-day months, a 360-day year, and the actual number of days elapsed in the period.  No interest will be paid on any dividend payment of the Series O Preferred Stock.

(d)  Dividends on the Series O Preferred Stock are non-cumulative.  If the Board of Directors does not declare a dividend on the Series O Preferred Stock or declares

**Error! Unknown document property name.**          8          **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

less than a full dividend in respect of any Dividend Period, the holders of the Series O Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and the Company will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Series O Preferred Stock or the Common Stock or any other class or series of the Company's preferred stock.

   (e)  If full dividends on all outstanding shares of the Series O Preferred Stock for any Dividend Period have not been declared and paid, the Company shall not declare or pay dividends with respect to, or redeem, purchase or acquire any of, its equity capital securities during the next succeeding Dividend Period, except dividends in connection with the Series RP Preferred Stock or other shareholders' rights plan, if any, or dividends in connection with benefit plans.

   Section 5  <u>Liquidation</u>.

   (a)  In the event the Company voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series O Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $1,000,000 per share of Series O Preferred Stock, plus an amount equal to any declared but unpaid dividends thereon for the current Dividend Period to and including the date of such liquidation, out of assets legally available for distribution to its shareholders, before any distribution of assets is made to the holders of Common Stock or any securities ranking junior to the Series O Preferred Stock. After payment of the full amount of such liquidating distributions, the holders of Series O Preferred Stock will not be entitled to any further participation in any distribution of assets by, and shall have no right or claim to any remaining assets of, the Company.

   (b)  In the event the assets of the Company available for distribution to shareholders upon any liquidation, dissolution or winding-up of the affairs of the Company, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to all outstanding shares of the Series O Preferred Stock and the corresponding amounts payable on any other Securities of equal ranking, the holders of Series O Preferred Stock and the holders of such other securities of equal ranking shall share ratably in any distribution of assets of the Company in proportion to the full respective liquidating distributions to which they would otherwise be respectively entitled.

   Section 6  <u>Maturity</u>.  The Series O Preferred Stock shall be perpetual unless redeemed by the Company in accordance with Section 7.

   Section 7  <u>Redemptions</u>.

   (a)  The Series O Preferred Stock shall not be redeemable at the option of the holders at any time.

   (b)  The Series O Preferred Stock shall be redeemable at the option of the Company in any of the following circumstances:

     (i)  in whole but not in part, on any Dividend Payment Date prior to the Dividend Payment Date in _____, [2012] upon the occurrence of a

Regulatory Capital Event or a Rating Agency Event, at a cash redemption price equal to the sum of:

(A)     the greater of:

(1)     $1,000,000 per share of Series O Preferred Stock and

(2)     The sum of the present value of $1,000,000 per share of Series O Preferred Stock, discounted from the Dividend Payment Date in _____, to the Redemption Date, and the present values of all undeclared dividends for each Dividend Period from the Redemption Date to and including the Dividend Payment Date in _____, discounted from their applicable Dividend Payment Dates to the Redemption Date, in each case on a quarterly basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate, as calculated by an Independent Investment Banker, plus [_____%]; *plus*

(B)     any declared but unpaid dividends to the Redemption Date;

or

(ii)     in whole or in part, on any Dividend Payment Date on or after the Dividend Payment Date in _____, at a cash redemption price equal to $1,000,000 per share of Series O Preferred Stock, *plus* any declared and unpaid dividends to the Redemption Date;

Section 1. In each case, without accumulation of any undeclared dividends with respect to Dividend Payment Date prior to the Redemption Date.

(c)     Dividends will cease to accrue on the Series O Preferred Stock called for redemption on and as of the date fixed for redemption and such Series O Preferred Stock will be deemed to cease to be outstanding, *provided* that the redemption price, including any authorized and declared but unpaid dividends for the current Dividend Period, if any, to the date fixed for redemption, has been duly paid or provision has been made for such payment.

(d)     In the case of any redemption under this Section 7, notice shall be mailed to each holder of record of the Series O Preferred Stock, not less than 30 nor more than 60 days prior to the Redemption Date specified in such notice; provided, however, that a longer minimum notice may be agreed to by the Company, including in a deposit agreement relating to depositary shares representing interests in the Series O Preferred Stock.  The notice of redemption shall include a statement of (i) the Redemption Date, (ii) the redemption price, and (iii) the number of shares to be redeemed.

(e)     Any shares of Series O Preferred Stock redeemed pursuant to this Section 7 or otherwise acquired by the Company in any manner whatsoever shall become authorized but unissued preferred shares of the Company but such preferred shares shall not under any circumstances be reissued as Series O Preferred Stock. The Company shall from time-to-time take such appropriate action as may be necessary to reduce the authorized number of shares of Series O Preferred Stock accordingly.

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

Section 8    <u>Voting Rights</u>.

(a)    Holders of the Series O Preferred Stock will not have any voting rights, including the right to elect any directors, except (i) voting rights, if any, required by law, and (ii) voting rights, if any, described in this Section 8.

(b)    Holders of the Series O Preferred Stock will in the circumstances to the extent set forth in this Section 8(b), have the right to elect two directors.

(i)    If after the issuance of the Series O Preferred Stock the Company fails to pay, or declare and set aside for payment, full dividends on the Series O Preferred Stock or any other class or series of Parity Securities having similar voting rights ("Voting Parity Securities") for six Dividend Periods or their equivalent, the authorized number of the Company's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Series O Preferred Stock, voting together as a single and separate class with the holders of any outstanding Voting Parity Securities, will have the right to elect two directors in addition to the directors then in office at the Company's next annual meeting of shareholders.  This right will continue at each subsequent annual meeting until the Company pays dividends in full on the Series O Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or declares and sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series O Preferred Stock.

(ii)    The term of such additional directors will terminate, and the total number of directors will be decreased by two, at such time as the Company pays dividends in full on the Series O Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and declares and pays or sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series O Preferred Stock.  After the term of such additional directors terminates, the holders of the Series O Preferred Stock will not be entitled to elect additional directors unless full dividends on the Series O Preferred Stock have again not been paid or declared and set aside for payment for six future Dividend Periods.

