# EXHIBIT E

# ASSIGNMENT AGREEMENT

between

**WASHINGTON MUTUAL BANK,**
as Assignee

and

**WASHINGTON MUTUAL, INC.,**
as Assignor

**Effective as of September 25, 2008**

17535196 05129267

# ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (as amended, modified or supplemented from time to time after the date hereof, the "Agreement") is effective as of September 25, 2008, and is made by and between WASHINGTON MUTUAL BANK, a federally-chartered savings association, as Assignee (the "Assignee"), and WASHINGTON MUTUAL, INC., a Washington corporation, as Assignor (the "Assignor").

## RECITALS

(A) Assignor wishes to assign to Assignee certain securities, and Assignee wishes to accept such assignment, which Securities shall be assigned upon the execution of this Agreement.

## AGREEMENT

In consideration of the premises and the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignee and Assignor agree as follows:

## ARTICLE I

## DEFINITIONS; GENERAL INTERPRETIVE PRINCIPLES

Section 1.01. Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Agreement: This Assignment Agreement, including all exhibits hereto, and all amendments hereof and supplements hereto.

Certificate: Any instrument constituting evidence of ownership of a Security.

Effective Date: September 25, 2008.

Code: The Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder and rulings issued thereunder. Section references to the Code are to the Code, as in effect as the date of this Agreement and any subsequent provisions of the Code, amendatory thereof, supplemental thereto or substituted therefore.

Assignment: The assignment to Assignee by Assignor of Securities pursuant to this Agreement.

Delivery: Is deemed to occur as of September 25, 2008.

Person: Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Assignee: Washington Mutual Bank, a federally-chartered savings association, and its successors and assigns.

Securities: The securities listed in Exhibit A that are the subject of this Agreement. The term "Securities" includes, without limitation, such securities, any Certificates corresponding to such securities, and all other rights, benefits, proceeds and obligations of the owner of such securities arising from or in connection with such securities, whether now owned or hereafter acquired.

Assignor: Washington Mutual, Inc., a Washington corporation, and its successors and assigns.

Section 1.02.  General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

c) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

d) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

e) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

f) the term "include" or "including" shall mean without limitation by reason of enumeration.

17535196 05129267

## ARTICLE II

## ASSIGNMENT OF SECURITIES

Section 2.01. <u>Assignment of Securities.</u>

With respect to the Securities listed on Exhibit A attached hereto, Assignor hereby contributes, transfers, assigns, sets over and conveys to Assignee, without recourse, but subject to the terms of this Agreement, all of Assignor's right, title and interest, whether now owned or hereafter acquired, in and to the Securities.

Upon execution and delivery of this Agreement by Assignor and Assignee, all rights and benefits arising out of the Securities which come into the possession of Assignor, including but not limited to funds which may be received by Assignor on or in connection with the Securities, and the ownership of all records and documents with respect to the Securities which are prepared by or which come into the possession of Assignor, shall immediately vest in Assignee.

Assignee acknowledges that the assignment by Assignor to Assignee under this Agreement are intended to qualify as tax-free transactions under Section 351 of the Code.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.01. <u>Mutual Representations and Warranties.</u>. Each party hereby represents and warrants to the other that it has all requisite power and authority to enter into and perform its obligations under this Agreement.

It is understood and agreed that the representations and warranties set forth in this Article V shall survive delivery of the respective Securities to the Assignee, and shall continue throughout the term of this Agreement.

## ARTICLE IV

## COSTS

Section 4.01. <u>Costs.</u>

Each party shall bear its own costs and expenses. All other costs and expenses incurred in connection with the transfer and delivery of the Securities, including without limitation recording and filing fees, shall be paid by Assignee.

Each remittance or distribution made pursuant to this Agreement shall be made in the manner agreed to by the parties. To the extent that the amount of a remittance or distribution made pursuant to this Agreement is greater than the amount that was supposed to be made, each party agrees to give prompt written notice thereof to the other party after discovery thereof, including the amount of such remittance or distribution that was paid in error, and to refund such overpayment immediately.

ARTICLE V

MISCELLANEOUS PROVISIONS

Section 5.01. Amendment.

This Agreement may be amended from time to time only by written agreement signed by Assignor and Assignee.

Section 5.02. Governing Law.

This Agreement shall be construed in accordance with the internal laws of the State of Washington, except to the extent preempted by federal law and without reference to the choice of law doctrine of such state, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Section 5.03. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered or certified mail, postage prepaid, to (a) in the case of Assignor,

Washington Mutual, Inc.
1301 Second Avenue, WMC 1411
Seattle, Washington 98101
Attention: Corporate Secretary

or such other address as may hereafter be furnished by Assignor to Assignee in writing; and

b) in the case of Assignee,

Washington Mutual Bank
1301 Second Avenue, WMC 1411
Seattle, Washington 98101
Attention: Corporate Secretary

or such other address as may hereafter be furnished by Assignee to Assignor in writing.

Section 5.04. Merger; Severability of Provisions.

This Agreement, and the documents and instruments referred to herein, constitute the entire agreement of and is the final and complete expression of the parties relating to the subject matter of this Agreement, and supersedes all prior or contemporaneous negotiations and agreements, whether oral or written, relating to the subject matter hereof.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants,

4

agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate in good faith to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such inability.

Section 5.05. Execution; Successors and Assigns.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. This Agreement shall inure to the benefit of and be binding upon Assignor and Assignee and their respective successors and assigns.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized officers on the dates shown below, to be effective as of the effective date first set forth above.

WASHINGTON MUTUAL BANK

By: *(signature)*
Name: Patricia Schulte
Title: Senior Vice President


WASHINGTON MUTUAL, INC.

By: *(signature)*
Name: Todd Baker
Title: Executive Vice President

# EXHIBIT A

## SECURITIES

(i) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-1

(ii) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-cumulative Preferred Securities, Series A-2

(iii) Washington Mutual Preferred Funding Trust Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(iv) Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(v) Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(vi) Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-cumulative Trust Securities

(vii) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2006-A

(viii) Washington Mutual Preferred Funding LLC 7.25% Perpetual Non-cumulative Preferred Securities, Series 2006-B

(ix) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2006-C

(x) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2007-A

(xi) Washington Mutual Preferred Funding LLC Fixed-to-Floating Rate Perpetual Non-cumulative Preferred Securities, Series 2007-B

(xii) Any and all right, title and interest of the Washington Mutual, Inc. in and to Washington Mutual Preferred (Cayman) I Ltd. ("WaMu Cayman"), Washington Mutual Preferred Funding Trust ("WaMu Delaware I"), Washington Mutual Preferred Funding Trust II ("WaMu Delaware II"), Washington Mutual Preferred Funding Trust III ("WaMu Delaware III") and Washington Mutual Preferred Funding Trust IV ("WaMu Delaware IV" and, together with WaMu Cayman, WaMu Delaware I, WaMu Delaware II and WaMu Delaware III, the "Trusts"), including any interests of the Trusts in any of the Securities