# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : CHAPTER 11 |
| WASHINGTON MUTUAL, INC., <u>et al.</u>,[1] | : |
| Debtors. | : Case No. 08-12229 (MFW) |
| | : (Jointly Administered) |
| | : Ref. Docket No. 974 |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | : |
| *Plaintiff,* | : Adversary Proceeding No. 09-50551 |
| v. | : |
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : |
| *Defendants for all claims,* | : |
| -and- | : |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : |
| *Additional Defendant for Interpleader Claim.* | : |

## JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S OBJECTION AND RESPONSE TO DEBTORS' MOTIONS FOR <u>(A)</u> AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004.1 DIRECTING THE EXAMINATION OF JPMORGAN CHASE, N.A. (DOCKET NO. 974 ); AND <u>(B)</u> AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 7013 AND 9006(b) ENLARGING THE TIME FOR ASSERTING <u>COUNTERCLAIMS AGAINST JPMORGAN CHASE BANK, N.A. (DOCKET NO. 10)</u>

---

[1]     Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are:  (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington  98101.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................1

BACKGROUND ..........................................................................................5

ARGUMENT ...............................................................................................7

I.     DEBTORS' REQUEST FOR RULE 2004 DISCOVERY SHOULD BE DENIED..........7

II.    DEBTORS' MOTION FOR AN EXTENSION OF TIME TO FILE COUNTERCLAIMS SHOULD ALSO BE DENIED......................................................14

CONCLUSION ..........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Barbieri,*
   199 F.3d 616 (2d Cir. 1999) ............................................................................. 16

*In re Barnes,*
   365 B.R. 1 (Bankr. D.D.C. 2007) ....................................................................... 8

*In re Bennett Funding Group, Inc.,*
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) .......................................................... *passim*

*In re Blinder, Robinson & Co.,*
   127 B.R. 267 (D. Colo. 1991) ........................................................................ 7, 8

*In re Buick,*
   174 B.R. 299 (Bankr. D. Colo. 1994) ................................................................ 8

*In re Combustion Eng'g, Inc.,*
   391 F.3d 190 (3d Cir. 2004) ............................................................................. 16

*In re Continental Airlines, Inc.,*
   125 B.R. 415 (Bankr. Del. 1991) ........................................................................ 7

*In re Dinublio,*
   177 B.R. 932 (E.D. Cal. 1993) ........................................................................... 8

*In re Enron Corp.,*
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ........................................................ 7-8, 9

*In re Fesco Plastics Corp.,*
   996 F.2d 152 (7th Cir. 1993) ............................................................................ 16

*In re Lowenschuss,*
   67 F.3d 1394 (9th Cir. 1995) ............................................................................ 16

*In re M4 Enters. Inc.,*
   190 B.R. 471 (Bankr. N.D. Ga. 1995) ................................................................ 8

*In re Petition of the Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,*
   258 B.R. 580 (Bankr. S.D.N.Y. 2001) ............................................................... 9

*In re 2435 Plainfield Avenue, Inc.,*
   223 B.R. 440 (Bankr. D.N.J. 1998) ................................................................ 7, 8

*In re Sun Med. Mgmt.*,
    104 B.R. 522 (Bankr. M.D. Ga. 1989)......................................................................8

*Snyder* v. *Soc'y Bank*,
    181 B.R. 40 (S.D. Tex. 1994) ...............................................................8-9, 10

*Vill. of Oakwood* v. *State Bank & Trust Co.*,
    539 F.3d 373 (6th Cir. 2008) ...............................................................15

## STATUTES & RULES

11 U.S.C. § 105(a) ...............................................................16

11 U.S.C. § 542 ...............................................................2

12 U.S.C. § 1821 ...............................................................5

12 U.S.C. § 1821(d)(6)(A) ...............................................................3, 15

12 U.S.C. § 1821(d)(6)(A)(i) ...............................................................5

12 U.S.C. § 1821(d)(13)(D) ...............................................................3, 15

Fed. R. Bankr. P. 2004 ...............................................................*passim*

Fed. R. Bankr. P. 7013 ...............................................................*passim*

Fed. R. Bankr. P. 7015 ...............................................................15

Fed. R. Bankr. P. 9014 ...............................................................8

Fed. R. Bankr. P. 9006(b) ...............................................................16

Fed. R. Civ. P. 6(b) ...............................................................16

Fed. R. Civ. P. 13(f) ...............................................................15, 16

Fed. R. Civ. P. 15(a)(2) ...............................................................15

Fed. R. Civ. P. 45 ...............................................................7

## OTHER AUTHORITY

1 MOORE'S FEDERAL PRACTICE § 6.06[1][a] (Matthew Bender 3d ed.) ...............................16

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S
OBJECTION AND RESPONSE TO DEBTORS' MOTIONS FOR (A)
AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL
BANKRUPTCY RULE 2004.1 DIRECTING THE EXAMINATION
OF JPMORGAN CHASE, N.A. (DOCKET NO. 974); AND (B) AN ORDER
PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULES OF BANKRUPTCY
PROCEDURE 7013 AND 9006(b) ENLARGING THE TIME FOR ASSERTING
COUNTERCLAIMS AGAINST JPMORGAN CHASE BANK, N.A. (DOCKET NO. 10)**

