# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Washington Mutual, Inc., *et al.*,<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 08-12229 (MFW)<br>(Jointly Administered) |
| JPMorgan Chase Bank, National Association,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>Washington Mutual, Inc. and WMI Investment Corp.,<br><br>　　　　　Defendants for all Claims,<br><br>　　　　　-and-<br><br>Federal Deposit Insurance Corporation,<br><br>　　　　　Additional Defendant for Interpleader claim. | Adv. Pro. No. 09-50551 |

**BRIEF IN SUPPORT OF THE MOTION OF THE AD HOC AND TRUST COMMITTEES FOR THE DIME SAVINGS BANK UMBRELLA TRUST BENEFICIARIES TO INTERVENE IN ADVERSARY PROCEEDING PURSUANT TO 11 U.S.C. § 1109(a) AND FED. R. BANKR. P. 7024**

Kurt F. Gwynne (No. 3951)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com

J. Andrew Rahl
James M. Andriola
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

# TABLE OF CONTENTS

                                                                                                 **Page**

Summary of Motion ................................................................................................ 2

NATURE AND STAGE OF PROCEEDINGS/STATEMENT OF FACTS ...................... 2

ARGUMENT .............................................................................................................. 5

   A. The Committees Have a Statutory Right to Intervene in the Adversary Proceeding ........................................................................................................ 5

   B. The Committees Are Entitled to Intervene as of Right Because They Satisfy the Elements of Rule 24(a)(2) ............................................ 7

      1. The Committees' Application to Intervene is Timely ........................................ 8

      2. The Committees Have A Substantial and Sufficient Interest in The Adversary Proceeding and There Is A Threat That Such Interest Will Be Affected By the Disposition of the Adversary Proceeding ................................................. 9

      3. The Committees' Interests in the Adversary Proceeding Are Not Currently Represented in Adequate Fashion by Any Existing Party to the Litigation ................................................................................................ 11

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

                                                                              **Page**

**Cases**

Harris v. Pernsley,
 820 F.2d 592 (3d Cir. 1987) ........................................................................................ 9

In re Amatex Corp.,
 755 F.2d 1034 (3d Cir. 1985) ................................................................................. 6, 7

In re Bumper Sales, Inc.,
 904 F.2d 1430 (4th Cir. 1990) ..................................................................................... 6

In re Co Petro Mktg. Group,
 680 F.2d 566 (9th Cir. 1982) ...................................................................................... 7

In re FRG, Inc.,
 107 B.R. 461 (Bankr. S.D. N.Y. 1989) ........................................................................ 7

In re Ionosphere Clubs, Inc.,
 101 B.R. 844 (Bankr. S.D.N.Y. 1989) ......................................................................... 7

In re Public Serv. Co. of New Hampshire,
 88 B.R. 546 (Bankr. D.N.H. 1988) .............................................................................. 6

Kleissler v. United States Forest Serv.,
 157 F.3d 964 (3d Cir. 1998) ........................................................................................ 8

Michaels Stores Inc. v. Castle Ridge Plaza Assocs.,
 6 F. Supp. 2d 360 (D.N.J. 1998) .................................................................................. 8

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,
 72 F.3d 361 (3d Cir. 1995) ............................................................................... 8, 9, 11

Steinberg v. Shearson Hayden Stone, Inc.,
 598 F. Supp. 273 (D. Del. 1984) ......................................................................... 10, 11

Trbovich v. United Mine Workers,
 404 U.S. 528 (1972) .................................................................................................. 11

Twp. of South Fayette v. Allegheny Cty. Hous. Auth.,
 183 F.R.D. 451 (W.D. Pa. 1998) ................................................................................. 9

Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.),
 998 F.2d 783 (10th Cir. 1993) ..................................................................................... 6

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................................... 5, 6, 7

Fed. Bankr. P. 7024................................................................................................... 1, 5

**Statutes**

11 U.S.C. § 101............................................................................................................. 3

