# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | : Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : Case No. 08-12229 (MFW) |
| Debtors. | : Jointly Administered |

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | : |
| Plaintiff, | : Adv. Proc. No. 09-50551 (MFW) |
| v. | : |
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP., | : |
| Defendants, | : |
| - and - | : |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : |
| Additional Defendant. | : |

(Caption continued on next page)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, TO STAY ADVERSARY PROCEEDINGS**

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

|                                    | :                                |
| ---------------------------------- | -------------------------------- |
| WASHINGTON MUTUAL, INC. and        | :                                |
| WMI INVESTMENT CORP.,              | : Adv. Pro. No. 09-50934 (MFW)   |
|                                    | :                                |
| Plaintiffs,                        | :                                |
|                                    | :                                |
| v.                                 | :                                |
|                                    | :                                |
| JPMORGAN CHASE BANK, N.A.,         | :                                |
|                                    | :                                |
| Defendant.                         | :                                |
|                                    | :                                |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, TO STAY ADVERSARY PROCEEDINGS

Robert S. Brady
M. Blake Cleary
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 335-4500
Facsimile:   (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as
Receiver for Washington Mutual Bank

## Table of Contents

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| BACKGROUND | 3 |
|    A.   WMI'S Receivership Claim and the District Court Action | 3 |
|    B.   The Adversary Proceedings | 5 |
| ARGUMENT – THE ADVERSARY PROCEEDINGS SHOULD BE STAYED IN FAVOR OF LITIGATION IN THE FIRST-FILED DISTRICT COURT ACTION | 6 |
| I.   The Adversary Proceedings Are Subject to the FIRREA Jurisdictional Bar | 7 |
| II.   The "First-to-File" Doctrine Further Supports a Stay of the Two Adversary Proceedings | 12 |
| CONCLUSION | 15 |

# Table of Authorities

Page

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*
  946 F.2d 622 (9th Cir. 1991) ..................................................................................................14

*Amsave Credit Corp. v. R.T.C. (In re American Mortgage & Inv. Servs.)*,
  141 Bankr. 578 (Bankr. D.N.J. 1992) ........................................................................................8

*Crosley Corp. v. Hazeltine Corp.*
  122 F.2d 925 (3d Cir. 1941) ....................................................................................................13

*E.E.O.C. v. University of Pennsylvania*
  850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ........................................................13

*Freedom Mortgage Corp. v. Irwin Fin. Corp.*
  C.A. No. 08-146-GMS, 2009 WL 763899 (D. Del. Mar. 23, 2009) ........................................13

*Hindes v. F.D.I.C.*
  C.A. No. 94-2355, 1995 WL 534248 (E.D. Pa. Sept. 6, 1995),
  *aff'd*, 137 F.3d 148 (3d Cir. 1998) ............................................................................................8

*Home Capital Collateral v. F.D.I.C.*
  96 F.3d 760 (5th Cir. 1996) .....................................................................................................11

*Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*
  544 F. Supp. 2d 949 (N.D. Cal. 2008) .....................................................................................13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*
  189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952) ..........................................................13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*
  342 U.S. 180 (1952) .................................................................................................................13

*Manuel v. Convergys Corp.*
  430 F.3d 1132 (11th Cir. 2005) ...............................................................................................13

*National Union Fire Ins. Co. v. City Sav., F.S.B.*
  28 F.3d 376 (3d Cir. 1994) ........................................................................................................7

*NCNB Texas Nat'l Bank v. Cowden*
  895 F.2d 1488 (5th Cir. 1990) ...................................................................................................8

*Praxis Properties v. Colonial Savings Bank*
  947 F.2d 49 (3d Cir. 1991) ........................................................................................................7

|  | Page |
|---|---|
| *Rosa v. R.T.C.*<br>938 F.2d 383 (3d Cir. 1991) | 7 |
| *Smith v. McIver*<br>22 U.S. 532 (1824) | 2, 12 |
| *Time Warner Cable, Inc. v. GPNE Corp.*<br>497 F. Supp. 2d 584 (D. Del. 2007) | 13 |
| *Village of Oakwood v. State Bank & Tr. Co.*<br>539 F.3d 373 (6th Cir. 2008) | 10, 11 |
| *Washington Bancorp v. F.D.I.C. (In re Washington Bancorporation)*<br>C.A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996) | 8, 11 |

