**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| JPMORGAN CHASE BANK, N.A., | : | |
| Plaintiff, | : | Adv. Proc. No. 09-50551 (MFW) |
| v. | : | |
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP., | : | |
| Defendants, | : | |
| - and - | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | |
| Additional Defendant. | : | |

(Caption continued on next page)

**REPLY MEMORANDUM OF THE FDIC-RECEIVER IN SUPPORT OF ITS <u>MOTION TO STAY ADVERSARY PROCEEDINGS</u>**

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

| | | |
|---|---|---|
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP., | : | Adv. Pro. No. 09-50934 (MFW) |
| Plaintiffs, | : | |
| v. | : | |
| JPMORGAN CHASE BANK, N.A., | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF THE FDIC-RECEIVER IN SUPPORT OF ITS MOTION TO STAY ADVERSARY PROCEEDINGS**

Robert S. Brady
M. Blake Cleary
Jaime N. Luton
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the
Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank

## Table of Contents

Page

Table of Authorities ..... ii

INTRODUCTION ..... 1

ARGUMENT -- THE ADVERSARY PROCEEDINGS SHOULD BE STAYED PENDING ENTRY OF JUDGMENT IN THE DISTRICT COURT ..... 4

I. The District Court Is the Only Court That Can Oversee Coordinated Litigation of the Parties' Disputes ..... 4

II. FIRREA's Jurisdictional Bar Applies and Requires, at Least, an Interim Stay of the Adversary Proceedings ..... 7

III. The FDIC-Receiver Meets the Requirements for Intervention in the Turnover Action ..... 17

CONCLUSION ..... 18

## Table of Authorities

Page

Cases

*All Season's Kitchen, Inc. v. F.D.I.C.,*
*(In re All Season's Kitchen, Inc.)*, 145 B.R. 391 (Bankr. D. Vt. 1992) .................................16

*Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.),*
141 B.R. 578 (Bankr. D.N.J. 1992) .....................................................................................16

*APV N. Am., Inc. v. Sigmonazzi N. Am., Inc.,*
295 F. Supp. 2d 393 (D. Del. 2002).......................................................................................6

*Auction Co. of Amer. v. F.D.I.C.,*
141 F.3d 1198 (D.C. Cir. 1998)...........................................................................................11

*Blachy v. Butcher,*
221 F.3d 896 (6th Cir. 2000) ...............................................................................................17

*Capital Bancshares, Inc. v. F.D.I.C.,*
957 F.2d 203 (5th Cir. 1992) ...............................................................................................14

*Committee Disbursing Agent v. R.T.C. (In re Valley Forge Plaza Assocs.),*
159 B.R. 161 (Bankr. E.D. Pa. 1993) .....................................................................................16

*E.E.O.C. v. Univ. of Pa,.*
850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ...................................................5, 6

*Enron Corp. v. Dynegy Inc. (In re Enron Corp.),*
Case No. 01-16034 (AJG), 2002 WL 32153911 (Bankr. S.D.N.Y. Apr. 12, 2002).................2

*Filler v. Lernout,*
No. Civ. A. 01-191, 2002 WL 227079 (D. Del. Feb. 8, 2002) ...............................................6

*Freedom Mortgage Corp. v. Irwin Fin. Corp.,*
No. 08-146, 2009 WL 763899 (D. Del. Mar. 23, 2009) ...................................................... 5-6

*Freeman v. F.D.I.C.,*
56 F.3d 1394 (D.C. Cir. 1995)..........................................................................................9, 16

*Henrichs v. Valley View Dev.,*
474 F.3d 609 (9th Cir.), *cert. denied*, 128 S. Ct. 647 (2007)..........................................11, 12

*Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.,*
43 F.3d 843 (3d Cir. 1994)..................................................................................................11

*In re Continental Fin. Resources, Inc.,*
154 B.R. 385 (D. Mass. 1993) ..............................................................................................16

**Table of Authorities**

Page

*In re Gemini Bay Corp.*,
145 B.R. 350 (Bankr. M.D. Fla. 1992) ........ 16

*In re Purcell*,
150 B.R. 111 (Bankr. D. Vt. 1992) ........ 16

*In re Scott*,
157 B.R. 297 (Bankr. W.D. Tex. 1993),
*vacated*, 162 B.R. 1004 (Bankr. W.D. Tex. 1994) ........ 16

*Kerotest Mfg. v. C-O Two Fire Equip. Co.,*,
189 F.2d 31 (3d Cir. 1951), *aff'd*, 342 U.S. 180 (1952) ........ 6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. City Sav., F.S.B.*,
28 F.3d 376 (3d Cir. 1994) ........ *passim*

*New Rock Asset Partners, L.P. v. Preferred Equity Advancements, Inc.*,
101 F.3d 1492 (3d Cir. 1996) ........ 10

*Noletto v. Nationsbanc Mortgage (In re Noletto)*,
244 B.R. 845 (Bankr. S.D. Ala. 2000) ........ 17

*Parker N. Am. Corp. v. R.T.C. (In Re Parker N. Am. Corp.)*,
24 F.3d 1145 (9th Cir. 1994) ........ 16

*Rosa v. R.T.C.*,
938 F.2d 383 (3d Cir. 1991) ........ 8, 10

*Time Warner Cable, Inc. v. GPNE Corp.*,
497 F. Supp. 2d 584 (D. Del. 2007) ........ 6

*United States v. Whiting Pools, Inc.*,
462 U.S. 198 (1983) ........ 14

*Village of Oakwood v. State Bank & Tr. Co.*,
539 F.3d 373 (6th Cir. 2008) ........ 5, 9, 12

*W.J.P. Props. v. R.T.C. (In re W.J.P. Props.)*,
149 B.R. 604 (Bankr. C.D. Cal. 1992) ........ 17

*Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*,
C.A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar.19, 1996) ........ 16, 17