(iii)    Any additional director elected by the holders of the Series O Preferred Stock and the Voting Parity Securities may only be removed by the vote of the holders of record of the outstanding Series O Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at a meeting of the Company shareholders called for that purpose.  Any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series O Preferred Stock and Voting Parity Securities, voting together as a single and separate class.

(c)    So long as any shares of Series O Preferred Stock are outstanding, the vote or consent of the holders of at least 66 2/3% of the shares of Series O Preferred Stock at the time outstanding, voting as a class with all other classes and series of Parity Securities upon which like voting rights have been conferred and are exercisable, given in person or by proxy, either in writing without a meeting or by vote at any meeting called for the purpose, will be necessary for effecting or validating any of the following actions, whether or not such approval is required by Washington law:

**Error! Unknown document property name.**    11    **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

(i)     any amendment, alteration or repeal of any provision of the Company's Amended and Restated Articles of Incorporation (including the Articles of Amendment creating the Series O Preferred Stock) or the Company's bylaws that would alter or change the voting powers, preferences or special rights of the Series O Preferred Stock so as to affect them adversely;

(ii)     any amendment or alteration of the Company's Amended and Restated Articles of Incorporation to authorize or create, or increase the authorized amount of, any shares of, or any securities convertible into shares of, any class or series of the Company's capital stock ranking prior to the Series O Preferred Stock in the payment of dividends or in the distribution of assets on any liquidation, dissolution or winding up of the Company; or

(iii)     the consummation of a binding share exchange or reclassification involving the Series O Preferred Stock or a merger or consolidation of the Company with another entity, except that holders of Series O Preferred Stock will have no right to vote under this provision or under §23B.11.035 of the Revised Code of Washington or otherwise under Washington law if in each case (x) the Series O Preferred Stock remains outstanding or, in the case of any such merger or consolidation with respect to which the Company is not the surviving or resulting entity, is converted into or exchanged for preference securities of the surviving or resulting entity or its ultimate parent, and (y) such Series O Preferred Stock remaining outstanding or such preference securities, as the case may be, have such rights, preferences, privileges and voting powers, taken as a whole, as are not materially less favorable to the holders thereof than the rights, preferences, privileges and voting powers of the Series O Preferred Stock, taken as a whole;

*provided, however,* that any increase in the amount of the authorized or issued Series O Preferred Stock or authorized preferred stock or the creation and issuance, or an increase in the authorized or issued amount, of other series of preferred stock ranking equally with and/or junior to the Series O Preferred Stock with respect to the payment of dividends (whether such dividends are cumulative or non-cumulative) and/or the distribution of assets upon the Company's liquidation, dissolution or winding up will not be deemed to adversely affect the voting powers, preferences or special rights of the Series O Preferred stock and, notwithstanding §23B.10.040(1)(a), (e) or (f) of the Revised Code of Washington or any other provision of Washington law, holders of Series O Preferred Stock will have no right to vote on such an increase, creation or issuance.

(d)     If an amendment, alteration, repeal, share exchange, reclassification, merger or consolidation described above would adversely affect one or more but not all series of preferred stock with like voting rights (including the Series O Preferred Stock for this purpose), then only the series affected and entitled to vote shall vote as a class in lieu of all such series of preferred stock.

Section 9     Certificates.  The Company may at its option issue the Series O Preferred Stock without certificates.

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer":  (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy &

Development, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller;

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any one of the Authorized Officers to designate, finalize, determine and complete (it being understood that this authority includes without limitation making appropriate modifications of the preceding designation) the preferences, limitations, voting powers and relative rights of the Series O Preferred Stock, subject to the limits specified in these resolutions;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of the Series O Preferred Stock to be authorized, to determine the dividend rates and whether such rates are fixed, fixed-to-floating or floating (and to make appropriate modifications in other provisions to reflect such rates), to determine the liquidation amount, to designate situations in which the Company has the option to redeem the Series O Preferred Stock with or without make-whole provisions (including without limitation the terms of such make-whole provisions), to designate circumstances involving amendments to the Company's articles of incorporation as amended or involving mergers or other combinations or similar events in which holders of Series O Preferred Stock shall have voting rights, to approve the form of any stock certificate and to prepare and authorize the filing of articles of amendment for the Series O Preferred Stock with the Secretary of State of the State of Washington; provided, however, that (i) the number of shares of Series O Preferred Stock authorized shall not exceed 2,000 and, in addition, the sum of the number of authorized shares of Series O Preferred Stock and the number of authorized shares of Series N Preferred Stock shall not exceed 2,000, (ii) the liquidation preferences shall not exceed $1,000,000 per share, (iii) the dividend rate will be at a fixed rate not to exceed 13.0% per annum from the date of the issuance and, in the case of a fixed-to-floating rate election (upon the time the floating rate applies) or a floating rate election, will be at a floating rate equal to the relevant LIBOR applicable to such period plus a spread which will not exceed 800 basis points, and (iv) the Company will have the right to redeem the Series O Preferred Stock on a date that occurs no later than the first dividend payment date which is more than 10 years after the date on which the LLC Preferred Interests and the Cayman Securities are issued;

RESOLVED FURTHER, that the Series O Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Series O Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that the number of shares authorized in the Designation as completed by an Authorized Officer as provided in these resolutions shall upon filing of the articles of amendment for the Series O Preferred Stock be fully reserved for issuance;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized

Error! Unknown document property name.          13          **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Preferred Stock, the LLC Preferred Interests or the Cayman Securities in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (the "Securities Act"), to prepare, or cause to be prepared, an offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering;

RESOLVED FURTHER, that after filing with the Secretary of State of the State of Washington the articles of amendment designating the terms of the Series O Preferred Stock, but prior to the issuance of the shares of the series, the authority of each of the Authorized Officer to execute and file an amendment to the articles of amendment is hereby authorized, approved and confirmed, provided that any such filing shall be made only in order to make technical, clarifying or similar corrections or modifications and provided further that such corrections or modifications are consistent with the limitations established in these board resolutions and with the description of the series in the offering circular;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) purchase agreements with Goldman Sachs & Co. or an affiliate and/or other institutional purchasers, (ii) exchange agreements relating to the exchange of the LLC Preferred Interests and the Cayman Securities into depositary shares representing interests in the Series O Preferred Stock, and (iii) declaration of covenants or other agreements, in favor of holders of Cayman Securities and/or specified indebtedness of the Company, prohibiting the issuance by the Company of preferred stock senior to the Series O Preferred Stock, restricting sources of funds used to redeem the Cayman Securities, or restricting dividends and distributions on the Company's stock if dividends are not paid on the Cayman Securities), any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Series O Preferred Stock, the LLC Preferred Interests or the Cayman Securities or to further the intent of these resolutions, subject to the limits set forth in these resolutions; and

RESOLVED FURTHER, that any actions taken by any of the Authorized Officers or any other proper officer of the Company prior to the adoption of these resolutions that is otherwise within the scope of the authority conferred by these resolutions is hereby ratified, confirmed and approved.