JPMorgan Chase Bank, National Association ("JPMC"), by its undersigned

attorneys, files this objection and response (the "Objection") to the Motions of the Debtors for an

Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004.1 Directing the

Examination of JPMorgan Chase, N.A. (the "Rule 2004 Motion") and an Order Pursuant to 11

U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 7013 and 9006(b) Enlarging the

Time for Asserting Counterclaims Against JPMorgan Chase Bank, N.A. (the "Motion for

Extension").

## PRELIMINARY STATEMENT

On May 1, 2009, Washington Mutual, Inc. ("WMI") and WMI Investment Corp.

(collectively, the "Debtors") filed two related motions, both of which should be denied.

The first motion seeks discovery of JPMC under Rule 2004 of the Bankruptcy

Rules ("Rule 2004") that Debtors assert is "critical to the Debtors' full understanding of

affirmative *claims* and *counterclaims* against JPMC." (Mot. for Ext. at 2 (emphasis added).)

However, as a matter of law, Rule 2004 discovery is not available—and cannot be used to

circumvent the applicable provisions of the Federal Rules of Civil Procedure and Federal Rules

of Bankruptcy Procedure (collectively, the "Rules")—when discovery is available through

related, pending litigations. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.

N.D.N.Y. 1996). Rule 2004 discovery is particularly inappropriate when, as here, discovery is

sought from "parties to" or those "affected by" the related proceeding. *Id.* at 29.

Here, there are two pending litigations that relate to the Rule 2004 discovery request: (1) Debtors' own action against the Federal Deposit Insurance Corporation ("FDIC") in the U.S. District Court for the District of Columbia, captioned *Washington Mutual, Inc., et al.* v. *FDIC*, Civil Action No. 1:09-cv-00533 (RMC) (the "D.C. Action"),[2] in which Debtors are already broadly challenging the conduct of the FDIC in connection with the failure of Washington Mutual Bank ("WMB") and the resulting sale of substantially all of the assets of WMB to JPMC, pursuant to a purchase and assumption agreement dated as of September 25, 2008 (the "P&A"); and (2) JPMC's adversary proceeding against Debtors, Adversary Proceeding No. 09-50551 (MFW) (the "Adversary Proceeding"),[3] which is in many ways the flip side of the D.C. Action, and in which JPMC broadly asserts claims that result from Debtors' efforts to assert ownership rights over assets JPMC purchased from the FDIC pursuant to the P&A.

To the extent the Rule 2004 discovery requests are being propounded for the express purpose of exploring "counterclaims" against JPMC, which the second motion discussed below makes clear is the purpose of the proposed Rule 2004 discovery, those counterclaims are by definition related to the pending litigations and therefore may be appropriately pursued in the context of either or both of those litigations but *not* independently through Rule 2004. To the extent the Rule 2004 discovery requests are directed at JPMC to explore other potential "claims" against JPMC, those claims, as described by Debtors in their motion, relate to the sale of WMB's

---

[2]    A copy of Debtors' Complaint in the D.C. Action is attached as Exhibit A submitted in support of this Objection (hereinafter, the "D.C. Action Complaint").

[3]    Complicating the disputes between Debtors and JPMC, on April 27, 2009, Debtors filed in this Court a purported turnover action pursuant to 11 U.S.C. § 542 seeking the turnover of approximately $4 billion in six accounts maintained with WMB at the time of WMB's failure (the "Turnover Action"). Although the Rule 2004 discovery also relates to the Turnover Action—which presents another bar to the Rule 2004 discovery—JPMC has not focused on that proceeding given the substantial likelihood that it will be dismissed and because it overlaps with issues raised in the Adversary Proceeding. Nonetheless, the D.C. Action, Adversary Proceeding and Turnover Action are collectively referred to herein as the "Related Litigations".

assets by the FDIC to JPMC—a subject of both the D.C. Action and the Adversary Proceeding. Debtors are thus seeking to obtain discovery from a party to (and an entity "affected by") the Related Litigations, which likewise makes the Rule 2004 discovery request improper.