11 U.S.C. § 1109(b) .................................................................................................. 1, 6

**Miscellaneous**

7A Federal Practice and Procedure § 1909........................................................... 11

Pursuant to 11 U.S.C. § 1109(a) and Fed. R. Bankr. P. 7024, by its undersigned counsel, the Ad Hoc Committee of Dime Savings Umbrella Trust Beneficiaries (the "Ad Hoc Committee") and the committee (the "Trust Committee") created under each of the following Trust Agreements: (i) the Amended and Restated Umbrella Trust Agreement among Washington Mutual, Inc., as successor to Dime Bancorp., Inc., and Washington Mutual Bank as successor to The Dime Savings Bank of New York, FSB, and Union Bank of California, as Trustee with respect to the Designated Arrangements of The Dime Savings Bank of New York, FSB and Related Entities, as amended; (ii) the Amended and Restated Umbrella Trust Agreement among Washington Mutual, Inc., as successor to Dime Bancorp., Inc., and Washington Mutual Bank as successor to The Dime Savings Bank of New York, FSB, and Union Bank of California, as Trustee with respect to the Covered Arrangements for Outside Directors of The Dime Savings Bank of New York, FSB and Related Entities, as amended; (iii) the Amended and Restated Umbrella Trust Agreement among Washington Mutual, Inc., as successor to Dime Bancorp., Inc., and Washington Mutual Bank as successor to The Dime Savings Bank of New York, FSB, and Union Bank of California, as Trustee with respect to the Covered Arrangements of The Dime Savings Bank of New York, FSB and Related Entities, as amended; and (iv) the Amended and Restated Benefit Protection Trust Agreement among Washington Mutual, Inc., as successor to Dime Bancorp., Inc., and Washington Mutual Bank as successor to The Dime Savings Bank of New York, FSB, and Union Bank of California, as Trustee, as amended (collectively, the "Dime Rabbi Trust Agreements"),[1] in the

---

[1]  Each of the Dime Rabbi Trust Agreements was originally dated May 18, 2000 and amended effective December 31, 2001, January 1, 2002 and November 23, 2007. The trusts established under the Dime Rabbi Trust Agreements are hereinafter collectively referred to as the "Dime Rabbi Trusts."

above-captioned bankruptcy proceedings, submit this Brief in Support of their Motion to Intervene in Adversary Proceeding, and state as follows:

**Summary of Motion**

1. The members of the Ad Hoc Committee are beneficiaries of the Dime Rabbi Trusts who all have claims against such trusts and their assets. Many of them also have direct claims under such trusts against the Debtors.[2] The Trust Committee was created under the Dime Rabbi Trust Agreements with broad authority to provide certain trust-related functions, including representing the interests of the beneficiaries. Plaintiff in this Adversary Proceeding seeks relief from the Court that would declare and authorize it to be the owner of such trusts and their assets. The interest of Plaintiff as an owner of the Dime Rabbi Trusts would be materially different from that of the beneficiaries of such trusts. Thus, the Ad Hoc Committee and the Trust Committee (collectively, the "Committees") seek to intervene herein as of right.

**NATURE AND STAGE OF PROCEEDINGS/STATEMENT OF FACTS**

2. The Dime Savings Bank FSB ("Dime") was acquired by Washington Mutual Bank, Henderson Nevada ("WMB") in January 2002. Prior to that acquisition, Dime adopted a number of key executive and director benefit plans (the "Plans") which were covered, respectively, by the Dime Rabbi Trust Agreements. In the acquisition, all of the obligations and liabilities under the Dime Rabbi Trust Agreements and the Plans thereunder were assumed by WMB.

---

[2] Debtor Washington Mutual, Inc. is a party to the Dime Rabbi Trust Agreements (as defined below), which in turn provide that Washington Mutual, Inc. has direct liability, equivalent in nature to a guaranty claim, for the obligations to the beneficiaries of three of the five benefit plans which are covered by the trusts.