**Statutes**

| | |
|---|---|
| 12 U.S.C. § 1821(d)(5) | 7 |
| 12 U.S.C. § 1821(d)(6)(A) | 3, 7, 8, 9, 11, 12 |
| 12 U.S.C. § 1821(d)(13)(D) | *passim* |
| Financial Institutions Reform, Recovery and Enforcement Act of 1989,<br>Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA") | *passim* |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, TO STAY ADVERSARY PROCEEDINGS

Defendant and intervenor-defendant the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this memorandum of law (the "Memorandum") in support of its corresponding motions for an immediate stay of all proceedings in these two adversary proceedings until judgment has been entered in an earlier filed federal action involving the same or substantially similar issues.[1]

## INTRODUCTION

On September 25, 2008, the FDIC-Receiver was appointed to serve as the receiver for Washington Mutual Bank ("WMB"). The FDIC-Receiver then sold substantially all of the assets of WMB to JPMorgan Chase Bank, N.A. ("JPMC") pursuant to a Purchase and Assumption Agreement, Whole Bank (the "P&A Agreement"). These chapter 11 cases were filed the next day by WMB's holding company, Washington Mutual, Inc. ("WMI") and its subsidiary WMI Investment Corp. (together, the "Debtors").

Disputes concerning the ownership of assets and assumption of liabilities between the Debtors and JPMC have been a centerpiece of these chapter 11 cases since their filing. The two adversary proceedings that are the subject of this motion to stay – one in which JPMC has sued the Debtors with respect to various matters and a second in which the Debtors have sued JPMC for turnover of alleged demand deposit balances – reflect the parties' latest attempts to seek a determination of the respective rights to certain disputed assets. Both of those adversary proceedings, however, were commenced only after the Debtors had sued the FDIC-Receiver (as

---

[1] The FDIC-Receiver was named as an additional defendant in the adversary proceeding styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW). Concurrently with this motion, the FDIC-Receiver has filed a motion to intervene in the adversary proceeding styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW), for the purpose of bringing this motion for a stay of proceedings.

well as the FDIC in its corporate capacity) in the U.S. District Court for the District of Columbia concerning the same or substantially similar issues. *See Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-CV-0544 (RMC) (D.D.C.).[2]

Proceedings in both of the adversary proceedings should be stayed until the conclusion of litigation in the Debtors' earlier filed district court action. Federal banking law expressly bars "any claim or action . . . seeking a determination of rights with respect to the assets of any" failed depository institution or "any claim relating to any act or omission of" either a failed institution or the FDIC as its receiver. *See* 12 U.S.C. §§ 1821(d)(13)(D)(i), (ii). Both of the adversary proceedings at issue violate this jurisdictional bar. While dismissal in their entirety of the two adversary proceedings would be justified under the statute, an interim stay of the actions until litigation has been concluded in the district court action will allow the issues to be litigated in a single forum while preserving the Debtors' and JPMC's ability to return to this Court thereafter to litigate any issues that do not run afoul of title 12 restrictions, to the extent the district court finds any such issues to exist.

Second, and in addition, even if the jurisdictional bar did not apply the adversary proceedings would be subject to a stay in favor of proceeding to judgment in the district court action under the judicially created first-filed action rule. As courts have recognized since at least the time of Chief Justice John Marshall, "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 536 (1824). Here, the Debtors filed the first of these three related actions in federal district court in the

---

[2] The complaint in the district court action (the "District Court Complaint") is attached as Exhibit 1 to the FDIC-Receiver's motion. The complaint in the adversary proceeding styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.* (the "JPMC Complaint") is attached as Exhibit 2 to that motion. The complaint in the adversary proceeding styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.* (the "Turnover Complaint") is attached as Exhibit 3 to that motion.

District of Columbia, as they were required to do under federal law. *See* 12 U.S.C. § 1821(d)(6)(A). The complaint in that action expressly asserts claims against the FDIC-Receiver for the disputed accounts that are the subject of the Debtors' turnover action as well as substantially all of the other issues that are raised in JPMC's adversary complaint. Because all or substantially all of the factual issues raised in the two adversary proceedings were first raised in the district court complaint, the later filed adversary proceedings should be stayed in favor of proceedings in that forum.