**Table of Authorities**

Page

Statutes and Rules

11 U.S.C. § 541(d) ....................14

12 U.S.C. § 1821(d) ....................3, 7

12 U.S.C. § 1821(d)(6)(A) ....................1, 5, 17

12 U.S.C. § 1821(d)(13)(D) .................... *passim*

12 U.S.C. § 1821(d)(17) ....................15

28 U.S.C. § 1334(b) ....................17

28 U.S.C. § 1334(e)(1) ....................17

Bankruptcy Rule 7087 ....................2

Other Authorities

Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64757, 64759 (Nov. 23, 1998) ....................14

**REPLY MEMORANDUM OF THE FDIC-RECEIVER IN SUPPORT OF ITS MOTIONS TO STAY ADVERSARY PROCEEDINGS AND TO INTERVENE**

The Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this reply memorandum in further support of its motion to stay these two adversary proceedings pending entry of judgment in the Debtors' first-filed district court action in the U.S. District Court for the District of Columbia, *Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.), and to intervene in the Debtors' turnover action, *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934, for the purpose of making the stay motion.

## INTRODUCTION

In their effort to maintain parallel litigation of identical disputes in two competing courts, the Debtors' opposition misconstrues the plain language of FIRREA's jurisdictional bar, fails to discuss governing Third Circuit authority applying that statute and reinvents the claims asserted in their district court complaint. The FDIC-Receiver's motion, if granted, will not "delay" or "stall" these bankruptcy cases, as the Debtors assert. To the contrary, those consequences will only result from the Debtors' procedural gambits, which plainly seek to divide their various claims into multiple proceedings in two different courts to the detriment of both the parties and the judicial system. At their core, the Debtors' arguments (and those of their creditor constituencies) fail to take into account a basic, central fact. Before the events that preceded its bankruptcy filing, WMI was not a manufacturer or the operator of a chain of retail stores. It was a thrift holding company in a highly regulated industry. As such, WMI and its creditors cannot now evade the provisions of applicable federal banking law.

There is only one court that can resolve all of the identified disputes among the Debtors, the FDIC-Receiver and JPMorgan Chase Bank, N.A. ("JPMC") concerning the ownership of

Washington Mutual Bank ("WMB") assets. That court is the U.S. District Court for the District of Columbia. There can be no argument – and the Debtors make none – that the Debtors' disallowed receivership claims against the FDIC-Receiver can be litigated anywhere else. *See* 12 U.S.C. § 1821(d)(6)(A); Debtors' Mem. at 6 n.3. Whether under the "first-filed" doctrine or otherwise, courts overwhelmingly recognize that simultaneous litigation of substantially identical issues of fact and law in two parallel proceedings does not serve the best interests of either the courts or litigants given the resulting burden and expense of unnecessarily duplicative proceedings and risk of inconsistent rulings on common questions of fact and law.[2]

The FDIC-Receiver's motion to stay these adversary proceedings would solve this fundamental problem and allow the three parties in interest to litigate the issues promptly and in one forum. The motion did not, as the Debtors assert, seek to "strip this Court" of its jurisdiction. To the contrary, the FDIC-Receiver has stated that it seeks only an interim stay which would "allow the issues to be litigated in a single forum while preserving the Debtors' and JPMC's ability to return to this Court thereafter to litigate any issues that do not run afoul of title 12 restrictions . . ." FDIC-Receiver Mem. at 2. Nor can there be any real dispute that the claims and issues in the three actions, if not identical, are at a minimum substantially the same, as a simple comparison of the pleadings filed by the Debtors and JPMC in the three actions demonstrates.

---

[2] If the Debtors are concerned that a stay would somehow limit the ability of JPMC to participate fully in the litigation of those issues in district court, then the Court has the power to transfer these adversary proceedings to the U.S. District Court for the District of Columbia "in the interest of justice" pursuant to Bankruptcy Rule 7087 for consolidation or coordination with the Debtors' pending action against the FDIC-Receiver in that court. *See, e.g., Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, Case No. 01-16034 (AJG), 2002 WL 32153911, at*7 (Bankr. S.D.N.Y. Apr. 12, 2002) (transferring adversary proceeding to district court to coordinate discovery with pending securities litigation).

To the extent that either JPMC or the Debtors "seek[s] a determination of rights with respect to, the assets" of WMB in either of these adversary proceedings – as they both certainly do – the plain language of FIRREA expressly deprives any court, including the Bankruptcy Court, of jurisdiction. *See* 12 U.S.C. § 1821(d)(13)(D)(i). The Debtors' repeated argument that the bar does not apply because the adversary proceedings "do[] not involve a claim against the FDIC or the receivership," Debtors' Mem. at 3, 9-16, not only ignores this plain statutory text but is an argument that has been considered and expressly rejected by the Third Circuit. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. City Sav., F.S.B.*, 28 F.3d 376, 386 (3d Cir. 1994) ("we reject the suggestion that the broad bar to jurisdiction indicated by the plain language of § 1821(d)(13)(D) should be strained and limited by referring to the administrative claims procedure of § 1821(d)(3), (d)(5) and (d)(6)").

The Debtors essentially admit that the JPMC Adversary Proceeding seeks "a determination of rights with respect to, the assets" of WMB, *see* Debtors' Mem. at 3 ("the JPMC Adversary Proceeding calls on this Court to exercise its jurisdiction to determine the ownership of assets as between the Debtors and JPMC"), and therefore violates the jurisdictional bar. With respect to their turnover proceeding, the Debtors' argument reduces to the *ipse dixit* assertion that the disputed deposit accounts are in their name. However, the Debtors have never attempted to show, as is their burden, that the *funds* in those accounts are *only* theirs and are not commingled with tax payments and other funds that are rightfully the property of WMB (and therefore, are assets of the receivership), and even their summary judgment motion raises significant questions about that central issue. Similarly, the Debtors' demand for immediate possession of the funds for distribution to their creditors obviously seeks to deny the FDIC-

Receiver its set-off rights against those funds with respect to the host of other disputes between it and WMI.