[remainder of the page left blank intentionally]

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

**(Series P DRD Preferred Stock)**

WHEREAS, the Board of Directors of Washington Mutual, Inc. (the "Company") desires to authorize the issuance of a new series of preferred stock, to establish substantive terms of the series, to delegate authority to appropriate officers of the Company to determine, within the limits specifically prescribed in these resolutions, the designation and preferences, limitations, voting powers and relative rights of the series and to provide for other matters relating to the preferred stock.

THEREFORE, IT IS HEREBY RESOLVED, that there is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series P Perpetual Non-Cumulative Preferred Stock" (the "Series P Preferred Stock"). The number of shares constituting such series shall not exceed 2,000. The stock in such series shall have no par value.

FURTHER RESOLVED, that the Series P Preferred Stock shall have the preferences, limitations, voting powers and relative rights set forth in the designation for such series set forth below subject to completion or modification by Authorized Officers as provided herein:

## DESIGNATION

**Section 1.    Designation.**    There is hereby created out of the authorized and unissued shares of preferred stock of the Company a series of preferred stock designated as the "Series P Perpetual Non-Cumulative Floating Rate Preferred Stock" (the "Series P Preferred Stock"). The number of shares constituting such series shall be _____.    The Series P Preferred Stock shall have no par value per share and the liquidation preference of the Series P Preferred Stock shall be $1,000,000.00 per share.

**Section 2.    Ranking.**    The Series P Preferred Stock will, with respect to dividend rights and rights on liquidation, winding-up and dissolution, rank (i) on a parity with the Series I Preferred Stock, the Series J Preferred Stock, the Series K Preferred Stock, the Series L Preferred Stock, the Series M Preferred Stock, the Series N Preferred Stock and the Series O Preferred Stock and with each other class or series of preferred stock established after the Effective Date by the Company the terms of which expressly provide that such class or series will rank on a parity with the Series P Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Parity Securities") and (ii) senior to the Company's common stock (the "Common Stock"), the Company's Series RP Preferred Stock and each other class or series of capital stock outstanding or established after the Effective Date by the Company the terms of which do not expressly provide that it ranks on a parity with or senior to the Series P Preferred Stock as to dividend rights and rights on liquidation, winding-up and dissolution of the Company (collectively referred to as "Junior Securities"). The Company has the right to authorize and/or issue additional shares or series of Junior Securities or Parity Securities without the consent of the holders of the Series P Preferred Stock.

**Section 3.  Definitions.**    Unless the context or use indicates another meaning or intent, the following terms shall have the following meanings, whether used in the singular or the plural:

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

(a)    "3-Month USD LIBOR" means, with respect to any Dividend Period, a rate determined on the basis of the offered rates for three-month U.S. dollar deposits, commencing on the first day of such Dividend Period, which appears on Reuters Screen LIBOR01 Page as of approximately 11:00 a.m., London time, on the LIBOR Determination Date for such Dividend Period.  If on any LIBOR Determination Date no rate appears on Reuters Screen LIBOR01 Page as of approximately 11:00 a.m., London time, the Company or an affiliate of the Company on behalf of the Company will on such LIBOR Determination Date request four major reference banks in the London interbank market selected by the Company to provide the Company with a quotation of the rate at which three-month deposits in U.S. dollars, commencing on the first day of such Dividend Period, are offered by them to prime banks in the London interbank market as of approximately 11:00 a.m., London time, on such LIBOR Determination Date and in a principal amount equal to that which is representative for a single transaction in such market at such time.  If at least two such quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of such quotations as calculated by the Company.  If fewer than two quotations are provided, 3-Month USD LIBOR for such Dividend Period will be the arithmetic mean (rounded upward if necessary to the nearest .00001 of 1%) of the rates quoted as of approximately 11:00 am., New York time, on the first day of such Dividend Period by three major banks in New York City, New York selected by the Company for loans in U.S. dollars to leading European banks, for a three-month period commencing on the first day of such Dividend Period and in a principal amount of not less than $1,000,000; *provided, however,* that, if the banks selected as aforesaid by the Company are not quoting as mentioned in this sentence, 3-Month USD LIBOR for such Dividend Period will be the 3-Month USD LIBOR determined with respect to the immediately preceding Dividend Period.

(b)    "Business Day" means any day other than a Saturday, Sunday or any other day on which banks in New York City, New York, or Seattle, Washington are generally required or authorized by law to be closed.

(c)    "Common Stock" has the meaning set forth in Section 2.

(d)    "Company" means Washington Mutual, Inc., a Washington corporation.

(e)    "Dividend Payment Date" has the meaning set forth in Section 4(b).

(f)    "Dividend Period" has the meaning set forth in Section 4(b).

(g)    "Effective Date" means the date on which shares of the Series P Preferred Stock are first issued.

(h)    "Junior Securities" has the meaning set forth in Section 2.

(i)    "LIBOR Business Day" means any day on which commercial banks are open for general business (including dealings in deposits in U.S. dollars) in London.

(j)    "LIBOR Determination Date" means, as to each Dividend Period, the date that is two LIBOR Business Days prior to the first day of such Dividend Period.

(k)    "Parity Securities" has the meaning set forth in Section 2.

(l)　　"<u>Redemption Date</u>" means any date that is designated by the Company in a notice of redemption delivered pursuant to Section 7.