In an apparent effort to escape this result, Debtors assert that the Rule 2004 discovery is needed to explore the allegations made in a complaint captioned *Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 09 CV 0199 (Tex. Dist. Ct. 122d Dist.) (the "Texas Action"), an action that both JPMC and the FDIC have moved to have transferred to the District of Columbia given the pendency there of the D.C. Action commenced by Debtors. However, the existence of the Texas Action—and its flamboyant story of collusion by the U.S. Government and JPMC (which is factually inaccurate and asserts claims barred by relevant provisions of Title 12 of the United States Code)—does not justify the request for Rule 2004 discovery. To the extent the allegations made in the Texas Action are the proper subject of discovery by Debtors, that discovery can be pursued in the Related Litigations under, and subject to the protections of, the Rules. In short, to the extent Debtors would have any proper discovery related to the conduct of JPMC or the government in connection with the receivership of WMB and sale of assets to JPMC,[4] they have sufficient and appropriate avenues in the Related Litigations to pursue that discovery and to do so in the efficient and coordinated manner that the Rules contemplate.

In addition to being improper under well-settled legal principles, the Rule 2004 discovery request would be an inefficient and prejudicial manner in which to proceed. JPMC has conferred with Debtors regarding a discovery schedule for the Adversary Proceeding. Debtors have agreed that, if the Court denies their Rule 2004 Motion, the discovery deadlines and dates set forth in JPMC's proposed discovery plan are acceptable. Debtors' only objection to the

---

[4]     The claims in the Texas Action, and thus the claims Debtors seek to investigate, are in fact barred by federal law. *See* 12 U.S.C. §§ 1821(d)(6)(A) and 1821(d)(13)(D).

schedule is they would like to deviate from the ordinary course of litigation discovery in order to go forward with a subset of discovery (their Rule 2004 discovery) first. This approach not only would lead to needless complication, inefficiency and overall delay, but the taking of unilateral discovery also could prejudice JPMC in both the Related Litigations and the Texas Action. The Rule 2004 discovery clearly will require the review of documents from some of the same custodians and sources from whom JPMC will collect documents for the Adversary Proceeding and other Related Litigations, resulting in needless duplication and expense. Likewise, certain of the deponents will undoubtedly overlap, creating the risk of a repetitive and inefficient process that will unduly burden witnesses. JPMC respectfully submits that the proper way forward is pursuant to a coordinated discovery plan through which Debtors can take any discovery they legitimately seek as part of an overall discovery schedule designed to move the Related Litigations forward in an efficient, expeditious and even-handed manner.

The second motion is made contingent on the Court's granting of the Rule 2004 Motion. Debtors request up to "60 days following the completion of the Requested [2004] Examination" to assert counterclaims against JPMC in the Adversary Proceeding. (Mot. for Ext. at 6.) This Motion should be denied as without basis in the Rules or otherwise. If, through discovery, Debtors ultimately conclude there is a need to add counterclaims or otherwise amend their answer, they should follow the usual procedure and seek leave of the Court to make such amendments and meet the standards applicable to such requests at that time. They should not be granted an extraordinary free pass in the meantime. Without a motion for leave to amend and attendant showing of good cause, Debtors are inappropriately asking the Court to pre-approve a hypothetical complaint that may or may not be proper. Likewise, JPMC is unfairly being asked

to anticipate objections it may have to that hypothetical complaint without any substantive understanding of what would be proposed.

Accordingly, for the reasons set forth more fully below, both the Rule 2004 Motion and the Motion for Extension should be denied.[5]

## BACKGROUND

On September 25, 2008, the FDIC took possession of WMB in a receivership proceeding under 12 U.S.C. § 1821 pursuant to a September 25, 2008 order issued by the Director of the Office of Thrift Supervision ("OTS"). Thereafter, JPMC and the FDIC entered into the P&A. Pursuant to the P&A, JPMC acquired substantially all of the assets and assumed certain liabilities of WMB. On September 26, 2008, Debtors commenced in this Court their voluntary cases under chapter 11 of Title 11.

Following the receivership and sale of the failed bank, the FDIC followed its customary claims process for the administrative review of "any claim against a depository institution for which the Corporation is receiver." 12 U.S.C. § 1821(d)(6)(A)(i). Debtors availed themselves of that process by submitting claims to the receivership, certain of which alleged that the FDIC, among other things, improperly sold assets belonging to WMI. On January 23, 2009, the FDIC disallowed those claims.

Debtors then elected to forgo administrative review of the FDIC's disallowance and to proceed directly with a lawsuit in the U.S. District Court for the District of Columbia. In the D.C. Action, Debtors not only directly challenge the FDIC's disallowance of their claims, but also concurrently assert an ownership interest in certain assets sold by the FDIC to JPMC and

---

[5] JPMC does not here address, and does not waive, the substantial objections it would have to the substance of the overbroad and harassing discovery Debtors seek through Rule 2004 if any such discovery were appropriate.

directly challenge the actions and conduct of their regulators—the FDIC and the OTS—in connection with the circumstances leading up to the failure of WMB. (D.C. Action Complaint ¶ 27.) The D.C. Action also challenges the propriety of the FDIC's sale of WMB assets to JPMC, the price paid by JPMC under the P&A, and the actions of the OTS and the FDIC with respect to WMI and WMB during 2008. (*See, e.g.*, D.C. Action Complaint ¶¶ 27-28, 86-89.) To protect its interests and prevent divestiture of assets and interests acquired from the FDIC, JPMC moved to intervene in the D.C. Action on March 30, 2009. The FDIC has supported JPMC's intervention; WMI has opposed it.