- 2 -

3. The Debtor Washington Mutual, Inc. ("WMI") also was a party to the Dime Rabbi Trust Agreements and jointly assumed liability with WMB under three of the Plans covered by said trusts.[3] Notwithstanding WMI's liability thereunder, all of the assets of the Dime Rabbi Trusts were assets of WMB.[4]

4. On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver (the "Receiver") for WMB and on the same day the FDIC entered into a Purchase and Assumption Agreement (the "P & A") with Plaintiff JP Morgan Chase Bank, National Association ("JPMorgan Chase") pursuant to which JPMorgan Chase acquired the business and related assets of WMB from the FDIC as Receiver. Among the assets acquired by JPMorgan Chase under the P & A were the Dime Rabbi Trusts.

5. On September 26, 2008 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed a bankruptcy petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et. seq. (the "Bankruptcy Code").

6. On March 20, 2009, the Debtors commenced a civil action in the United States District Court for the District of Columbia against the FDIC, *Washington Mutual, Inc., et al. v. Federal Deposit Insurance Corporation*, Case No. 1:09-cv-00533 (the "District Court Action").

---

[3] They are: (i) Retainer Continuation Plan for Independent Directors of The Dime Savings Bank of New York, FSB; Dime Bancorp, Inc.; (ii) Voluntary Deferred Compensation Plan for Directors; and (iii) Deferred Compensation Plan for Board Members of The Dime Savings Bank of New York, FSB.

[4] See Complaint (defined below) at ¶¶ 130-135. Also, the FDIC recently confirmed that the assets of the Dime Rabbi Trusts were transferred to JPMorgan Chase. In letters to members of the Committees, the FDIC stated: "[b]y the terms of the Purchase and Assumption Agreement all Washington Mutual Banks' assets passed to JPMorgan Chase Bank, which would include all of Washington Mutual Bank's interest, if any, in the assets in trust related to the Dime employee plans."

7. On March 24, 2009, JPMorgan Chase commenced the above-captioned adversary proceeding (the "Adversary Proceeding") by filing a complaint against the Debtors (the "Complaint"). JPMorgan Chase brought the Adversary Proceeding to, among other things, "ensure that JPMorgan Chase and its subsidiaries are not divested of their assets and interests purchased in good faith from the Federal Deposit Insurance Corporation ("FDIC") as receiver (the "Receiver") for Washington Mutual Bank, Henderson Nevada ("WMB") under Title 12 of the United States Code pursuant to that certain Purchase and Assumption Agreement dated as of September 25, 2008 (the "P & A")." (Complaint at ¶ 1).

8. The Debtors have never acknowledged JPMorgan Chase's ownership of the Dime Rabbi Trusts even though these assets were reflected on WMB's books and records and WMB was the successor to the original settlor. These assets support obligations under certain non-qualified retirement and pension plans covering current and former employees or retirees of WMB, and, in particular, one of its predecessors in interest, Dime. The Committees' constituents are beneficiaries of the Dime Rabbi Trusts, many of whom are retired individuals who had been receiving regular payments from the Plans covered by the Dime Rabbi Trusts. While these beneficiaries have come to rely on such payments for their financial support, no benefits have been paid under the Plans to any of the beneficiaries since the Petition Date.

9. Since the execution of the P & A, "JPMorgan Chase has been prepared to assume the obligations supported by the rabbi trust assets [including, the Dime Rabbi Trusts] that it purchased under the P & A but the Debtors have refused to provide joint instructions to the trustees even where it is incontrovertible that the assets for a particular

trust were acquired by JPMorgan Chase under the P & A. In so refusing to acknowledge [JPMorgan Chase's] ownership and utilizing the automatic stay, the Debtors in effect have halted the payment of benefits to employees and many elderly retirees." (Complaint at ¶ 133).