## BACKGROUND

### A. WMI's Receivership Claim and the District Court Action

On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC-Receiver to serve as its receiver. Immediately after its appointment, the FDIC-Receiver entered into the P&A Agreement with JPMC, under which JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of its deposit liabilities.

The FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership. On that date, WMI and certain of its subsidiaries filed a proof of claim with the FDIC-Receiver. *See* District Court Compl., ¶ 10; *see generally* WMI Receivership Proof of Claim dated December 30, 2008.[3] Among other things, WMI asserted in its receivership proof of claim:

> In the event that Claimants' rights to the [accounts] are in any way compromised or modified, WMI asserts a claim against WMB for any lost value or other consequential damages. Without prejudice to WMI's position that it is a depositor of JPMorgan Chase, Claimants hereby assert a protective claim for the outstanding balance on each of the [accounts] in the event FDIC exercises any rights it may have under the [P&A Agreement], or otherwise, with respect to the [accounts].

---

[3] A copy of WMI's receivership proof of claim (the "WMI Receivership Proof of Claim") is attached as Exhibit 4 to the FDIC-Receiver's corresponding motion to stay.

> In addition, by reason of the Receivership and the subsequent sale of substantially all of WMB's assets to JPMorgan Chase, Claimants were denied access to, control, and use of the WMB Deposit Accounts and the FSB Deposit Account by JPMorgan Chase and were unable to, among other things, invest the funds in [those accounts], move the funds to another institution, or transfer the funds to interest-bearing accounts. Accordingly, Claimants hereby assert a claim against WMB for damages, including interest, for the lost use of the funds in the WMB Deposit Accounts and the FSB Deposit Account from September 25, 2008, until such time as Claimants were able to transfer, or will in the future be able to transfer, such funds to interest bearing accounts at other institutions.

WMI Receivership Proof of Claim, ¶¶ 45-46; *see* District Court Compl., ¶¶ 49-50. WMI asserted claims:

- For income taxes paid to, or income tax refunds to be paid from federal, state or local taxing authorities, including estimated tax refunds of approximately $3 billion, District Court Compl., ¶¶ 20-24;

- For recovery of capital contributions allegedly made by WMI to WMB, *id.*, ¶¶ 25-28;

- For the allegedly wrongful transfer of approximately $4 billion in trust preferred securities from WMI to WMB, *id.*, ¶¶ 29-35;

- For alleged preferential transfers to WMB during the year preceding the receivership, *id.*, ¶¶ 36-40;

- Relating to certain vendor contracts including contracts as to which JPMC has made payments since the commencement of the WMB receivership, *id.*, ¶ 41;

- For allegedly "Improper Asset Sales" by the FDIC-Receiver, *id.*, ¶¶ 45-46; and

- Relating to employee benefit plans, trusts and insurance policies, *id.*, ¶¶ 52-57.

By letter dated January 23, 2009, the FDIC-Receiver timely disallowed all of these receivership claims for a variety of reasons. *Id.*, ¶ 63.

On March 20, 2009, WMI and its subsidiary WMI Investment Corp. filed their complaint against the FDIC-Receiver (and against the FDIC in its corporate capacity) in the U.S. District Court for the District of Columbia. On March 30, 2009, JPMC filed a motion to intervene in the

district court action, which the Debtors opposed. In response to the motion, the FDIC-Receiver informed the district court that it believed that JPMC's intervention in that action was appropriate to allow JPMC to protect its own interests raised in that action directly. The motion to intervene has been fully briefed but has not yet been decided.