The motion to stay should be granted so that the parties can litigate the issues in the District for the District of Columbia, where the Debtors filed the first complaint relating to these disputes and where Congress directed such actions to be filed.

## ARGUMENT

## THE ADVERSARY PROCEEDINGS SHOULD BE STAYED PENDING ENTRY OF JUDGMENT IN THE DISTRICT COURT

### I. The District Court Is the Only Court That Can Oversee Coordinated Litigation of the Parties' Disputes

The federal district court for the District of Columbia is the only court that can hear all of the disputes among the Debtors, JPMC and the FDIC-Receiver. The pleadings themselves establish that the claims in their district court action are identical, or, at a minimum, substantially the same as the claims asserted between the Debtors and JPMC in the two adversary proceedings here. The risk of duplication of effort – by the parties and the courts – and the possibility of inconsistent rulings on common questions of fact and law are both apparent.

The FDIC-Receiver's motion for an interim stay of these adversary proceedings until matters have been litigated to conclusion before the district court in the *Debtors' own action* offers a solution that is workable and reconciles this Court's responsibility to oversee the Debtors' bankruptcy cases with the clear statutory language of title 12. The Debtors offer no alternative solution to this unsatisfactory set of circumstances, none of which are of the FDIC-Receiver's making.

The approach favored by the Debtors appears to be for the parties to proceed with parallel and simultaneous litigation of identical disputes before this Court and the district court. Even more nonsensically, the Debtors would keep JPMC from participating in the district court

proceedings, *see* Debtors' Mem. at 6, 21 n.10, and would keep the FDIC-Receiver from participating in the proceedings before this Court, thereby multiplying the possibility for conflicting rulings and the inevitable appeals. It is difficult to see how the Debtors' preferred approach would result in a swift resolution of these disputes or otherwise would serve the best interests of their creditors or other constituents.

None of the many cases cited in the Debtors' opposition involved a scenario in which a debtor-in-possession, having filed a claim against the FDIC as receiver and had that claim disallowed, first commenced litigation against the FDIC in district court pursuant to 12 U.S.C. § 1821(d)(6)(A), and thereafter sought to litigate the exact same issues against the assuming bank under a purchase and assumption agreement. Unsurprisingly, title 12 does not accommodate such a procedural morass. *See, e.g., Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008) ("accepting the Uninsured Depositors argument and 'permit[ting] claimants to avoid [the] provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid'"). The Debtors' arguments to the contrary, addressed below, misread that statute.

Like FIRREA, the judicially created first-filed doctrine does not tolerate procedural gamesmanship of the type engaged in by the Debtors. As the Third Circuit has explained, the doctrine is "equitable," and "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). The court of appeals has counseled against a "mechanical" application of the rule, *id.* at 976 (citations omitted), and contrary to the Debtors' argument, "[c]omplete identity of the parties and issues . . . is not required for the 'first-filed' rule to apply." *Freedom Mortgage Corp. v. Irwin Fin. Corp.*,

No. 08-146, 2009 WL 763899, at *4 (D. Del. Mar. 23, 2009); *see Kerotest Mfg. v. C-O Two Fire Equip. Co.*, 189 F.2d 31, 34 (3d Cir. 1951) (first-filed rule applies even where subsequent actions involve different parties), *aff'd*, 342 U.S. 180 (1952); *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007) (noting that Third Circuit applies rule to cases involving the same issues where parties are not identical).[3]

Both the district court complaint and the complaints and counter-complaints filed by JPMC and the Debtors in this Court assert at least six categories of overlapping claims, for: (1) tax refunds; (2) trust preferred securities issued by a WMB subsidiary; (3) intercompany payables or receivables; (4) balances in certain alleged demand deposit accounts; (5) employee benefit-related assets and liabilities; and (6) capital contributions. The Debtors' argument that their district court complaint "does not seek to recover estate assets" but only seeks "damages" from the FDIC-Receiver, *see* Debtors' Mem. at 4, cannot be squared with what they have asserted in the complaint itself. The Debtors' claims against the FDIC-Receiver on their face seek to obtain possession of various specific assets from the receivership. *See, e.g.*, District Court Compl., ¶ 22 (asserting entitlement to future tax refunds), ¶ 28 (seeking recovery of capital contributions to WMB as allegedly fraudulent transfers), ¶ 35 (asserting that WMI "is the owner of the Trust Preferred Securities"), ¶ 39 (seeking recovery of transfers as allegedly voidable

[3] The Debtors also assert that the first-filed rule required the FDIC-Receiver to seek an injunction from the district court rather than asking this Court to enter an interim stay of proceedings itself. *See* Debtors' Mem. at 27. However, courts in the Third Circuit (and elsewhere) regularly consider motions to stay, transfer or dismiss under the doctrine that are filed in the later-filed action. *See, e.g.*, *Freedom Mortgage*, 2009 WL 763899, at *1 (transferring second-filed action); *Filler v. Lernout*, 2002 WL 227079, at *2 (D. Del. Feb. 8, 2002) ("Since the shareholder actions in Massachusetts were filed first, transfer of these subsequently filed Delaware actions will promote judicial administration and consistency of results."); *APV N. Am., Inc. v. Sigmonazzi N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002) (considering motion to transfer in second-filed action).

preferences), ¶ 45 (seeking "recovery of . . . property" allegedly converted by FDIC-Receiver), ¶ 49 (asserting a "protective claim for the outstanding balance on each of the" deposit accounts).

Finally, there is no merit to the Debtors' suggestion that the adversary proceedings in this Court are at a more advanced stage than the district court action. In fact, the proceedings are in essentially identical procedural postures. The Debtors filed their answer and counterclaims in the JPMC adversary proceeding on May 29, 2009 and the FDIC-Receiver filed its answer and counterclaims in the district court action shortly thereafter, on June 11, 2009. No discovery has been conducted in either case to date, and it has been the Debtors, rather than the FDIC-Receiver, who have put off discussions about an appropriate schedule for discovery and a unified case management plan.