(m)　　"<u>Reuters Screen LIBOR01 Page</u>" means the display so designated on the Reuters 3000 Xtra (or such other page as may replace that page on that service, or such other service as may be nominated as the information vendor for the purpose of displaying rates comparable to the London Interbank Offered rate for U.S. dollar deposits).

(n)　　"<u>Series I Preferred Stock</u>" means the shares of the Company's Series I Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock reserved for issuance.

(o)　　"<u>Series J Preferred Stock</u>" means the shares of the Company's Series J Perpetual Non-cumulative Fixed Rate Preferred Stock reserved for issuance.

(p)　　"<u>Series K Preferred Stock</u>" means the shares of the Company's issued and outstanding Series K Perpetual Non-Cumulative Floating Rate Preferred Stock.

(q)　　"<u>Series L Preferred Stock</u>" means the shares of the Company's Series L Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock reserved for issuance.

(r)　　"<u>Series M Preferred Stock</u>" means the shares of the Company's Series M Perpetual Non-cumulative Fixed-to-Floating Rate Preferred Stock reserved for issuance.

(s)　　"<u>Series N Preferred Stock</u>" means the shares of the series of the Company's preferred stock containing the phrase "Series N" in its designation reserved, as of the date hereof or in the future, for issuance.

(t)　　"<u>Series O Preferred Stock</u>" means the shares of the series of the Company's preferred stock containing the phrase "Series O" in its designation reserved, as of the date hereof or in the future, for issuance.

(u)　　"<u>Series P Preferred Stock</u>" has the meaning set forth in Section 1.

(v)　　"<u>Voting Parity Securities</u>" has the meaning set forth in Section 8(b).

## Section 4. <u>Dividends</u>.

(a)　　From and after the Effective Date, holders of shares of Series P Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors, out of the funds legally available therefor, non-cumulative cash dividends in the amount determined as set forth in Section 4(c), and no more.

(b)　　Subject to Section 4(a), dividends shall be payable in arrears on March 15, June 15, September 15 and December 15 of each year commencing on _____ or, in each case, if any such day is not a Business Day, the next Business Day (each, a "Dividend Payment Date"). Each dividend will be payable to holders of record as they appear on the stock books of the Company on the first day of the month in which the relevant Dividend Payment Date occurs or, if such date is not a Business Day, the first Business Day of such month.  Each period from and including a Dividend Payment Date (or the date of the issuance of the Series P Preferred Stock) to but excluding the following

Dividend Payment Date (or the Redemption Date) is herein referred to as a "Dividend Period."

(c)     With respect to each Dividend Period, dividends, if, when and as declared by the Board of Directors, will be, for each outstanding share of Series P Preferred Stock, at an annual rate on the $1,000,000 per share liquidation preference equal to the greater of (i) 3-Month USD LIBOR for the related Dividend Period, plus _____% or (ii) _____ percent (_____%).  Dividends payable for a Dividend Period, including any Dividend Period greater or less than a full Dividend Period, will be computed on the basis of the actual number of days elapsed in the period divided by 360.  No interest will be paid on any dividend payment on a Series P Preferred Stock paid later than the scheduled Dividend Payment Date.

(d)     Dividends on the Series P Preferred Stock are non-cumulative.  If the Board of Directors does not declare a dividend on the Series P Preferred Stock or declares less than a full dividend in respect of any Dividend Period, the holders of the Series P Preferred Stock will have no right to receive any dividend or a full dividend, as the case may be, for the Dividend Period, and the Company will have no obligation to pay a dividend or to pay full dividends for that Dividend Period, whether or not dividends are declared and paid for any future Dividend Period with respect to the Series P Preferred Stock or the Common Stock or any other class or series of the Company's preferred stock.

(e)     If full dividends on all outstanding shares of the Series P Preferred Stock for any Dividend Period have not been declared and paid, the Company shall not declare or pay dividends with respect to, or redeem, purchase or acquire any of, its Junior Securities during the next succeeding Dividend Period, other than (i) redemptions, purchases or other acquisitions of Junior Securities in connection with any benefit plan or other similar arrangement with or for the benefit of any one or more employees, officers, directors or consultants or in connection with a dividend reinvestment or shareholder stock purchase plan, and (ii) any declaration of a dividend in connection with any shareholders' rights plan, including with respect to the Company's Series RP Preferred Stock, or the issuance of rights, stock or other property under any shareholders' rights plan, or the redemption or repurchase of rights pursuant thereto.  If dividends for any Dividend Payment Date are not paid in full on the shares of the Series P Preferred Stock and there are issued and outstanding shares of Parity Securities with the same Dividend Payment Date, then all dividends declared on shares of the Series P Preferred Stock and such Parity Securities shall be declared pro rata so that the respective amounts of such dividends shall bear the same ratio to each other as full dividends per share on the shares of the Series P Preferred Stock and all such Parity Securities otherwise payable on such Dividend Payment Date (subject to their having been declared by the Board of Directors out of legally available funds and including, in the case of any such Parity Securities that bear cumulative dividends, all accrued but unpaid dividends) bear to each other.

## Section 5.  Liquidation.

(a)     In the event the Company voluntarily or involuntarily liquidates, dissolves or winds up, the holders of Series P Preferred Stock at the time outstanding shall be entitled to receive liquidating distributions in the amount of $1,000,000 per share of Series P Preferred Stock, plus an amount equal to any declared but unpaid dividends thereon to and including the date of such liquidation, out of assets legally available for

distribution to its shareholders, before any distribution of assets is made to the holders of Common Stock or any other Junior Securities. After payment of the full amount of such liquidating distributions, the holders of Series P Preferred Stock will not be entitled to any further participation in any distribution of assets by, and shall have no right or claim to any remaining assets of, the Company.

(b)     In the event the assets of the Company available for distribution to shareholders upon any liquidation, dissolution or winding-up of the affairs of the Company, whether voluntary or involuntary, shall be insufficient to pay in full the amounts payable with respect to all outstanding shares of the Series P Preferred Stock and the corresponding amounts payable on any Parity Securities, the holders of Series P Preferred Stock and the holders of such Parity Securities shall share ratably in any distribution of assets of the Company in proportion to the full respective liquidating distributions to which they would otherwise be respectively entitled.