In their schedules of assets and liabilities, amended as recently as February 24, 2009 and filed with this Court, Debtors also laid claim to assets acquired by JPMC from the FDIC as receiver in this bankruptcy proceeding. In order to protect its ownership of and other rights to those assets in this bankruptcy case, JPMC commenced the Adversary Proceeding on March 24, 2009. The Adversary Proceeding likewise is predicated upon the validity of the receivership and sale by the FDIC to JPMC. (*See, e.g.*, Adversary Proceeding ¶¶ 16-17.) The Adversary Proceeding asks this Court to, among other things, declare that Debtors have no right to or interest in certain assets JPMC acquired from the FDIC pursuant to the P&A. (*Id.* ¶¶ 183, 195, 204, 216, 220, 229, 237, 243, 247, 251.) As a courtesy, and to further an efficient litigation, JPMC agreed to Debtors' request to delay filing their answer or otherwise responding to the Adversary Proceeding until May 22, 2009.

In that additional time, rather than proceed in the litigation that was pending and as to which they had requested and obtained an extension, Debtors instead filed the recent Turnover Action, opposed JPMC's motion to intervene in the D.C. Action, and filed these

motions for unilateral discovery under Bankruptcy Rule 2004 and for a significant extension of time to formulate or reformulate counterclaims in the Adversary Proceeding.

JPMC and its counsel have stood ready, willing and able to proceed with discovery. On April 29, 2009, JPMC proposed that the parties develop a coordinated discovery schedule and requested a further conference to discuss how to address the Rule 2004 requests efficiently, as part of the discovery to be taken in the Adversary Proceeding. On May 1, 2009, Debtors said they would not agree to a comprehensive discovery schedule as a way to address their Rule 2004 request. To be clear, JPMC did *not* object to Debtors proceeding with appropriate discovery and does not do so now. Rather, JPMC believed and still believes that it is entitled to the protections afforded to parties in litigation through the discovery process and to a coordinated discovery schedule, pursuant to the Rules and an agreed-upon schedule, that avoids duplication, inefficiency and multiple or repetitive productions of documents or witnesses. Debtors' response to these concerns was to file both the Rule 2004 Motion and the Motion for Extension later the same day as the discovery conference.

## ARGUMENT

## I.    DEBTORS' REQUEST FOR RULE 2004 DISCOVERY SHOULD BE DENIED.

Rule 2004 discovery cannot be used in lieu of the "compulsory process procedures" of discovery available under the Federal Rules for use in related litigations.[6] *In re Continental Airlines, Inc.*, 125 B.R. 415, 417 (Bankr. Del. 1991); *see also In re Enron Corp.*, 281

---

[6]    Although JPMC is not yet a party to the D.C. Action, there is a substantial likelihood that its motion seeking to intervene in that litigation will be granted. In the meantime, discovery from JPMC is available to Debtors in connection with the D.C. Action pursuant to Rule 45 of the Federal Rules of Civil Procedure. The availability of discovery in Related Litigations is fatal to Debtors' Rule 2004 Motion particularly when, as here, JPMC has such a clear interest in the D.C. Action. *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 455 (Bankr. D.N.J. 1998) (noting that "courts . . . prohibit[] a Rule 2004 exam of parties involved in or *affected by*" a pending proceeding) (emphasis added); *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274-75 (D. Colo. 1991) (same).

B.R. 836, 840, 844 (Bankr. S.D.N.Y. 2002) (refusing effort to use Rule 2004 to overcome stay

imposed by the Private Securities Litigation Reform Act).   More specifically, Rule 2004

discovery is inappropriate when discovery is sought from "parties to" or those "affected by" the

pending proceeding.  *In re Bennett Funding Group, Inc.*, 203 B.R. at 24, 28-29; *see also In re*

*Blinder, Robinson & Co., Inc.*, 127 B.R. at 274-75.  Consequently, it is well settled that once an

adversary proceeding has been commenced, "discovery is made pursuant to [the Federal Rules []

rather than by a [Rule 2004] examination."[7]  *In re 2435 Plainfield Ave., Inc*, 223 B.R. at 455

(collecting cases) (citing *In re Bennett Funding Group, Inc.*, 203 B.R. at 28 (Bankr. N.D.N.Y.