10. Count Ten of the Complaint seeks (i) a declaration that JPMorgan Chase purchased the assets of, among other rabbi trusts, the Dime Rabbi Trusts, and (ii) an order authorizing JPMorgan Chase and certain trustees to take all actions necessary or appropriate to transfer ownership to JPMorgan Chase. Count Eleven of the Complaint is a claim for unjust enrichment and requests that, in the event the Court finds that JPMorgan Chase did not purchase the assets of certain rabbi trusts, including the Dime Rabbi Trusts, the Court establish a constructive trust for the benefit of JPMorgan Chase consisting of the value of the assets of the rabbi trusts.

11. By this motion, the Committees seek to intervene as plaintiffs in the Adversary Proceeding with respect to Counts Ten and Eleven of the Complaint.

12. All of the assets of the Dime Rabbi Trusts are held by Union Bank of California as Trustee (the "Trustee"). The Trustee declined a request by the Committees that it intervene in this Adversary Proceeding.

**ARGUMENT**

    **A.    The Committees Have a Statutory Right to Intervene in the Adversary Proceeding**

13. Intervention in the Adversary Proceeding is governed by Federal Rule of Civil Procedure 24(a), as incorporated by Federal Rule of Bankruptcy Procedure 7024. Rule 24(a) provides as follows:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical mater impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

14. In this case, subsection (a)(1) of Rule 24 is applicable because Section 1109(b) of the Bankruptcy Code provides the Committee with an unconditional right to intervene in the Adversary Proceeding. Official. Comm. Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.), 689 F.2d 445, 448-49 (3d Cir. 1982); Phar-Mor v. Coopers & Lybrand, 22 F.3d 1228, 1232 (3d Cir. 1994) (Section 1109 of the Bankruptcy Code gives "parties in interest an 'unqualified' right to be heard and, therefore, the term 'case' in [Section] 1109 includes" adversary proceedings).

15. Section 1109(b) provides that: "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The foregoing list of entities that may have party in interest status is not exclusive. See, e.g., In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985) ("The Code does not include a definition of party in interest, it is clear, however, that the term "party in interest" is not limited by the small list of examples in § 1109(b)."); Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.), 998 F.2d 783, 788 (10th Cir. 1993) ("party in interest is not confined to the list of examples provided under section 1109(b).").

16. Moreover, "Section 1109(b) 'is to be construed broadly, in order to allow parties affected by a chapter 11 case to appear and be heard.'" In re Bumper Sales, Inc., 904 F.2d 1430, 1433 (4th Cir. 1990) (quoting In re Public Serv. Co. of New Hampshire, 88 B.R. 546, 550 (Bankr. D.N.H. 1988)). In this regard, Courts have authorized a broad and elastic interpretation of entities entitled to party in interest status. See, e.g., In re Amatex Corp., 755 F.2d at 1042; see also In re Ionosphere Clubs, Inc., 101 B.R. 844 (Bankr. S.D.N.Y. 1989); In re FRG, Inc., 107 B.R. 461 (Bankr. S.D. N.Y. 1989).

17. Basically, a party in interest includes any entity with a direct legal interest at issue in the case. In re Co Petro Mktg. Group, 680 F.2d 566 (9th Cir. 1982). Here, there can be no doubt that the Committees have a direct legal interest in Count Ten of the Complaint; without a declaration from the Court that the Dime Rabbi Trusts were purchased by JPMorgan Chase from WMB, the constituents represented by the Committees will not receive the retirement and pension plan benefits to which they are entitled.

18. The Committees' statutory right to intervene fits well within the liberal standard of Section 1109(b), and therefore, the Committees respectfully request this Court to grant their motion to intervene.

### B. The Committees Are Entitled to Intervene as of Right Because They Satisfy the Elements of Rule 24(a)(2)

19. Even if the Committees did not have a statutory right to intervene in the Adversary Proceeding, intervention by right still would be appropriate under Rule 24(a)(2). Under that subsection, a party may intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical mater impair

or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).