B. **The Adversary Proceedings**

On March 24, 2009, JPMC commenced its adversary proceeding in this Court against the Debtors, the FDIC-Receiver and the FDIC in its corporate capacity. In its complaint, JPMC seeks declaratory relief and asserts other claims with respect to many of the same assets and liabilities that are the subject of the Debtors' claims against the FDIC-Receiver in its district court complaint. In its adversary complaint, JPMC:

- Seeks a declaratory judgment that (i) to the extent the Debtors assert an interest in the trust preferred securities that are the subject of WMI's district court claims, they must do so through their district court action against the FDIC, or (ii) in the alternative, that JPMC purchased the trust preferred securities under the P&A Agreement, JPMC Compl., ¶ 183;

- Seeks a declaratory judgment that (i) to the extent the Debtors assert an entitlement to certain tax attributes or refunds, they must do so through their district court action against the FDIC, or (ii) in the alternative, that JPMC purchased those tax attributes pursuant to the P&A Agreement, *id.*, ¶ 195;

- Seeks a declaratory judgment that (i) to the extent the Debtors assert an entitlement to the funds in the deposit accounts, they must do so through their district court action against the FDIC, or (ii) in the alternative that "there is no valid deposit liability due to Debtors" with respect to the majority of those funds, *id.*, ¶ 204;

- Seeks a declaratory judgment that JPMC owns the beneficial interest in certain goodwill litigation as a result of the P&A Agreement, *id.*, ¶ 216;

- Seeks declaratory judgments as to JPMC's ownership of various other assets;

- Asserts claims against WMI for breach of contract and/or unjust enrichment with respect to the trust preferred securities, the tax refunds, shares of Visa Inc., intangible assets and certain employee benefit plans, trusts or insurance policies, *id.*, ¶¶ 184-87, 188-90, 196-200, 221-223, 230-33, 238-40, 244-47, 252-54.

On May 29, 2009, the Debtors filed their answer and counterclaims in the JPMC adversary proceeding. In the answer and counterclaims, the Debtors assert a number of claims against JPMC that overlap in many respects with the claims asserted by the Debtor against the FDIC-Receiver in their district court action. Among other things, the Debtors assert counterclaims: (1) seeking recovery of capital contributions by WMI to WMB, *see* WMI Answer and Counterclaims, ¶¶ 93-103; *compare* District Court Compl., ¶¶ 25-28; (2) seeking to avoid the transfer of ownership of certain trust securities from WMI to WMB, *see* WMI Answer and Counterclaims, ¶¶ 104-38; *compare* District Court Compl., ¶¶ 29-35; and (3) seeking to recover allegedly preferential transfers to WMB by WMI, *see* WMI Answer and Counterclaims, ¶¶ 139-52; *compare* District Court Compl., ¶¶ 36-40. In their counterclaims, the Debtors also assert that the P&A Agreement itself was a fraudulent transfer. *See* WMI Answer and Counterclaims, ¶¶ 153-59.

On April 27, 2009, the Debtors commenced their own adversary proceeding against JPMC, seeking turnover of the alleged balances held in six demand deposit accounts that were already the subject of the Debtors' district court action against the FDIC-Receiver and JPMC's adversary proceeding against the Debtors. *See* Turnover Compl., ¶¶ 18, 20, 56-72. JPMC moved to dismiss the Turnover Complaint on May 18, 2009. The Debtors moved for summary judgment on May 19, 2009 and responded to JPMC's motion to dismiss on May 27, 2009. The FDIC-Receiver is not named as a defendant in the turnover proceeding but is filing a motion to intervene in that action concurrently with the filing of this motion to stay.

## ARGUMENT

### THE ADVERSARY PROCEEDINGS SHOULD BE STAYED IN FAVOR OF LITIGATION IN THE FIRST-FILED DISTRICT COURT ACTION

The two adversary proceedings pending before this Court should be stayed until the Debtors' district court action has been litigated to judgment. Both of the adversary proceedings

run afoul of the jurisdictional bar set forth in the FDIC-Receiver's governing statute. In addition, the Debtors' district court action in the District of Columbia is the first-filed of the three actions concerning the same subject matter.

## I. The Adversary Proceedings Are Subject to the FIRREA Jurisdictional Bar

Both of the adversary proceedings pending before this Court violate the jurisdictional bar provided under 12 U.S.C. § 1821(d)(13)(D). Section 1821(d)(13)(D) was added to the Federal Deposit Insurance Act as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("<u>FIRREA</u>"), by which Congress "created a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution." *Praxis Properties v. Colonial Savings Bank*, 947 F.2d 49, 62-63 (3d Cir. 1991). Under FIRREA, claims against a failed financial institution must be filed with the FDIC as receiver in accordance with the statute, *see* 12 U.S.C. § 1821(d)(5), and only thereafter may litigation be brought regarding the issues in limited circumstances and specified courts, *see* 12 U.S.C. § 1821(d)(6)(A).