## II.  FIRREA's Jurisdictional Bar Applies and Requires, at Least, an Interim Stay of the Adversary Proceedings

All of the Debtors' arguments against the application of the FIRREA jurisdictional bar are predicated on a single false distinction. They assert that the jurisdictional bar is not implicated because the two adversary proceedings in this Court do not assert a "claim" against the FDIC-Receiver but instead seek "to determine ownership of assets as between Debtors and JPMC." Debtors' Mem. at 3. But an adversary proceeding debating whether a given asset was sold by the FDIC-Receiver to JPMC as part of the P&A Agreement is, unquestionably, an "action seeking the determination of rights with respect to, the assets of [a] depository institution for which the [FDIC] has been appointed receiver," and *no court* has jurisdiction over such an action "[e]xcept as otherwise provided in" section 1821(d). *See* 12 U.S.C. § 1821(d)(13)(D)(i). Moreover, to the extent such an adversary proceeding asserts that assets of a holding company should not have been sold as part of a P&A Agreement, that action "relat[es] to [an] act or omission of . . . the [FDIC] as receiver" and is also barred. 12 U.S.C. § 1821(d)(13)(D)(ii).

Given the many assertions in their opposition about Third Circuit precedent, it is surprising that the Debtors fail to discuss the Third Circuit's interpretation of the jurisdictional bar in *National Union Fire Ins. Co. of Pittsburgh, Pa v. City Sav., F.S.B.*, 28 F.3d 376 (3d Cir. 1994), since the court of appeals in that case had occasion to examine in depth, and reject, the precise argument advanced by the Debtors here. In *National Union,* insurance companies commenced a declaratory judgment action seeking rescission of insurance policies under which a failed bank was seeking coverage. The district court dismissed the action for lack of subject matter jurisdiction because of the jurisdictional bar. On appeal, like the Debtors in their opposition here, the insurance companies argued that their declaratory judgment action was not a "claim" against the receivership, that they could not exhaust administrative remedies with respect to that action and that their action therefore was not subject to the jurisdictional bar of section 1821(d)(13)(D). *See Nat'l Union*, 28 F.3d at 385-86 (citing the Third Circuit's earlier decision in *Rosa v. R.T.C.*, 938 F.2d 383 (3d Cir. 1991)).

In affirming the lower court's dismissal, the Third Circuit "reject[ed] the suggestion that the broad bar to jurisdiction indicated by the plain language of § 1821(d)(13)(D) should be *strained and limited* by referring to the administrative claims procedure of § 1821(d)(3), (d)(5) and (d)(6)." *Id.* at 386 (emphasis added). While the court acknowledged some interrelationship between the jurisdictional bar and the FIRREA claims procedures, "this does not mean that the class of actions addressed by the jurisdictional bar is necessarily identical to the class of actions addressed by the administrative claims procedure." *Id.* To the contrary, the court concluded, "FIRREA was in fact passed to give the receiver extraordinary powers." *Id.* at 388. Moreover, the court was "obliged to give effect, if possible, to every word Congress used," *id.* at 389, and the plain language of section 1821(d)(13)(D), "in addition to barring 'any claim . . . for

payment'" provides for "a bar against 'any action seeking a determination of rights with respect to [] the assets of any depository institution for which the Corporation has been appointed receiver,'" *id.* (quoting 12 U.S.C. § 1821(d)(13)(D)(i)).

Giving effect to this plain statutory language, the Third Circuit held "that it bars National Union and Gulf's declaratory judgment action, regardless of whether National Union and Gulf are characterized as creditors or debtors, and despite the fact that National Union and Gulf do not assert a right to payment." *Id.* Other courts have reached the same conclusion. *See, e.g., Freeman v. F.D.I.C.*, 56 F.3d 1394, 1402 (D.C. Cir. 1995) ("We therefore hold that the § 1821(d) jurisdictional bar is not limited to claims by 'creditors,' but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver.").

The Sixth Circuit's recent decision in *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008), reached the same conclusion applying the second prong of the jurisdictional bar, which deprives courts of jurisdiction over claims relating to any act or omission of the FDIC as receiver of a failed depository institution. In *Village of Oakwood*, uninsured depositors of a failed bank chose not to file claims with the FDIC as receiver for the value of their lost deposits, instead electing to seek recovery from the assuming bank that purchased the failed bank's assets. The appellate court affirmed dismissal of the action, rejecting the claimants' argument that since they were not pursuing "claims" against the failed bank the jurisdictional bar did not apply. "The problem with this novel argument," the Sixth Circuit reasoned, "is that all of their claims against [the assuming bank] are directly related to acts or omissions of the FDIC as receiver of Oakwood," *id.* at 386, namely, that the plaintiffs' loss was

attributable to the FDIC's decision to sell the failed bank's assets without requiring the buyer to assume its uninsured deposits.

These decisions, and the many other decisions that are cited in them, reflect a far broader conception of the jurisdictional bar than the Debtors' "strained and limited" interpretation of the statute would allow. In this regard, the Debtors' heavy reliance on the Third Circuit decision in *Rosa v. R.T.C.*, 938 F.2d 383 (3d Cir. 1991), is entirely misplaced. Unlike the adversary proceedings here, the section of the *Rosa* opinion that the Debtors point to did not involve either an "action seeking a determination of rights with respect to the assets of" a failed bank or a "claim relating to any act or omission" of the RTC as receiver. *See Rosa*, 938 F.2d at 394.[4]

In *National Union*, the Third Circuit had no difficulty reconciling its earlier decision in *Rosa* with its later strict interpretation of the plain language of the jurisdictional bar. *See National Union* at 387 n.12. As the *National Union* court explained, "the *Rosa* court addressed only 'claims,' as opposed to the 'any action' language contained in § 1821(d)(13)(D)(i). . . . But *Rosa did not address or decide* the interesting issue which is still an open question in this court: whether the class of actions addressed by the administrative claims procedure is smaller than the class of actions addressed by the jurisdictional bar." *Id.* (emphasis added). In *National Union*, the Third Circuit answered that "open question" definitively, ruling against the position advocated by the Debtors in their opposition. The Debtors' failure to bring the Third Circuit's later discussion of its *Rosa* decision to the Court's attention speaks volumes about the merit of their jurisdictional arguments generally.[5]

---

[4] The decision in *New Rock Asset Partners, L.P. v. Preferred Equity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996), also cited by the Debtors, did not involve the jurisdictional bar at all, and its discussion of the RTC's "sue and be sued" authority has no bearing on this motion.