(c)     The Company's consolidation or merger with or into any other entity, the consolidation or merger of any other entity with or into the Company, or the sale of all or substantially all of the Company's property or business will not constitute its liquidation, dissolution or winding up.

**Section 6.  Maturity.**   The Series P Preferred Stock shall be perpetual unless redeemed by the Company in accordance with Section 7.

**Section 7.  Redemptions.**

(a)     The Series P Preferred Stock shall not be redeemable at the option of the holders at any time.

(b)     The Series P Preferred Stock shall be redeemable in whole or in part at the option of the Company at any time, or from time to time, on or after _____, _____, (or, in the event that _____, _____ is not a Business Day, the next Business Day).  Such redemption shall be at a cash redemption price of $1,000,000 per share, plus any declared and unpaid dividends to the Redemption Date, without accumulation of any undeclared dividends.

(c)     In the case of any redemption under this Section 7, notice shall be mailed to each holder of record of the Series P Preferred Stock, not less than 30 nor more than 60 days prior to the Redemption Date specified in such notice provided, however, that no failure to give such notice nor any defect therein shall affect the validity of the proceeding for the redemption of any shares of the Series P Preferred Stock to be redeemed except as to the holder to whom the Company has failed to mail said notice or except as to the holder whose notice was defective.  The notice of redemption shall include a statement of (i) the Redemption Date, (ii) the redemption price, and (iii) the number of shares to be redeemed.

(d)     Any shares of Series P Preferred Stock redeemed by the Company pursuant to this Section 7 or otherwise acquired by the Company in any manner whatsoever shall become authorized but unissued preferred shares of the Company but such preferred shares shall not under any circumstances be reissued as Series P Preferred Stock. The Company shall from time-to-time take such appropriate action as may be necessary to reduce the authorized number of shares of Series P Preferred Stock accordingly.

### Section 8. <u>Voting Rights.</u>

(a)     Holders of the Series P Preferred Stock will not have any voting rights, including the right to elect any directors, except (i) voting rights, if any, required by law, and (ii) voting rights, if any, described in this Section 8.

(b)     Holders of the Series P Preferred Stock will, in the circumstances and to the extent set forth in this Section 8(b), have the right to elect two directors.

a.     If after the Effective Date the Company fails to pay, or declare and set aside for payment, full dividends on the Series P Preferred Stock or any other class or series of Parity Securities having similar voting rights ("Voting Parity Securities") for six Dividend Periods or their equivalent, the authorized number of the Company's directors will be increased by two.  Subject to compliance with any requirement for regulatory approval of, or non-objection to, persons serving as directors, the holders of Series P Preferred Stock, voting together as a single and separate class with the holders of any outstanding Voting Parity Securities, will have the right to elect two directors in addition to the directors then in office at the Company's next annual meeting of shareholders.  This right will continue at each subsequent annual meeting until the Company pays dividends in full on the Series P Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and pays or declares and sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series P Preferred Stock.

b.     The term of such additional directors will terminate, and the total number of directors will be decreased by two, at such time as  the Company pays dividends in full on the Series P Preferred Stock and any Voting Parity Securities for three consecutive Dividend Periods or their equivalent and declares and pays or sets aside for payment dividends in full for the fourth consecutive Dividend Period or its equivalent or, if earlier, upon the redemption of all Series P Preferred Stock.  After the term of such additional directors terminates, the holders of the Series P Preferred Stock will not be entitled to elect additional directors unless full dividends on the Series P Preferred Stock have again not been paid or declared and set aside for payment for six future Dividend Periods.

c.     Any additional director elected by the holders of the Series P Preferred Stock and the Voting Parity Securities may only be removed by the vote of the holders of record of the outstanding Series P Preferred Stock and Voting Parity Securities, voting together as a single and separate class, at a meeting of the Company shareholders called for that purpose.  Any vacancy created by the removal of any such director may be filled only by the vote of the holders of the outstanding Series P Preferred Stock and Voting Parity Securities, voting together as a single and separate class.

(c)     So long as any shares of Series P Preferred Stock are outstanding, the vote or consent of the holders of at least 66 2/3% of the shares of Series P Preferred Stock at the time outstanding, voting as a class with all other classes and series of Parity Securities upon which like voting rights have been conferred and are exercisable, given in person or by proxy, either in writing without a meeting or by vote at any meeting called for the purpose, will be necessary for effecting or validating any of the following actions, whether or not such approval is required by Washington law:

**Error! Unknown document property name.**     20     **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

        a.     any amendment, alteration or repeal of any provision of the Company's Amended and Restated Articles of Incorporation (including the Articles of Amendment creating the Series P Preferred Stock) or the Company's bylaws that would alter or change the voting powers, preferences or special rights of the Series P Preferred Stock so as to affect them adversely;

        b.     any amendment or alteration of the Company's Amended and Restated Articles of Incorporation to authorize or create, or increase the authorized amount of, any shares of, or any securities convertible into shares of, any class or series of the Company's capital stock ranking prior to the Series P Preferred Stock in the payment of dividends or in the distribution of assets on any liquidation, dissolution or winding up of the Company; or

        c.     the consummation of a binding share exchange or reclassification involving the Series P Preferred Stock or a merger or consolidation of the Company with another entity, except that holders of Series P Preferred Stock will have no right to vote under this provision or under §23B.11.035 of the Revised Code of Washington or otherwise under Washington law if in each case (x) the Series P Preferred Stock remains outstanding or, in the case of any such merger or consolidation with respect to which the Company is not the surviving or resulting entity, is converted into or exchanged for preference securities of the surviving or resulting entity or its ultimate parent, and (y) such Series P Preferred Stock remaining outstanding or such preference securities, as the case may be, have such rights, preferences, privileges and voting powers, taken as a whole, as are not materially less favorable to the holders thereof than the rights, preferences, privileges and voting powers of the Series P Preferred Stock, taken as a whole;

*provided, however*, that any increase in the amount of the authorized or issued Series P Preferred Stock or authorized preferred stock or the creation and issuance, or an increase in the authorized or issued amount, of other series of preferred stock ranking equally with and/or junior to the Series P Preferred Stock with respect to the payment of dividends (whether such dividends are cumulative or non-cumulative) and/or the distribution of assets upon the Company's liquidation, dissolution or winding up will not be deemed to adversely affect the voting powers, preferences or special rights of the Series P Preferred stock and, notwithstanding §23B.10.040(1)(a), (e) or (f) of the Revised Code of Washington or any other provision of Washington law, holders of Series P Preferred Stock will have no right to vote on such an increase, creation or issuance.