1996)); *see also In re Barnes*, 365 B.R. 1, 11 (Bankr. D.D.C. 2007) (noting that Rule 2004 is a

"pre-litigation tool").   Indeed, courts have uniformly found that the use of Rule 2004 to seek

discovery is inappropriate and an "abuse" when—as here—the Rule 2004 discovery sought

clearly relates to and is available in the pending proceeding.[8]  *Snyder* v. *Soc'y Bank*, 181 B.R. 40,

---

[7]     The limitations placed on Rule 2004 discovery are imposed, in part, because a party subject to a
Rule 2004 examination—which is a "free and easy practice"—does not enjoy the same rights and
privileges as a party subject to discovery under the Federal Rules. *See, e.g., In re Enron Corp.*, 281 B.R.
at 841 (citations omitted) (noting the restricted ability to object to relevance and the broad scope of
inquiry under a Rule 2004 examination); *In re Dinublio*, 177 B.R. 932, 939-40 & n.12 (E.D. Cal. 1993)
(explaining that, in certain circumstances, a Rule 2004 "witness has no right to be represented by counsel
except at the [court's discretion] . . . . ; there is only a limited right to object to immaterial or improper
questions; there is no general right to cross-examine witnesses; and no right to have issues defined
beforehand.")

[8]     To support their request for Rule 2004 discovery, Debtors are forced to rely on entirely inapposite
precedent.  For example, *In re M4 Enterprises Inc.*, 190 B.R. 471, 475 (Bankr. N.D. Ga. 1995) states that
a party "may not employ Rule 2004 as a discovery device by which to uncover evidence related to an
adversary proceeding." *Id*. at 475.  Although the court there allowed narrow Rule 2004 discovery against
the Trustee, discovery was allowed because *no* related adversary proceeding was pending and, thus, there
was no need to "mandatorily engag[e] the Federal Rules of Civil Procedure"—as required here.  *Id*.
(allowing narrow Rule 2004 discovery in a "contested matter" under Bankruptcy Rule 9014).  The other
cases cited by Debtors either simply allow a Rule 2004 examination without any analysis of the relation
between the discovery sought and the claims asserted in the complaint (*see In re Sun Med. Mgmt.*, 104
B.R. 522, 523-24 (Bankr. M.D. Ga. 1989)) or stand for the unremarkable notion that Rule 2004 discovery
is permissible against "parties [un]affected by the adversary proceeding . . . [because they] do not require
the greater protections afforded under the Federal Rules" (*see In re Buick*, 174 B.R. 299, 305 (Bankr. D.
Colo. 1994)).

41 (S.D. Tex. 1994) (denying use of Rule 2004 when a litigation was pending in state court); *In re Petition of the Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 586-87 (Bankr. S.D.N.Y. 2001) (denying Rule 2004 request because the discovery could be sought in "separate proceeding [that was] an arbitration pending in a foreign country").

Debtors' argument that "Rule 2004 discovery is appropriate here notwithstanding the pending adversary proceedings between the parties" (Rule 2004 Mot. at 12), is not just unfounded, but it is directly contrary to the governing law. The question before the Court is whether Debtors' Rule 2004 discovery request "relates" to the D.C. Action and the Adversary Proceeding, including whether the discovery is sought from "parties to" or those "affected by" the pending proceeding, *In re Bennett Funding Group, Inc.,* 203 B.R. at 28-29; *Snyder,* 181 B.R. at 41, or if the Rule 2004 discovery creates an "unavoidable and unintentional back door" through which discovery relevant to the Related Litigations would be discovered, *In re Enron,* 281 B.R. at 842. Debtors' Rule 2004 examination of JPMC is not only improper because it *could* establish an "unavoidable and unintentional back door" for discovery relevant to the Related Litigations, it is improper because it *expressly* seeks documents and testimony directly relevant to the claims asserted in the Related Litigations and, as Debtors' own motion asserts, "counterclaims" or additional claims Debtors may seek to assert in those litigations.

Debtors cannot seriously dispute that this is the case. Debtors' Motion for Extension expressly states that the Rule 2004 discovery "is critical to the Debtors' full understanding of affirmative *claims and counterclaims against JPMC.*" (Mot. for Ext. at 2 (emphasis added); *see also* Rule 2004 Mot. at 3.) This is an admission that the discovery relates to the pending litigation. All of Debtors' potential "counterclaims" against JPMC necessarily relate to the Adversary Proceeding. And discovery regarding Debtors' potential claims,

whatever those might be, is being sought from JPMC, which is either a "party to" or "affected by" the D.C. Action and the Adversary Proceeding.

Debtors cannot evade the limitations on Rule 2004 discovery by simply claiming that the discovery "seeks facts on many issues not raised by the JPMC complaint . . . ." (Mot. for Ext. at 5; *see also* Rule 2004 Mot. at 2.) Any careful lawyer could draft a Rule 2004 discovery request that purports to "seek[] facts" and raise "issues" not in the plain *text* of a pending complaint. Rule 2004 discovery is improper when another pending proceeding is "related," such that discovery is sought from one "affected by" that proceeding. *In re Bennett Funding Group, Inc.*, 203 B.R. at 28-29; *Snyder*, 181 B.R. at 41. Thus, in *Bennett*, the court denied a Rule 2004 motion because the requested examination would "involve issues and parties within the scope of" a pending adversary proceeding. 203 B.R. at 30.