20. The Third Circuit has interpreted Rule 24(a)(2) to require proof of four elements from an applicant seeking intervention as of right: "first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." Kleissler v. United States Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998). Because the Committees satisfy each of the elements of this test, they should be permitted as of right to intervene in the Adversary Proceeding.

### 1. The Committees' Application to Intervene is Timely

21. The first element of the test for an application to intervene as of right requires that the application be timely asserted. A court must examine three factors in determining the timeliness of a motion to intervene as of right: "(1) the stage of the proceeding [at which the application is made]; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995).

22. The timeliness of the instant motion is readily apparent. The Adversary Proceeding was only commenced on March 24, 2009 and is now only in its preliminary stages. Thus, it cannot be said that there has been any delay in the Committees' application. See Michaels Stores Inc. v. Castle Ridge Plaza Assocs., 6 F. Supp. 2d 360, 364 (D.N.J. 1998) (finding that where applicant filed a motion to intervene less than three months after the action was filed, and while the action was still in its preliminary stages,

the application was made without delay and was timely). Furthermore, none of the existing parties can claim any prejudice from the Committees' intervention at this time. See id.; see also Mountain Top, 72 F.3d at 370 ("[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved.").

> **2. The Committees Have A Substantial and Sufficient Interest in The Adversary Proceeding and There Is A Threat That Such Interest Will Be Affected By The Disposition Of The Adversary Proceeding**

23. The second element of the test for an application to intervene as of right is whether the applicant has a "sufficient interest" in the underlying litigation. The interest asserted by the intervenor must be "significantly protectable," meaning that "the interest must be a legal interest, as distinguished from interests of a general and indefinite character, [and] the applicant must demonstrate that there is a tangible threat to a legally cognizable interest." Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987). It is unnecessary for the applicant to demonstrate that it will be bound by the litigation as a matter of res judicata; "when the litigation directly implicates a movant's legally protectable rights, pragmatic considerations as well as due regard for judicial economy are factors to be considered" in making the determination whether to permit the intervention. Twp. of South Fayette v. Allegheny Cty. Hous. Auth., 183 F.R.D. 451, 454 (W.D. Pa. 1998) (citations omitted). This element is conclusively satisfied because all of the members of the Committees have direct claims against the assets in question, and many of them also have guaranty claims against Debtor WMI under the Dime Rabbi Trusts.

24. The third element of the test for an application to intervene as of right is whether the applicant's interest in the underlying litigation may be affected or impaired, as a practical matter, by the disposition of the action. The courts of this Circuit traditionally have emphasized that the standard for proving possible impairment of the applicant's legally cognizable interest is extremely low. See, e.g., Mountain Top, 72 F.3d at 368 (noting that proposed intervenors need show only "that their interest *might* become affected or impaired, as a practical matter") (emphasis in original); Steinberg v. Shearson Hayden Stone, Inc., 598 F. Supp. 273, 279 (D. Del. 1984) (observing that "any practical impairment of the intervenor's ability to protect his interest may given him a right to intervene. Even the adverse impact of stare decisis may be enough.") (citations omitted).

25. The Committees and their constituents, as beneficiaries of the Dime Rabbi Trusts, have a "sufficient interest" in the Adversary Proceeding in that: (i) JPMorgan Chase "has been prepared to assume the obligations [of the Dime Rabbi Trusts] that it purchased under the P & A but the Debtors have refused to provide joint instructions to the trustees [which would allow JPMorgan Chase to assume such obligations]" (Complaint at ¶ 133); and (ii) Count Ten of the Complaint seeks a declaration that the Dime Rabbi Trusts are owned by JPMorgan Chase and not the Debtors thereby permitting JPMorgan Chase to assume such obligations as per its stated intent.