"One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation." *National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). Thus, 12 U.S.C. § 1821(d)(13)(D)(i) provides that "no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of" any failed financial institution. Similarly, section 1821(d)(13)(D)(ii) bars "any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii).[4] *See Rosa v. R.T.C.*, 938 F.2d 383,

---

[4] 12 U.S.C. § 1821(d)(13)(D) provides:
(D)  Limitation on judicial review

396 (3d Cir. 1991) (primary purpose of exclusive claims procedures is to allow a receiver "to quickly and efficiently resolve claims against a failed institution without resorting to litigation") (citing H.R. Rep. No. 101-54(I) 2, 418-19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214-15).[5]

This jurisdictional bar "prohibits any court from asserting subject matter jurisdiction over any assets, disputed or not, in which the [FDIC], as conservator or receiver of a failed depository institution claims an ownership interest unless and until the claims procedure has been exhausted." *Amsave Credit Corp. v. R.T.C. (In re American Mort. & Inv. Servs.)*, 141 Bankr. 578, 587 (Bankr. D.N.J. 1992); see *National Union*, 28 F.3d at 383. For these purposes, an "asset of a failed depository institution" is anything the failed institution owned that the FDIC as receiver might liquidate for the receivership. *Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, C.A. No. 95-1340, 1996 WL 148533, at *4 (D.D.C. Mar. 19, 1996)); *see also NCNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1499 (5th Cir. 1990).

Only after the FDIC as receiver has disallowed a timely claim against the receivership may a claimant commence litigation relating to receivership assets, and even then the courts in which such an action may be brought are limited to the district courts for the District of Columbia or for the district in which the failed institution had its principal place of business (in this case, the Western District of Washington). *See* 12 U.S.C. § 1821(d)(6)(A).

---

> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>     (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>     (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

[5] The statutory framework also serves to protect the FDIC's deposit insurance fund and thereby "'minimize future taxpayer expense in resolving failed commercial banks.'" *Hindes v. F.D.I.C.*, C.A. No. 94-2355, 1995 WL 534248, at *3 (E.D. Pa. Sept. 6, 1995), *aff'd*, 137 F.3d 148 (3d Cir. 1998).

The Debtors understood this claims procedure. They filed a claim against the receivership that included among other matters a claim relating to the disputed deposit accounts at issue in their turnover action. *See* WMI Receivership Proof of Claim, ¶¶ 43-46. After that claim was disallowed, the Debtors commenced an action against the FDIC-Receiver in the U.S. District Court for the District of Columbia citing, *inter alia*, the venue and jurisdiction provisions of FIRREA. *See* District Court Compl., ¶¶ 6, 79 (citing 12 U.S.C. § 1821(d)(6)(A)).

In the two adversary proceedings at issue here, there can be little question that the parties' disputes seek "a determination of rights with respect to the assets of" WMB, a failed financial institution, and therefore fall squarely within the jurisdictional bar of section 1821(d)(13)(D)(i). Indeed, JPMC expressly states that it commenced its adversary proceeding to "ensure that [JPMC] and its subsidiaries are not divested of their assets and interests purchased . . . from the [FDIC-Receiver]" pursuant to the P&A Agreement. JPMC Compl., ¶ 1. In many instances, JPMC's complaint seeks declaratory relief from this Court that simply determines that the disputed claims to ownership should be decided by the district court presiding over the Debtors' action against the FDIC-Receiver. *See, e.g,* JPMC Compl., ¶ 183 (trust preferred securities), ¶ 195 (tax refunds and deductions), ¶ 204 (disputed deposit account balances), ¶ 237 (life insurance policies).