[5] In *National Union*, the Third Circuit also rejected the Debtors' suggestion that a broad reading of the jurisdictional bar would somehow implicate due process concerns. *See* Debtors

Similarly inapposite is the decision in *Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir.), *cert. denied*, 128 S. Ct. 647 (2007). Unlike the cases before this Court, in *Henrichs* no party was seeking to determine rights with respect to assets of a failed bank or asserting a claim relating to acts or omissions of the FDIC as receiver of a failed bank. Instead, a private party who had lost a state court quiet title action sought to overturn that decision in federal court on the ground that he had obtained his interest in the note and deed in question from the FDIC as receiver and therefore the jurisdictional bar should apply. The Ninth Circuit noted that "[a]t the time of the state court litigation, the FDIC had no interest in the note because it had already assigned the note." 474 F.3d at 614. The litigation involved no dispute as to whether the note was or was not an asset of the failed bank, and the jurisdictional bar therefore was not implicated. The court's abbreviated conclusion, that "the statute does not reach assignees of assets once owned by the FDIC," *id.*, cannot be read, as the Debtors advocate, as an abrogation of the plain language of section 1821(d)(13)(D).[6]

---

Mem. at 17-18 (quoting *Auction Co. of Amer. v. F.D.I.C.*, 141 F.3d 1198, 1200 (D.C. Cir. 1998)). While such concerns might be raised "if the holder of an action asserting a right to payment were not provided reasonable notice and an opportunity to be heard in the administrative claims procedure," *Nat'l Union*, 28 F.3d at 392, no such facts are presented here. There can be no dispute that the Debtors not only presented claims against the receivership but also have been provided access to the district court for a judicial determination of those claims. In such circumstances, the Debtors will have a "full . . . opportunity to litigate" the issues, and no due process issue is presented. *Id.* at 391; *see Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843, 852 (3d Cir. 1994) (no possibility of constitutional issue with application of jurisdictional bar where administrative review process was completed).

[6] The Debtors' citation to statements in a FDIC brief in opposition to a petition for certiorari in *Henrichs* does not aid their argument. As the FDIC noted in that brief, the failed bank receivership in *Henrichs* had already terminated by the time of the private litigation at issue, and that wholly private dispute therefore was not susceptible of resolution through the administrative claims procedure. *See* Debtors' App. at B16. In this case, unlike *Henrichs*, the WMB receivership is ongoing, all of the claims asserted by the Debtors against JPMC *are* susceptible of resolution through the administrative claims process, and indeed, the Debtors not only have asserted such claims against the FDIC-Receiver but they are actively litigating those claims in their district court action. To permit the Debtors to assert essentially identical claims

Unlike *Henrichs*, both adversary proceedings here do seek to determine rights with respect to assets of a failed bank, WMB, and the jurisdictional bar applies. Demonstrating this beyond dispute, the answer and counterclaims filed by the Debtors in response to JPMC's adversary complaint asserts a claim against JPMC that *the entire P&A Agreement* constitutes a fraudulent transfer that should be unwound. *See* Debtors' Answer and Counterclaims, ¶¶ 153-61. The Debtors do not attempt to reconcile this outlandish claim with FIRREA's jurisdictional bar, undoubtedly because the two cannot be reconciled under the plain language of the statute.

In numerous other respects, the Debtors' counterclaims against JPMC in its adversary proceeding essentially track the claims the Debtors asserted against the FDIC-Receiver in their district court action, demonstrating again the impropriety of the claims asserted in this Court under the FIRREA jurisdictional bar. *Compare* Answer and Counterclaims, ¶¶ 93-103 (seeking avoidance and recovery of capital contributions from JPMC as allegedly fraudulent transfers) *with* District Court Compl., ¶¶ 25-28 (asserting same claims against FDIC-Receiver); *compare* Answer and Counterclaims, ¶¶ 104-138 (seeking recovery for WMPF trust preferred securities from JPMC) *with* District Court Compl., ¶¶ 29-35 (seeking recovery of trust preferred securities from FDIC-Receiver); *compare* Answer and Counterclaims, ¶¶ 139-152 (seeking recovery of alleged preferential transfers from JPMC) *with* District Court Compl., ¶¶ 36-40 (asserting same preference claims against FDIC-Receiver); *compare* Answer and Counterclaims, ¶¶ 167-171 (seeking declaratory judgment that tax refunds, deposit balances, goodwill litigation, pension and benefit plans and intangible assets were not purchased by JPMC pursuant to the P&A Agreement) *with* District Court Compl., ¶¶ 20-24, 47-50, 52-57 (asserting claims against FDIC-Receiver for tax refunds, deposit balances, pension and benefit plans).

---

against JPMC in this Court "would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood*, 539 F.3d at 386.