If an amendment, alteration, repeal, share exchange, reclassification, merger or consolidation described above would adversely affect one or more but not all series of preferred stock with like voting rights (including the Series P Preferred Stock for this purpose), then only the series affected and entitled to vote shall vote as a class in lieu of all such series of preferred stock.

     **Section 9.  Certificates.**    The Company may at its option issue the Series P Preferred Stock without certificates.

     RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) the Executive Vice President – Corporate Strategy &

**Error! Unknown document property name.**     21     **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

Development, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller.

RESOLVED FURTHER, that the Board hereby authorizes, and delegates the authority to, any one of the Authorized Officers on behalf of the Board to designate, finalize, determine and complete (it being understood that this authority includes without limitation the authority to make appropriate modifications in the preceding designation) the preferences, limitations, voting powers and relative rights of the Series P Preferred Stock, as set forth in the preceding resolutions, subject to the other limits specified in these resolutions and such final designation shall constitute a final determination of such preferences, limitations, voting powers and relative rights and shall be maintained as an official record of the Board;

RESOLVED FURTHER, that the authorization and delegation in the immediately preceding resolutions shall include, without limitation, the authority to determine the number of shares of Series P Preferred Stock to be authorized, to determine the dividend rates, the liquidation preference and the redemption prices, to determine the dividend payment dates, to add restrictions on dividend payments to parity securities in the event full dividends are not paid on the Series P Preferred Stock, to designate the dates on which and further situations (including without limitation any changes in the regulatory capital rules as applied to the Company) in which the Company has the option to redeem the Series P Preferred Stock (with or without make-whole provisions), to designate additional events or circumstances in which holders of Series P Preferred Stock shall have voting rights, to approve the form of any stock certificate and to prepare and authorize the filing of an amendment for the Series P Preferred Stock with the Secretary of State of the State of Washington which shall include the designation of the preferences, limitations, voting powers and relative rights of the Series P Preferred Stock; provided, however, that the spread over 3-month LIBOR used in determining the dividend rate for each dividend period shall not exceed 800 basis points, the minimum dividend rate for any dividend period shall not be greater than 9% per annum, the number of shares issued shall not exceed 2,000, the liquidation preference per share shall not exceed $1,000,000 and the Company shall have the right to redeem the Series P Preferred Stock no later than the first dividend payment date which is more than five years after the date one which the Series P Preferred Stock is issued (or, if not a business day, the first business day thereafter);

RESOLVED FURTHER, that the Series P Preferred Stock may be issued in either certificated or non-certificated form as determined by any Authorized Officer;

RESOLVED FURTHER, that the Series P Preferred Stock may be issued to a depositary, which shall issue depositary shares each representing a fractional interest in the shares of a series of the Series P Preferred Stock;

RESOLVED FURTHER, that the Company is hereby authorized to enter into and perform its obligations under a deposit agreement to issue depositary shares, and any Authorized Officer is authorized to select the depositary and to negotiate, execute and deliver such deposit agreement on behalf of the Company;

RESOLVED FURTHER, that any Authorized Officer is authorized to appoint from time to time one or more transfer agents, dividend and redemption price disbursement

**Error! Unknown document property name.**     22     **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

agents and registrars for shares of the Series P Preferred Stock, and any Authorized Officer is authorized to enter into agreements with such agents and registrars;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Company and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, pursuant to a power of attorney, in the event that it is deemed necessary or desirable so to do, in connection with the offering of the Series P Preferred Stock, (i) to prepare, or cause to be prepared, a prospectus, offering circular or offering memorandum with respect to such securities or related depositary shares (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities and (ii) to execute any notice or application required or requested by the Securities and Exchange Commission or any banking regulator with respect to the Series P Preferred Stock or related depositary shares, to procure all necessary signatures thereto and to file any such notice or application, together with such amendments or supplements as such officers shall deem necessary or appropriate or as counsel for the Company may approve;

RESOLVED FURTHER, that the Company may make application to the New York Stock Exchange (or other organization) for the registration and listing on such Exchange (or such other organization), on official notice of issuance, of the Series P Preferred Stock or related depositary shares; that each Authorized Officer be, and each hereby is, authorized and empowered, at such time as he or she shall deem advisable, in the name and on behalf of the Company, to make application for such registration and listing and, in connection therewith, to execute in the name and on behalf of the Company, and to file and deliver all such applications, statements, certificates, agreements, including indemnification agreements, and other instruments and documents as shall be necessary to accomplish such listing and that each Authorized Officer is authorized to appear on behalf of the Company before the appropriate committee or body of said Exchange (or other organization) as such appearance may be required, with authority to make such changes in any such listing application as shall be presented thereto, and in any agreements that may be made in connection therewith, as in their discretion may be necessary or proper to comply with the requirements for such listing;

RESOLVED FURTHER, that any Authorized Officer is hereby authorized to determine the jurisdictions in which appropriate action may be taken to qualify or register for sale all or such part of the Series P Preferred Stock or related depositary shares as such Authorized Officer deems necessary or advisable; that such Authorized Officer is herby authorized to perform on behalf of the Company any and all such acts as he or she may deem advisable in order to comply with the applicable laws of any such jurisdictions, and in connection therewith, to execute, deliver and file all requisite instruments and agreements, including but not limited to, applications, reports, surety bonds, irrevocable consents and appointments of agents for service of process; the execution by such Authorized Officer of any such instrument or agreement or the taking of any action in connection with the foregoing matters shall conclusively establish such Authorized Officer's authority therefore from the Company and the approval and ratification by the Company of the instruments and agreements and the actions so taken;