In *Bennett*, the trustee alleged in an adversary proceeding that the defendants had diverted certain assets from the debtor for construction of a hotel and racetrack. *Id.* at 26. The Rule 2004 motion sought, among other things, information generally related to the same defendants' bank accounts, ownership of property, and transfers of funds from the debtor that were involved in the basic allegations. *Id.* at 29. Despite the trustee's assertion that it sought examination only into matters necessary to fully ascertain the extent of the estate and not related to the hotel and racetrack, the court denied the motion after noting the "likelihood" that the examination would "delv[e] into issues" covered by the adversary proceeding and holding that it was likely that "information elicited will relate directly to issues and parties already named in the adversary proceeding." *Id.* at 29-30.

Here, the Rule 2004 discovery requests are designed to "elicit[] [information that] will relate directly to issues and parties already named in the adversary proceeding," and

therefore the Rule 2004 discovery is improper. For example, Debtors' Document Request 17 seeks "[a]ll documents concerning any communications between JPMC and any Governmental Unit concerning any Transaction on September 25, 2008." These are the documents that relate to, among other things, negotiation and execution of the P&A, which is central to JPMC's claims in the Adversary Proceeding (in which it asserts ownership rights pursuant to the P&A) and in the D.C. Action, in which Debtors are seeking to divest JPMC of assets it acquired pursuant to the P&A. (Adversary Proceeding Comp. ¶ 89-90.) Thus, precisely the same discovery is going to be relevant to and sought in the Adversary Proceeding and the D.C. Action.

More broadly, a review of the three areas Debtors identify as the basis for their Rule 2004 discovery establishes that they each implicate matters that are the subject of one or more of the Related Litigations, including allegations that Debtors have themselves made in those Related Litigations. This is fatal to Debtors' Rule 2004 motion:[9]

| Rule 2004 Discovery Requests | Sample Allegations from Related Litigations |
|---|---|
| Discovery relating to the conduct of the FDIC, OTS, JPMC or others concerning any attempt to "drive down WMB's value so that [JPMC] could purchase WMB's assets at a fire-sale price," which is the "crux" of Debtors' Rule 2004 Motion. (Rule 2004 Mot. at 6; *see, e.g.*, Document Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, 16, 17, 18, 19, 20, 21, 23, 32, 33, 37, 35, 36, 38, 39.) | <u>D.C. Action</u>: WMI has alleged that the OTS closed the bank and appointed the FDIC as receiver. (D.C. Action ¶¶ 85-86.) "[T]he FDIC entered into the Purchase and Assumption Agreement with JPMorgan Chase [by which it sold] . . . "the assets of WMB, less the liabilities assumed" for less than would have been obtained had the FDIC conducted the sale "in a prudent and reasonable manner." (*Id.* ¶¶ 85-86.) "The FDIC breached its statutory duty to maximize the net present value of WMB's assets." (*Id.* at ¶ 89.) The FDIC [engaged in a] wasting of WMB's assets." (*Id.* at ¶ 92.)<br><br><u>Adversary Proceeding</u>: [T]he OTS placed WMB in receivership because of significant concerns over the safety and soundness of the institution. To ensure |

[9] This table has been created for demonstrative purposes to establish that the existence of the Related Litigations make Debtors' request for Rule 2004 discovery inappropriate. JPMC does not waive any rights with respect to any discovery sought on any of the issues or factual matters reflected herein. JPMC likewise preserves its right to seek a protective order with respect to any discovery request propounded as a result of Debtors' motion or otherwise, should the parties be unable to reach agreement on particular discovery matters.

| Rule 2004 Discovery Requests | Sample Allegations from Related Litigations |
|---|---|
| | continuity of operations, maximize public confidence and minimize cost to the public treasury, the FDIC ran an accelerated bidding process . . . . (Adversary Complaint ¶ 25). |
| Discovery relating to capital contributions made by WMI to WMB to determine whether "there exists claims against JPMC for fraudulent transfer." (Rule 2004 Mot. at 9; Document Requests 11, 15, 19, 20, 31, 33, 40, 41, 42.) | D.C. Action:  WMI has alleged that the "FDIC or the OTS [improperly] induced WMI to make one or more Capital Contributions." (D.C. Action ¶ 27.)  These allegedly give rise to not only claims for "fraudulent transfer," but also "all other claims or causes of action, under any theory, applicable to the Capital Contributions." (*Id.* ¶ 28.)  The Capital Contributions at issue date back to December 1, 2007.  (*Id.* ¶ 25.)<br><br>Adversary Proceeding:  WMI formally contributed to WMB at least $6.5 billion of the approximately $10.2 billion in capital it had raised.  (Adversary Complaint ¶ 35.) |
| Discovery relating to the FDIC's sale to JPMC of certain assets and liabilities of WMB and determination of which assets and liabilities JPMC acquired under the P&A. (Rule 2004 Mot. at 9; Document Requests 1, 2, 3, 5, 6, 13, 14, 15, 16, 18, 19, 20, 21, 22, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 39, 43, 44, 45, 46, 47.) | D.C. Action:  WMI has alleged that the OTS closed the bank and appointed the FDIC as receiver.  (D.C. Action ¶¶ 85-86.)  "[T]he FDIC entered into the Purchase and Assumption Agreement with JPMorgan Chase [by which it sold] . . . "the assets of WMB, less the liabilities assumed" for less than would have been obtained had the FDIC conducted the sale "in a prudent and reasonable manner." (*Id.* ¶¶ 85-86.)<br><br>Adversary Proceeding:  JPMC "brings this action in order to ensure that [JPMC] and its subsidiaries are not divested of their assets and interests purchased in good faith from the [FDIC] as receiver . . . for [WMB]." (Adversary Complaint ¶ 1).<br><br>"[T]he assets and liabilities of the Debtors and their direct and indirect subsidiaries, including the Affiliated Banks, were connected and in many cases, commingled and intertwined.  Prior to the Receivership, the Debtors and their direct and indirect subsidiaries operated a centralized and consolidated cash management system pursuant to which external receipts and payments were accounted for on a consolidated basis . . . ." (*Id.* ¶ 37). |