26. In addition, given their actions to date, it is reasonable to anticipate that the Debtors will seek a contrary declaration from the Court (i.e., a declaration that the Debtors and not JPMorgan Chase are the proper owners of the Dime Rabbi Trusts). If the Debtors are successful in asserting this anticipated position in the Adversary Proceeding, there is a threat that the interest of the Committees' constituents' in the Dime

Rabbi Trusts will be affected or impaired.  In addition, the Debtors' actions in utilizing the automatic stay to prevent benefit payments from being made are impairing the Committees' constituents from receiving retirement and pension plan benefits.

### 3. The Committees' Interests in the Adversary Proceeding Are Not Currently Represented in Adequate Fashion by Any Existing Party to the Litigation

27. The fourth element in the test for an application to intervene as of right is whether the applicant's interest in the Adversary Proceeding is adequately represented by an existing party in the litigation. Like the third element of the intervention as of right analysis, the burden placed by this element on an applicant has been described as "minimal." See, e.g., Steinberg, 598 F. Supp. at 281 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). The primary factor in determining adequacy of representation is how the interest of the applicant compares with the interest of the present parties.

> If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties . . ., then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation to the absentee.

Mountain Top, 72 F.3d at 368-369 (citing 7A Federal Practice and Procedure § 1909).

28. The interests which the Committees represent in the Adversary Proceeding are not adequately represented by any of the currently named parties. The Trustee for the Dime Rabbi Trusts has determined not to intervene. Obviously, the Committees' interests are adverse to the Debtors. With respect to JPMorgan Chase, notwithstanding its stated intent of assuming the obligations of the Dime Rabbi Trusts, JPMorgan Chase has not formally committed to so. Moreover, since the Complaint contains 19 causes of

action against the Debtors which have nothing to do with the Dime Rabbi Trusts, JPMorgan Chase, has other unrelated interests to pursue. In this regard, if the Committees are granted the right to intervene, they intend to move for summary judgment on Count Ten and Eleven as quickly as practicable. This summary judgment motion will be based on incontrovertible evidence that the Dime Rabbi Trusts were owned by WMB and therefore purchased by JPMorgan Chase and not the Debtors. Given the wide scope of the claims asserted by JPMorgan Chase against the Debtors, it is unrealistic to think that JPMorgan Chase would, on an expedited basis, move for summary judgment on only one or two of its twenty one causes of action. And, based on the impact of the automatic stay on the Dime Rabbi Trusts, the Committees' constituents cannot wait for JPMorgan Chase to move for summary judgment on all of its claims (some of which may require discovery).

29. Because the Committees have satisfied each of the four elements of the Rule 24(a)(2) test, the Committees respectfully request that this Court grant their motion to intervene.

## CONCLUSION

For the foregoing reasons, the Trust Committee and the Ad Hoc Committee respectfully request that this Court enter an Order (i) authorizing the Trust Committee and the Ad Hoc Committee to intervene as plaintiffs in the Adversary Proceeding with respect to Counts Ten and Eleven of the Complaint and (ii) granting such further relief to the Trust Committee and the Ad Hoc Committee as is appropriate.

Dated: May 19, 2009　　　　　　　By: /s/ Kurt F. Gwynne
　　　　　Wilmington, Delaware　　　　　　Kurt F. Gwynne (No. 3951)
　　　　　　　　　　　　　　　　　　　　REED SMITH LLP
　　　　　　　　　　　　　　　　　　　　1201 Market Street, Suite 1500
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 778-7500
　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 778-7575
　　　　　　　　　　　　　　　　　　　　E-mail: kgwynne@reedsmith.com

　　　　　　　　　　　　　　　　　　　　J. Andrew Rahl
　　　　　　　　　　　　　　　　　　　　James M. Andriola
　　　　　　　　　　　　　　　　　　　　REED SMITH LLP
　　　　　　　　　　　　　　　　　　　　599 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 521-5400
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 521-5450

　　　　　　　　　　　　　　　　　　　　Counsel to the Trust Committee and
　　　　　　　　　　　　　　　　　　　　the Ad Hoc Committee