The Debtors' recently filed counterclaims not only challenge the entire P&A Agreement as a fraudulent transfer, but also assert a number of claims against JPMC that the Debtors already have asserted against the FDIC-Receiver in their district court action. *See supra* at 6. Similarly, in the turnover action, the Debtors seek immediate possession of the balances allegedly held in six of the disputed deposit accounts. See Turnover Compl., ¶¶ 56-67. JPMC has raised a number of issues regarding that claim, including whether the alleged deposit liabilities to WMI that it assumed pursuant to the P&A Agreement include tax refunds and other commingled funds

that are the property of WMB and whether a September 2008 transfer from WMB to WMBfsb was accompanied by actual assets or was instead a mere "book entry." *See* JPMC Compl., ¶¶ 113-18. Without question, in both proceedings the parties are seeking a "determination of rights with respect to assets" of WMB.

The Debtors' actions support this conclusion. As mentioned, their receivership proof of claim included a claim relating to the disputed deposit accounts that are the subject of this adversary proceeding. *See* WMI Receivership Proof of Claim, ¶¶ 43-46. The Debtors' district court complaint against the FDIC-Receiver also asserts a claim concerning those accounts. In both, the Debtors assert a "protective claim" for the outstanding balance of each of the accounts in the event that the FDIC-Receiver (or the FDIC in its corporate capacity) exercises any rights it may have with respect to the accounts under the P&A Agreement "or otherwise." District Court Compl., ¶ 49; WMI Receivership Proof of Claim, ¶ 45. The Debtors also assert a claim for interest on the alleged basis that they have been "denied access to, control, and use of" the accounts "by reason of the Receivership and the subsequent sale of substantially all of WMB's assets to JPMorgan Chase . . . ." District Court Compl., ¶ 50; WMI Receivership Proof of Claim, ¶ 46.

Even if the two adversary proceedings did not directly seek a determination of rights with respect to assets of WMB, as they plainly do, both would still be barred under section 1821(d)(13)(D)(ii), which deprives courts of jurisdiction over any "claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. 1821(d)(13)(D)(ii). The breadth of this provision was made clear in the recent Sixth Circuit decision in *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008). In *Village of Oakwood*, creditors of a failed bank sued the assuming bank under a purchase and assumption agreement for losses they allegedly sustained as a result of their bank's failure; the FDIC was not initially

named. Finding that the claims against the assuming bank were subject to FIRREA's exclusive claims process, the district court granted summary judgment, and the Sixth Circuit affirmed. In doing so, the appellate court considered and rejected the argument that claims against the assuming bank were not "claims against a depository institution for which the [FDIC was] receiver," concluding that "[t]he problem with this novel argument is that all of their claims against State Bank are directly related to acts or omissions of the FDIC as receiver of Oakwood." *Id.* at 386. Therefore, to "permit[] claimants to avoid [the] provisions of [12 U.S.C. § 1821](d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood*, 539 F.3d at 386.

In both adversary proceedings here, the acts or omissions of the FDIC-Receiver are placed at issue. Each of JPMC's claims in its adversary proceeding against the Debtors arises from, and indeed is dependent upon, the P&A Agreement it entered into with the FDIC-Receiver on September 25, 2008. Similarly, the Debtors' complaint for turnover of balances held in the disputed deposit accounts includes numerous assertions regarding the meaning and effect of provisions of the P&A Agreement on the Debtors' entitlement to the alleged deposit balances at issue. *See* Turnover Compl., ¶¶ 2, 3, 4, 5, 6, 8, 33-37, 49, 52. These allegations make clear that the Debtors' turnover claim "relat[es] to [an] act or omission" of the FDIC-Receiver, namely, the sale to JPMC pursuant to the P&A Agreement itself. *See Village of Oakwood*, 539 F.3d at 386; *Home Capital Collateral v. F.D.I.C.*, 96 F.3d 760, 763 (5th Cir. 1996) (action against R.T.C. for alleged breach of post-receivership contract was barred by section 1821(d)(13)(D)(ii)); *Washington Bancorp.*, 1996 WL 148533, at *5 (declaratory judgment action brought by counterparty to settlement agreement with FDIC as receiver that had been approved by the Bankruptcy Court was barred under § 1821(d)(13)(D)(ii)).

Further, the Debtors' demand for turnover of the disputed balances directly implicates the FDIC-Receiver's rights under section 9.5 of the P&A Agreement, which permits the FDIC-Receiver, in its discretion, to direct JPMC to withhold any deposit balance. *See* District Court Compl., ¶ 49; *see also* JPMC Compl., ¶¶ 122-23 (discussing section 9.5). Although the FDIC-Receiver has not, to date, exercised this authority with respect to the disputed account balances, the potential for it to do so is an apparent subtext to the parties' litigation positions with respect to that issue.