The Debtors' efforts to obtain immediate possession of the disputed deposit balances in their turnover action similarly contravene the jurisdictional bar. In their opposition, the Debtors repeatedly contend that they are "simply seek[ing] to withdraw their funds on deposit at JPMC," Debtors' Mem. at 3, which they argue are "indisputably property of the [Debtors'] estates," *id.* at 5. However, in their numerous filings to date, the Debtors have never even attempted to address the fundamental issue raised with respect to the disputed accounts, namely, what were the sources of the funds in the accounts and do the funds include the commingled property of WMB.[7]

The Debtors' own submissions reveal that this will be a significant question of fact and that the disputed accounts very well might include commingled funds that are assets of WMB. A page from the Debtors' summary judgment exhibits shows that, in 2008 alone, over *$3 billion* in "net tax payments" were credited to the alleged demand deposit accounts that are at issue in the turnover action, over $900 million of which were credited to the accounts in the weeks just prior to WMB's receivership. *See* Affidavit of Doreen Logan dated May 19, 2009, Exh. L.[8]

If there are "tax payments" commingled with the funds in the deposit accounts, then there is a substantial probability that some portion of those funds is the property of WMB, not the Debtors. To the extent that the disputed account balances include funds from taxing authorities or from members of WMI's consolidated group (including WMB) relating to tax refunds or tax

[7] The Debtors' opposition selectively quotes from the FDIC-Receiver's letter disallowing WMI's receivership claims. As the Debtors' district court complaint recites, the letter disallowed those claims because "[t]he claims presented are unproven to the satisfaction of the Receiver since they lack sufficient documentation or specificity, they fail to state claims against the receivership, they appear to assert claims against a third party or there is no legal basis for the claims." District Court Compl., ¶ 64. Nothing in the letter states that the phrase "they appear to assert claims against a third party" referred to the Debtors' claims for the disputed deposit balances as opposed to a variety of other claims asserted by the Debtors against the receivership.

[8] For the Court's convenience, the relevant page from this exhibit to the Debtors' summary judgment motion (page A-109) is attached as Exhibit A to this reply.

liabilities, the funds are held in trust for the benefit of the relevant group member and are excluded from the property of WMI's estate. 11 U.S.C. § 541(d); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983).[9] The Debtors' turnover action improperly seeks to deny any scrutiny of this important question of fact and to distribute the funds to WMI's creditors before the relevant issues can be investigated and, if necessary, decided by a court.

Similarly, in seeking to immediately distribute the disputed account balances to their creditors, the Debtors are obviously attempting to deprive the FDIC-Receiver of its setoff rights with respect to those balances. In their district court complaint, the Debtors claim that "the FDIC does not have any right of setoff with respect to [the accounts] on account of any claims it may assert against WMI . . . ." District Court Compl., ¶ 49. The Debtors do not explain the basis for this assertion, but it is noteworthy that the Debtors separately have asserted in their turnover complaint that JPMC likewise is not entitled to any setoff rights with respect to the accounts. *See* Turnover Compl., ¶¶ 48-55.

To prevent the type of setoff shell game being attempted by the Debtors in these actions, among other reasons, section 9.5 of the P&A Agreement permits the FDIC-Receiver, in its discretion, to direct JPMC to withhold any deposit balance assumed under the P&A Agreement and to return all or any portion of such balance to the FDIC-Receiver. *See* P&A Agreement,

---

[9] It is well-established that when corporations file joint income tax returns as a consolidated group, tax attributes inure to the benefit of the entity that actually incurred the loss unless there is an express agreement to the contrary. *See, e.g., Capital Bancshares, Inc. v. F.D.I.C.*, 957 F.2d 203, 208 (5th Cir. 1992). In the context of insured depository institutions, federal banking law prohibits a tax sharing agreement that alters this rule. Instead, a thrift holding company, such as WMI, "that receives a tax refund from a taxing authority obtains these funds *as agent for the consolidated group* on behalf of the group members," and a tax sharing agreement therefore "*should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent*." Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64757, 64759 (Nov. 23, 1998) (emphasis added).

§ 9.5. The Debtors' district court complaint acknowledged these rights and therefore asserted a claim against the FDIC-Receiver for "the outstanding balance on each of the [accounts] in the event FDIC exercises any rights it may have under the Purchase and Assumption Agreement, or otherwise, with respect to" those accounts. District Court Compl., ¶ 49. The Debtors now would prefer the Court to ignore this and other assertions in their complaint that now underscore the fact that all of the disputed assets – including claims with respect to the disputed deposit accounts – have been placed directly at issue in the district court action.

In this regard, the Debtors assert in their opposition that "prior to the receivership of WMB, the great majority of the Deposits were in an account at WMBfsb, a bank that was not seized by FDIC and whose assets were never part of the receivership estate." Debtors' Mem. at 10. The FDIC-Receiver will reserve its arguments as to this assertion for another day, but even accepting it solely for the sake of argument, the Debtors have admitted elsewhere that the funds purportedly were moved from WMB on the literal eve of its receivership, and even if the transfer of funds from WMB to WMBfsb was completed, that transfer of funds would be avoidable in its entirety if it was made with the intent to hinder, delay or defraud WMB or the FDIC-Receiver, including in an attempt to defeat or hinder the FDIC-Receiver's setoff rights against WMI. *See* 12 U.S.C. § 1821(d)(17).[10]

Finally, section 1821(d)(13)(D) expressly provides that "*no court* shall have jurisdiction over" a claim or action that is barred by that provision. This express statutory language, which applies to the Bankruptcy Court as well as other courts, does not accommodate the Debtors'

[10] In this regard, the Debtors' summary judgment submissions again raise doubts about their version of events. The account statements that the Debtors contend reflect balances held at "Washington Mutual Bank fsb" were, in fact, issued by "Washington Mutual Bank, FA," suggesting that the transfer of funds on the eve of the receivership might not have been as successful as the Debtors' assert. *See* Logan Affidavit, at A-27 (Sept. 2008 statement for 4234 account), A-38 (March 2009 statement).

suggestion that this Court must exercise its jurisdiction to determine whether the adversary proceedings involve property of the Debtors' estates. *See Amsave Credit Corp. v. R.T.C. (In re Am. Mortgage & Inv. Servs.)*, 141 B.R. 578, 583 (Bankr. D.N.J. 1992) ("this court finds no merit in Amsave's argument that the RTC must first prove in this court its ownership interest in the 34 loans before the provisions of FIRREA are invoked").