RESOLVED FURTHER , that the Company hereby constitutes and appoints Charles

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

Edward Smith its agent for service in connection with any filing with the New York Stock Exchange (or other organization);

RESOLVED FURTHER, that each Authorized Officer is hereby authorized and directed in the name and on behalf of the Company to take any and all action which they may deem necessary or advisable in order to obtain a permit, register or qualify its securities for issuance and sale or to request an exemption from registration of its securities or to register or obtain a license for the Company as a dealer or broker under the securities laws of such of the states of the United States of America or other jurisdictions as such officers may deem advisable, and in connection with such registration, permits, licenses, qualifications and exemptions, to execute, acknowledge, verify, deliver, file and publish all such applications, reports, issuer's covenants, resolutions, irrevocable consents to service of process, powers of attorney and other papers and instruments as may be required under such laws or may be deemed by such officers to be useful or advisable to be filed thereunder, and that the Board hereby adopts the form of any and all resolutions required by any such applications, reports, issuer's covenants, irrevocable consents to service of process, powers of attorney and other papers and instruments if (1) in the opinion of such officer or officers of the Company so acting the adoption of such resolutions is necessary or advisable and (2) the secretary of the Company evidences such adoption by filing with these resolutions copies of such resolutions, which shall thereupon be deemed to be adopted by this Board and incorporated in the minutes as a part of this resolution and with the same force and effect as if presented herewith, and that such officer or officers of the Company take any and all further action which they may deem necessary or advisable in order to maintain such registration in effect for as long as they may deem to be in the best interest of the Company; and

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Company (including, without limitation, those authorized from time to time pursuant to the Company's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements (which agreements may include, without limitation, (i) underwriting, purchase, distribution or similar agreements with underwriters or agents named therein, (ii) a replacement capital covenant or other similar agreement, in favor of holders of the specified indebtedness of the Company, restricting sources of funds used to redeem or repurchase the Series P Preferred Stock, any undertakings or other documents or supplemental agreements on behalf of the Company (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance of the Series P Preferred Stock, or to further the intent of these resolutions, subject to the limits set forth in these resolutions.

**Error! Unknown document property name.** 24 **WM: Confidential Limited Access**

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007



# Minutes of October 16, 2007 meeting of WMB Board of Directors

## WASHINGTON MUTUAL BANK
## BOARD OF DIRECTORS MINUTES

The Board of Directors of Washington Mutual Bank (the "Association") held its October meeting on Tuesday, October 16, 2007 in Seattle, Washington. Present were: Frank, Killinger, Leppert, Lillis, Montoya, Murphy, Osmer McQuade, Pugh, Reed, Smith and Stever. (Ms. Osmer McQuade participated by means of a conference telephone enabling all participants to hear one another.) Mr. Killinger presided. Also present, at the beginning of the meeting, were the Company's officers, Casey, Cathcart, Chapman, David, Rotella, and Lynch (secretary). The Board met in joint session with the Board of Directors of Washington Mutual, Inc. (the "Holding Company").

…

### Capital Raising Transaction

Ms. Pugh reported that the Finance Committee had reviewed a proposal with regard to the issuance of capital securities by a subsidiary of the Association. The Delaware limited liability company that was organized in 2006 as an indirect operating subsidiary of the Association would issue up to $2.0 billion in additional preferred securities ("Delaware Preferred Securities") to a newly formed Cayman entity or other foreign entity, which would issue certain other securities ("Entity Securities") and use the proceeds of issuance of the Entity Securities to finance the purchase of Delaware Preferred Securities. The Holding Company will serve as a source of strength for the Association, as the Entity Securities will automatically be exchanged into depositary shares representing a fractional interest in a share of a new class of preferred stock of the Holding Company upon the occurrence of certain possible events. Ms. Pugh reported that the Finance Committee recommended approval of this proposal. On motion duly made and seconded, the Board unanimously resolved to approve the Association's actions in support of the issuance of Delaware Preferred Securities. A copy of the resolutions adopted by the Board will be kept in the minute book as an appendix to these minutes. Ms. Pugh also reported that the Finance Committee had heard a report indicating that the Holding Company would widen the coupon range for another class of preferred stock of the Holding Company, for which depositary shares representing fractional interests automatically will be issued in exchange for another new category of Entity Securities. Thus, also, the Holding Company would serve as a source of strength for the Association.

...

There being no further business, the meeting was adjourned.

### Appendices:

**A – Resolutions in Response to Consent Order**

**B – Resolutions in Response to Assessment Order**

**C – Resolutions Authorizing Global Note Program**

**D – Resolutions Authorizing Preferred Securities**

**E – Schedule of Officer Elections, Promotions, Transfers and Other Changes**

## Appendix D – Resolutions Authorizing Preferred Securities

### (WMPF Preferred Securities Offering)

WHEREAS, Washington Mutual Bank (the "Bank") directly owns all of the issued and outstanding common stock of Seneca Holdings, Inc. ("Seneca Holdings"), indirectly owns all of the interests in WM Marion Holdings, LLC ("WM Marion") and indirectly owns all of the issued and outstanding common stock of University Street, Inc. ("University Street");

WHEREAS, University Street owns all of the issued and outstanding common interests in Washington Mutual Preferred Funding LLC ("WMPF LLC");

WHEREAS, at a meeting of the Board of Directors (the "Board") of the Bank duly called and held on August 21, 2007, the Board adopted resolutions (the "Original Resolutions") relating to and authorizing an equity contribution by the Bank to Seneca Holdings consisting of loans or interests therein not to exceed $3.4 billion in book value (the "Seneca Holdings Contribution") and an equity contribution by the Bank to WMPF LLC (the "LLC Contribution") of assets consisting of loans or interests therein not to exceed $1.5 billion;

WHEREAS, at the time the Original Resolutions were adopted, it was anticipated that Seneca Holdings would make an equity contribution of loans or interests contributed to it pursuant to the Seneca Holdings Contribution to WM Marion, that WM Marion in turn would make an equity contribution of such loans to University Street, and that University Street in turn would make an equity contribution of such loans to WMPF LLC;