With regard to the spurious allegations in the Texas complaint about espionage and collusion in connection with the FDIC's sale of WMB's assets to JPMC, any discovery relating to JPMC's "purchase of WMB's assets" would certainly "delv[e] into issues," *In re*

*Bennett Funding Group, Inc.*, 203 B.R. at 30, directly related to the Adversary Proceeding and D.C. Action. Indeed, because the Rule 2004 discovery sought broadly relates to an "allegedly premeditated plan by JPMC designed to push WMB and WMB fsb into receivership, position JPMC as the winning bidder, and allow JPMC to walk off with WMB's assets . . . to the detriment of its largest stakeholder WMI" (Mot. for Ext. at 6), it is nearly impossible to envision a Rule 2004 examination that could avoid addressing topics at issue in and related to the Related Litigations, such as the circumstances that led to the sale to JPMC, the terms of the P&A, the nature and value of assets acquired by JPMC and the extent to which WMI may have claims related to the property JPMC acquired under the P&A.

Lastly, the implication that allowing Rule 2004 discovery to proceed first is an efficient and sensible discovery plan is incorrect. (Rule 2004 Mot. at 11.) The Rule 2004 Motion is a not-so-subtle attempt to proceed with duplicative discovery and circumvent the protections and efficiencies that a comprehensive discovery schedule would provide. This is not the right way forward. JPMC's proposed pre-trial order will address the parties' need to proceed with discovery. The proposed schedule will ensure that the parties have access to relevant documents on all the related issues, prior to the taking of depositions. The proposed schedule will ensure, as is particularly appropriate in complex litigation such as this, that witnesses are not subjected to multiple depositions. There is no justification for permitting Debtors to proceed with piecemeal Rule 2004 discovery while full-scale discovery is ready to proceed. Debtors' proposed course is destined to lead to precisely the sort of inefficiency that the traditional sequenced approach to discovery is designed to avoid.

For all these reasons, Debtors' motion for Rule 2004 discovery should be denied.

## II. DEBTORS' MOTION FOR AN EXTENSION OF TIME TO FILE COUNTERCLAIMS SHOULD ALSO BE DENIED.

In connection with seeking a Rule 2004 examination, Debtors also seek "an order enlarging the time in which Debtors may assert counterclaims against JPMC in the Adversary Proceeding to a date 60 days following the completion of the Requested Examination." (Mot. for Ext. at 6.) The motion should be denied for two reasons—(1) given the denial of the Rule 2004 Motion there is no need for an extension, and (2) there is no legal basis for the request in any event.

*First*, the primary predicate for Debtors' Motion for an Extension is to delay the assertion of counterclaims until after the Rule 2004 discovery is complete. If the Rule 2004 Motion is denied, there is no need for this delay. And by asking for a delay to accommodate the Rule 2004 discovery, Debtors have necessarily acknowledged that the 2004 discovery "relates to" a pending litigation, which requires that their 2004 Motion be denied.

Moreover, the possibility that Debtors may develop new counterclaims as these litigations progress is not a basis for the requested extension. In the D.C. Action, Debtors have already laid out claims that would be compulsory counterclaims to the Adversary Proceeding. For example, JPMC has sought relief with respect to the acquisition of certain Trust Securities. (Adversary Complaint ¶¶ 180-90.) Debtors are going to attempt to claw back the Trust Securities because they were purportedly contributed to WMB at a time when WMI or WMB was insolvent. (D.C. Action Complaint ¶¶ 29-35.) Debtors have made similar claims relating to tax refunds, capital contributions and other assets that now rightfully belong to JPMC. (*Id.* ¶¶ 22-35.) These are compulsory counterclaims.