There should be no serious dispute among the parties that the matters raised in the two adversary proceedings before this Court are subject to FIRREA's jurisdictional bar. The Debtors implicitly acknowledged this when they included all of the current factual disputes in their district court complaint against the FDIC-Receiver, citing FIRREA as a basis for one of their claims. *See* District Court Compl., ¶ 79 (citing 12 U.S.C. § 1821(d)(6)(A)). JPMC, in turn, expressly asks this Court to determine that the Debtors' district court action is the proper forum for the litigation of these disputes. Because the jurisdictional bar clearly applies, both of the adversary proceedings that are pending before this Court should be stayed until litigation of the issues has been concluded in the Debtors' district court action in the District of Columbia.

## II. The "First-to-File" Doctrine Further Supports a Stay of the Two Adversary Proceedings

The FDIC-Receiver respectfully submits that the FIRREA jurisdictional bar is dispositive and standing alone requires a stay of both adversary proceedings. However, a stay of those actions to permit litigation of the parties' disputes to judgment in the district court also is supported by the longstanding first-to-file doctrine. That principle holds that "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 536 (1824) (Marshall, C.J.); *see, e.g., Freedom Mortgage Corp. v. Irwin Fin. Corp.*, C.A. No. 08-146-GMS, 2009 WL 763899, at *5 (D. Del. Mar. 23, 2009) (transferring

action to another district in the interests of justice and under first-filed rule); *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 591 (D. Del. 2007) (dismissing second action under rule).

The first-to-file rule is based on principles of comity, judicial efficiency and a policy to avoid inconsistent judgments. *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941); *see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) (application of rule governed by "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation"). The rule "reduces the possibility of dispositive differences between the jurisdictions and ensures that litigants receive a single determination of their controversy, rather than decisions which may conflict and require separate appeals." *Time Warner Cable*, 497 F. Supp. 2d at 588.

Application of the first-filed rule "hinge[s] on whether the issues in the two cases [concern] the same set of facts . . ." *Id.*, 497 F. Supp. 2d at 589. The rule does not require that the proceedings involve the exact same parties or individual claims or issues. *EEOC*, 850 F.2d at 971; *Time Warner Cable*, 497 F. Supp. 2d at 589; *Freedom Mortgage Corp.*, 2009 WL 763899, at *4. The rule is satisfied if "some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952)).[6]

---

[6] Because the first-filed rule "will usually be the norm, not the exception . . . courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *E.E.O.C.*, 850 F.2d at 979; *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("[T]here is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). "[D]eparture from the [first-filed] rule is

Courts are guided by three factors in applying the rule: (1) the chronology of the competing actions, (2) the similarity of the parties, and (3) the similarity of the issues in the actions. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Each of these factors favors a stay of both adversary proceedings here, for the reasons already discussed. It is undisputed that the Debtors' district court action was filed first among the three related cases, that (subject to JPMC's pending intervention motion) the three actions involve the same or substantially similar parties, and that the factual issues presented in the three issues overlap substantially if not completely.

Ultimately, the three actions concern a common issue: what assets were transferred to, and what liabilities were assumed by, JPMC under the P&A Agreement with the FDIC-Receiver? A determination with respect to that issue in one action could significantly impact the litigation of the other actions, mandating that the later filed (and, in any event, statutorily barred) adversary proceedings be stayed.

---

recognized only where there is bad faith or forum shopping, and where the second-filed action has developed further than the initial suit." *Freedom Mortgage Corp.*, 2009 WL 763899, at *4. These considerations are not present here.

# CONCLUSION

For all of the foregoing reasons, the FDIC-Receiver respectfully requests that the Court stay all proceedings in *JPMorgan Chase, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW) and *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW), until judgment has been entered by the district court in *Washington Mutual, Inc. v. F.D.I.C.*, No. 09-0533 (RMC) (D.D.C.), and that the Court grant the FDIC-Receiver such other relief as it may deem just and proper.

Date: Wilmington, Delaware
June 1, 2009

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and -

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the FDIC-Receiver