The decisions cited by the Debtors, which involved a debtor's defensive response to claims asserted by the FDIC or RTC, cannot be squared with *National Union*, which expressly rejected their rationale that the jurisdictional bar only applied to "creditors" of a receivership. *Nat'l Union*, 28 F.3d at 389; *accord Freeman*, 56 F.3d at 1401; *see Parker N. Am. Corp. v. R.T.C. (In Re Parker N. Am. Corp.)*, 24 F.3d 1145, 1154 (9th Cir. 1994); *All Season's Kitchen, Inc. v. F.D.I.C. (In re All Season's Kitchen, Inc.)*, 145 B.R. 391, 401 (Bankr. D. Vt. 1992); *In re Gemini Bay Corp.*, 145 B.R. 350, 352 (Bankr. M.D. Fla. 1992) (allowing FDIC claim). Indeed, the Third Circuit in *National Union* expressly disagreed with three of the cases cited in the Debtors' opposition for this reason. *See Nat'l Union*, 28 F.3d at 386 n.8 (citing, *inter alia*, *In re Continental Fin. Resources, Inc.*, 154 B.R. 385, 387-88 (D. Mass. 1993); *In re Scott*, 157 B.R. 297, 308-20 (Bankr. W.D. Tex. 1993), *vacated*, 162 B.R. 1004 (Bankr. W.D. Tex. 1994); *In re Purcell*, 150 B.R. 111, 113-16 (Bankr. D. Vt. 1992)).[11]

In any event, neither of the adversary proceedings before this Court involves a defensive response by the Debtors to a claim asserted by the FDIC-Receiver. *See Nat'l Union*, 28 F.3d at 393 (section 1821(d)(13)(D) "does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim"); *Washington Bancorp. v.*

[11] Even before *National Union* and *Freeman*, other bankruptcy courts rejected the rationale of the decisions relied on by the Debtors. *See, e.g.*, *Committee Disbursing Agent v. R.T.C. (In re Valley Forge Plaza Assocs.)*, 159 B.R. 161, 164 (Bankr. E.D. Pa. 1993).

*F.D.I.C. (In re Washington Bancorp.)*, C.A. No. 95-1340, 1996 WL 148533, at *9 (D.D.C. Mar. 19, 1996) (same). To the contrary, the only litigation that is pending between the Debtors and the FDIC-Receiver was brought by the Debtors in the District for the District of Columbia under 12 U.S.C. § 1821(d)(6)(A).[12]

Nor is there merit to the Debtors' assertion that exclusive jurisdiction lies in the Bankruptcy Court under 28 U.S.C. § 1334(e)(1). Apart from the general principle that the later enacted jurisdictional bar of FIRREA controls over the earlier enacted jurisdictional grant of section 1334(e)(1), *cf. W.J.P. Props. v. R.T.C. (In re W.J.P. Props.)*, 149 B.R. 604, 609-10 (Bankr. C.D. Cal. 1992) (rejecting argument that 28 U.S.C. § 1334(b) allowed suit in contravention of FIRREA jurisdictional bar), as a more general matter, courts have rejected the Debtors' proposed interpretation of section 1334(e)(1) because it is inconsistent with the rest of the scheme of venue for bankruptcy cases. *See Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000) ("We agree . . . that a bankruptcy court can share its jurisdiction with other courts."); *Noletto v. Nationsbanc Mortgage (In re Noletto)*, 244 B.R. 845, 852-53 (Bankr. S.D. Ala. 2000).

## III. The FDIC-Receiver Meets the Requirements for Intervention in the Turnover Action

The jurisdictional arguments advanced by the Debtors in their opposition memorandum only reinforce the importance of the direct participation of the FDIC-Receiver in the turnover proceeding solely for the purpose of seeking a stay of that proceeding until judgment has been entered in the Debtors' district court action. For all of the reasons advanced in the FDIC-

[12] The FDIC-Receiver filed a protective proof of claim in these bankruptcy cases only after the Debtors had commenced their action in the district court. In that proof of claim, the FDIC-Receiver expressly reserved all of its jurisdictional arguments. The Debtors' suggestion that by protecting its rights in this Court under those circumstances the FDIC-Receiver somehow waived the application of the jurisdictional bar is without merit. *See Washington Bancorp.*, 1996 WL 148533, at *9 ("The simple fact that FDIC-R filed a proof of claim in WBC's bankruptcy does not permanently extinguish FDIC-R's jurisdictional bar protection.").

Receiver's motion to intervene, intervention in the turnover proceeding should be granted as of right, or in the alternative, with permission, for that limited purpose.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its opening memorandum, the FDIC-Receiver respectfully requests that the Court stay all proceedings in the two adversary proceedings in this Court until judgment has been entered in the Debtors' district court action and grant the FDIC-Receiver such other relief as it may deem just and proper.

Date: Wilmington, Delaware
June 22, 2009

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and -

Thomas R. Califano
John J. Clarke, Jr
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the FDIC-Receiver

**EXHIBIT A**

Washington Mutual Inc
2008 Cash Flow ($ in 000's)