WHEREAS, at the time the Original Resolutions were adopted it was also anticipated that WMPF LLC would issue a new class or series of preferred interests (the "LLC 2007-B Preferred Interests") to either (a) a newly formed special purpose entity (the "SPE"), (b) University Street or (c) the Bank;

WHEREAS, at the time the Original Resolutions were adopted it was also anticipated that the LLC 2007-B Preferred Interests would be sold or transferred by WMPF LLC, University Street or the Bank, as the case may be, to the SPE which, in turn, will issue substantially similar securities (the "SPE Securities") to investors;

WHEREAS, WMPF LLC now proposes to issue another class or series of preferred interests (the "LLC 2007-C Preferred Interests") to a newly formed Cayman Islands or other foreign entity (the "Cayman Entity") in addition to or in lieu of issuing LLC 2007-B Preferred Interests to the SPE, University Street or the Bank;

WHEREAS, it is currently anticipated that some or all of the LLC 2007-C Preferred Interests may be sold or transferred by WMPF LLC, University Street or the Bank, as the case may be, to the Cayman Entity which, in turn, will issue substantially similar securities (the "Cayman Securities") to investors;

WHEREAS, it is now proposed that the authorized amount of the Seneca Holdings Contribution be increased to an amount not to exceed $5.2 billion and that the authorized amount of the LLC Contribution be increased to an amount not to exceed $2.0 billion;

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

WHEREAS, the Bank's parent, Washington Mutual, Inc. ("WMI"), has authorized a new series of preferred stock (the "WMI Series N Preferred Stock") and under certain circumstances the SPE Securities will be automatically exchanged into depositary shares representing interests in the WMI Series N Preferred Stock;

WHEREAS, it is proposed that WMI will authorize a new series of preferred stock (the "WMI Series O Preferred Stock") and under certain circumstances the Cayman Securities will be automatically exchanged into depositary shares representing interests in the WMI Series O Preferred Stock;

WHEREAS, the Original Resolutions authorized (a) the Bank to transfer, or to cause its designee to transfer, any LLC 2007-B Preferred Interests that it may receive to the SPE in exchange for cash, (b) the Bank to execute and deliver any agreements with WMPF LLC, the SPE or any other party necessary or appropriate in connection with the transactions contemplated by the Original Resolutions, (c) the Bank to take any necessary or appropriate action in connection the transfer, sale or offering of the LLC 2007-B Preferred Interests or the SPE Securities, and (d) certain officers of the Bank to take any of the foregoing actions on behalf of the Bank; and

WHEREAS, the Bank desires to expand the authority granted in the Original Resolutions to accommodate the transactions related to the issuance of the LLC 2007-C Preferred Interests and the Cayman Securities.

THEREFORE, IT IS HEREBY RESOLVED, the Seneca Holdings Contribution in an amount not to exceed $5.2 billion in book value and the LLC Contribution in an amount not to exceed $2.0 billion are hereby authorized, and any Authorized Officer (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements or documents as any Authorized Officer deems necessary or appropriate in connection with such contributions;

RESOLVED FURTHER, that the Bank is hereby authorized to transfer, or to cause its designee to transfer, any LLC 2007-C Preferred Interests that it may receive to the Cayman Entity in exchange for cash and any Authorized Officer (as defined below) is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements or documents as such Authorized Officer deems necessary or appropriate in connection with such transfers;

RESOLVED FURTHER, that each of the Authorized Officers is hereby authorized on behalf of the Bank to negotiate, execute and deliver any agreements with WMPF LLC, the Cayman Entity or any other party as such Authorized Officer deems necessary or appropriate in connection with the transactions contemplated by these resolutions or the Original Resolutions, as well as the management, operation or administration of WMPF LLC;

RESOLVED FURTHER, that the Authorized Officers, or any of them, are authorized and empowered, on behalf of the Bank and in its name, with full power and authority to delegate such authority to one or more attorneys-in-fact or agents acting for such Authorized Officers, or any of them, in the event that it is deemed necessary or desirable so to do, in connection with the transfer, sale or offering of the LLC 2007-C Preferred Interests or the Cayman Securities, as the case may be, in a private offering and/or in an offering effected in reliance on Regulation S promulgated under the Securities Act of 1933, as amended (a "Reg S Offering"), to prepare, cause to be prepared or to participate in the preparation of, an

APPROVED BY THE BOARD OF DIRECTORS NOVEMBER 19, 2007

offering circular or offering memorandum with respect to such securities (and any supplements or amendments thereto), as the Authorized Officers, or any of them, taking such action shall approve in connection therewith in order to effect the offering of such securities in a private offering or a Reg S Offering;

RESOLVED FURTHER, that any Authorized Officer, together with other proper officers of the Bank (including, without limitation, those authorized from time to time pursuant to the Bank's Asset and Liability Management Policy and the standards and procedures from time to time in effect thereunder), is hereby authorized to negotiate, enter into, execute and deliver any and all additional agreements, any undertakings or other documents or supplemental agreements on behalf of the Bank (including, without limitation, filings or applications with banking regulators, securities regulators or stock exchanges, domestic or foreign) and to take any other actions, in each case, as such Authorized Officer or other proper officer deems to be necessary or advisable in connection with the issuance or transfers of the LLC 2007-C Preferred Interests or to further the intent of these resolutions or the Original Resolutions;

RESOLVED FURTHER, that for purposes of these resolutions and the transactions contemplated hereby, each of the following shall be an "Authorized Officer": (i) the Chief Executive Officer, (ii) the Chief Operating Officer, (iii) the Chief Financial Officer, (iv) any Senior Executive Vice President, (v) any Executive Vice President, (vi) the Senior Vice President and Treasurer, (vii) any Senior Vice President reporting directly to the Senior Vice President and Treasurer and (viii) the Senior Vice President and Controller;

RESOLVED FURTHER, that any actions taken by any of the Authorized Officers or any other proper officer of the Bank prior to the adoption of these resolutions that is otherwise within the scope of the authority conferred by these resolutions is hereby ratified, confirmed and approved; and

RESOLVED FURTHER, that, as supplemented hereby, the Original Resolutions shall remain in full force and effect and are hereby ratified and confirmed in all ways.