The strategic reason for Debtors' delay in asserting these counterclaims is obvious. Under federal law, these counterclaims had to be directed to the FDIC in the

receivership claims process, *see* 12 U.S.C. § 1821(d)(13)(D), and now must be pursued in the

D.C. Action, *see* 12 U.S.C. § 1821(d)(6)(A). *See also Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that claims against a purchaser, such as JPMC, for assets subject to the receivership must be pursued through the processes set out in Title 12). Any claim that purportedly arises from the Texas Action will run into the same problem. Indeed, JPMC and the FDIC have filed papers as recently as this week in the Texas Action establishing that the Texas claims are barred by Title 12 of the United States Code.

> *Second*, regardless of how discovery proceeds, this Court should deny the Motion for an Extension. In essence, Debtors seek to avoid the requirement that a party must move for leave to amend an answer because adherence to the Rules would prejudice them. (*See* Mot. for Ext. at 8.) Denial of this motion will not "severely prejudice the Debtors." (*Id.* at 3.) To the extent that subsequent discovery gives Debtors a purported basis to assert new counterclaims against JPMC, Debtors could move the Court for leave to amend its answer with additional counterclaims "if justice so requires." *See* Fed. R. Bankr. P. 7013; Fed. R. Civ. P. 13(f) (incorporated to apply to adversary proceedings through Rule 7013); Fed. R. Civ. P. 15(a)(2) (incorporated through Bankruptcy Rule 7015). Such a motion is appropriate because the determination of whether to allow a party to assert counterclaims is necessarily fact-intensive. It is impossible for the Court to determine at this premature date whether the filing of additional, yet unidentified, counterclaims would be proper. Likewise, there is no way for JPMC to assert the proper objections to an amended pleading it has not yet seen. For this reason alone, the Motion for Extension should be denied.

> The three arguments Debtors proffered in support of their motion do not change this conclusion. *First*, Rule 7013 does not, as Debtors contend, provide "that the deadline for a

trustee or debtor in possession to assert counterclaims may be extended." (Mot. for Ext. at 7.) Rather, the Rule provides that a trustee or debtor "may *by leave of court* amend the pleading, or commence a new adversary proceeding or separate action." Fed. R. Bankr. P. 7013 (emphasis added).

  *Second*, Debtors' reliance on Bankruptcy Rule 9006(b) is misplaced. Rule 9006(b) and its equivalent Federal Rule 6(b) provide that the Court may enlarge the time for a party to respond under a particular bankruptcy rule. 1 MOORE'S FEDERAL PRACTICE § 6.06[1][a] (Matthew Bender 3d ed.). While a court is authorized to change the return date for a court filing, for example, Rule 9006(b) does not permit a court to rewrite the applicable rules regarding motions for leave to amend an answer.

  *Third*, Debtors cannot seek to invoke the inherent powers of this Court under 11 U.S.C. § 105(a). Section 105(a) is not invoked to create rights "that would otherwise be unavailable under the Code." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (citations omitted); *see also In re Barbieri*, 199 F.3d 616, 620-21 (2d Cir. 1999) (warning the "equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules") (citations omitted). "When a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Combustion Eng'g, Inc.*, 391 F.3d at 236 (quoting *In re Fesco Plastics Corp.*, 996 F.2d 152, 154-55 (7th Cir. 1993)); *In re Lowenschuss*, 67 F.3d 1394, 1402 (9th Cir. 1995) ("[S]ection 105 does not authorize relief inconsistent with more specific law"). Here, Debtors are required by Federal Rule 13(f) and Bankruptcy Rule 7013 to seek leave of the Court if they wish to amend their answer to assert new counterclaims or

otherwise. They have offered no justification to be relieved of compliance with the ordinary rules that govern the conduct of debtors, other litigants and litigations every day and everywhere.

The Court should deny Debtors' Motion for Extension.

## CONCLUSION

For the foregoing reasons, Debtors' Motions for an Order Pursuant to Rule 2004 and Local Bankruptcy Rule 2004.1 Directing the Examination of JPMorgan Chase, N.A. and an Order Pursuant to 11 U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 7013 and 9006(b) Enlarging the Time for Asserting Counterclaims Against JPMorgan Chase Bank, N.A. should be denied.

Dated: May 13, 2009            Respectfully submitted,
     Wilmington, Delaware

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
LANDIS RATH & COBB LLP
919 Market Street Suite 1800
Wilmington, DE 19899
Tel: (302) 467-4400
Fax: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

– and –

Robert A. Sacks
Hydee R. Feldstein
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
Fax: (310) 712-8800
sacksr@sullcrom.com
feldsteinh@sullcrom.com

Bruce E. Clark
David H. Braff
Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000
Fax (212) 558-3588
clarkb@sullcrom.com
braffd@sullcrom.com
friedmans@sullcrom.com


*Counsel for JPMorgan Chase Bank, National Association*