| | Jan-08 Actual | Feb-08 Actual | Mar-08 Actual | Apr-08 Actual | May-08 Actual | Jun-08 Actual | Jul-08 Actual | Aug-08 Actual | Sep-08 | Oct-08 | Nov-08 | Dec-08 | 2008 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Dividends** | | | | | | | | | | | | | |
| Dividends From WMB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dividends To WMI Common Stockholders | 0 | (129,798) | 0 | 0 | (16,900) | 0 | 0 | (16,907) | 0 | 0 | (16,900) | 0 | (180,505) |
| Series K Preferred | 0 | 0 | (7,102) | 0 | 0 | (5,059) | 0 | 0 | (5,056) | 0 | 0 | (5,056) | (22,350) |
| Series R Preferred | 0 | 0 | (57,479) | 0 | 0 | (59,417) | 0 | 0 | (59,417) | 0 | 0 | (59,417) | (235,730) |
| **Debt Service (P & I)** | | | | | | | | | | | | | |
| Senior $750MM @ 4.375% due 1-15-08 | (766,406) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (766,406) |
| Senior $250mm @3mL+0.15% due 3-20-08 | 0 | 0 | (253,208) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (253,208) |
| Senior $805.172mm @ 4.0% due 1-15-09 | (20,000) | 0 | 0 | 0 | 0 | 0 | (16,103) | 0 | 0 | 0 | 0 | 0 | (36,103) |
| Senior $355.645mm@3ML+.15% due 08-24-09 | 0 | (5,535) | 0 | 0 | (3,457) | 0 | 0 | (2,519) | 0 | 0 | (2,519) | 0 | (14,030) |
| Senior $173.5MM @ 3ML+0.30% due 1-15-10 | (3,541) | 0 | 0 | (2,483) | 0 | 0 | (1,337) | 0 | 0 | (1,337) | 0 | 0 | (8,698) |
| Senior $504.419MM @ 4.2% due 1-15-10 | (12,600) | 0 | 0 | 0 | 0 | 0 | (10,593) | 0 | 0 | 0 | 0 | 0 | (23,193) |
| Sub $452.160MM @8.25% due 4-1-10 | 0 | 0 | | (18,775) | 0 | 0 | 0 | 0 | 0 | (18,651) | 0 | 0 | (37,425) |
| Senior $361.350mm @ 5.5% due 8-24-11 | 0 | (11,000) | 0 | 0 | 0 | 0 | 0 | (9,938) | 0 | 0 | 0 | 0 | (20,938) |
| Senior $363.350mm @ 3mL+0.30% due 3-22-12 | 0 | 0 | (5,961) | 0 | 0 | (2,633) | 0 | 0 | (2,633) | 0 | 0 | (2,633) | (13,860) |
| Senior $375.73mm @ 5% due 3-22-12 | 0 | 0 | (10,000) | 0 | 0 | 0 | 0 | 0 | (9,393) | 0 | 0 | 0 | (19,393) |
| Senior $448.815mm@3ML+.40% due 09-17-12 | 0 | 0 | (6,813) | 0 | 0 | (3,654) | 0 | 0 | (3,614) | 0 | 0 | (3,614) | (17,695) |
| Sub $731.652MM @4.625% due 4-1-14 | 0 | 0 | 0 | (17,344) | 0 | 0 | 0 | 0 | 0 | (16,919) | 0 | 0 | (34,263) |
| Senior $730.240mm @5.25% due 09-15-17 | 0 | 0 | (19,688) | 0 | 0 | 0 | 0 | 0 | (19,169) | 0 | 0 | 0 | (38,857) |
| Sub $440.460MM@7.25% due 11-1-17 | 0 | 0 | 0 | 0 | (18,125) | 0 | 0 | 0 | 0 | 0 | (15,967) | 0 | (34,092) |
| Trust PIERS $1,150MM@5.375% due 5-1-41 | 0 | (15,453) | 0 | 0 | (15,453) | 0 | 0 | (15,453) | 0 | 0 | (15,453) | 0 | (61,812) |
| Subtotal | (802,547) | (181,846) | (360,341) | (38,602) | (53,935) | (70,760) | (28,033) | (44,817) | (99,282) | (35,907) | (50,839) | (70,720) | (1,818,629) |
| **Other Operating Activities** | | | | | | | | | | | | | |
| Other holding company cash flow | 0 | 0 | 0 | 7,149,950 | 0 | 0 | 0 | 0 | (322,000) | (40,000) | (40,000) | 0 | 6,747,950 |
| Master Notes with Co. 467 | (65,000) | 0 | 0 | (10,000) | (40,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (115,000) |
| Net Tax Payments | (18) | 1,938,810 | (149,573) | 256,522 | (2,065) | 100,525 | 0 | 600,000 | 304,938 | 10,000 | 10,000 | 10,000 | 3,077,939 |
| Loans to bank subsidiaries | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Intercompany Settlements | (3,609) | (1,925,180) | (36,909) | (3,023,103) | (130,540) | (32,286) | 3,572 | (25,597) | 53,000 | 50,000 | 50,000 | 50,000 | (4,974,652) |
| All Other | 33,053 | (35,834) | 58,379 | (36,609) | (49,487) | (103,484) | (2,374) | 71,852 | (25,000) | (25,000) | (25,000) | (25,000) | (167,504) |
| Capital Strategies | 0 | 0 | 0 | 0 | 0 | 0 | (2,000,000) | 0 | (500,000) | 0 | 0 | 0 | (2,500,000) |
| Subtotal | (35,574) | (23,404) | (128,103) | 4,333,760 | (222,092) | (35,245) | (1,998,802) | 645,255 | (492,062) | (5,000) | (5,000) | 35,000 | 2,036,732 |
| **Financing Activities** | | | | | | | | | | | | | |
| Commercial Paper Issued/(Matured) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Retail MTN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Stock Buyback/Debt Repurchase | (36,897) | (299,832) | 0 | (54,280) | (346,759) | (59,883) | 0 | 0 | 0 | 0 | 0 | 0 | (797,651) |
| New Debt/Equity Issuances | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Subtotal | (36,897) | (299,832) | 0 | (54,280) | (346,759) | (59,883) | 0 | 0 | 0 | 0 | 0 | 0 | (797,651) |
| Beginning Cash | 4,364,467 | 3,489,449 | 3,004,367 | 2,515,923 | 6,756,801 | 6,134,015 | 5,968,127 | 3,941,292 | 4,541,730 | 3,950,385 | 3,908,478 | 3,852,639 | 4,364,467 |
| Net Increase/(Decrease) in Cash | (875,018) | (485,082) | (488,444) | 4,240,878 | (622,786) | (165,888) | (2,026,835) | 600,438 | (591,344) | (41,907) | (55,839) | (35,720) | (547,548) |
| Ending Cash | 3,489,449 | 3,004,367 | 2,515,923 | 5,756,801 | 6,134,015 | 5,968,127 | 3,941,292 | 4,541,730 | 3,950,385 | 3,908,478 | 3,852,639 | 3,816,919 | 3,816,919 |

5/13/2009