IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al.,[1] | : | Case No. 08-12229 (MFW) |
| Debtors. | : | Jointly Administered |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | : | |
| Plaintiff, | : | Adversary Proceeding No. 09-50551 (MFW) |
| v. | : | |
| WASHINGTON MUTUAL, INC. and WMI INVESTMENT CORP., | : | |
| Defendants, | : | |
| - and - | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | : | |
| Additional Defendant. | : | **Ref. Docket No. 49** |

**RESPONSE OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTERCLAIM DEFENDANT JPMORGAN CHASE BANK, N.A. TO WITHDRAW THE REFERENCE**

(Caption continued on next page)

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification numbers are: (a) Washington Mutual, Inc. (3725); and (b) WMI Investment Corp. (5395). The Debtors' principal offices are located at 1301 Second Avenue, Seattle, Washington 98101.

|  |  |
|---|---|
| WASHINGTON MUTUAL, INC. AND WMI INVESTMENT CORP., | : <br> : <br> : Adversary Proceeding No. 09-50394 (MFW) |
| Plaintiffs, | : |
| v. | : |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | : <br> : <br> : |
| Defendant. | : Ref. Docket No. 47 |

## RESPONSE OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTERCLAIM DEFENDANT JPMORGAN CHASE BANK, N.A. TO WITHDRAW THE REFERENCE

Robert S. Brady (Bar No. 2847)
M. Blake Cleary (Bar No. 3614)
Jaime N. Luton (Bar No. 4936)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
rbrady@ycst.com
mbcleary@ycst.com
jluton@ycst.com

- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Attorneys for the Federal Deposit Insurance
Corporation, as Receiver for Washington
Mutual Bank

Dated: July 13, 2009

# Table of Contents

|  |  | Page |
|---|---|---|
| Table of Authorities | | iv |
| PRELIMINARY STATEMENT | | 1 |
| BACKGROUND | | 2 |
| ARGUMENT | | 5 |
| I. | Mandatory Withdrawal of the Reference Is Warranted | 5 |
| II. | In the Alternative, Permissive Withdrawal is Appropriate | 10 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**CASES**                                                                                           Page

*Best Prods. Co., Inc. v. R.T.C. (In re Best Prods. Co., Inc.)*,
  93 Civ. 1115 (CSH), 1994 U.S. Dist. LEXIS 5088 (S.D.N.Y. Apr. 20, 1994) .........................7

*Elscint Ltd. v. First Wisconsin Fin. Corp. (In re Xonics, Inc.)*,
  67 B.R. 33 (N.D. Ill 1986) ....................................................................................................10

*Fagan v. City of Vineland*, 22 F. 3d 1283, 1290 (3d Cir. 1994) .................................................9

*F.S.L.I.C. v. Musacchio*,
  695 F. Supp. 1053 (N.D. Cal 1988) ....................................................................................10

*F.D.I.C. v. Shain, Schaffer & Rafanello*,
  944 F.2d 129 (3rd Cir. 1991) ........................................................................................7, 8, 10

*Hassett v. F.D.I.C. (In re CIS Corp.)*,
  140 B.R. 351 (S.D.N.Y. 1992) .............................................................................................6

*Hudson United Bank v. Chase Manhattan Bank*,
  43 F.3d 843 (3d Cir. 1994) ...................................................................................................8

*In re Fresh Approach, Inc.*,
  51 B.R. 412 (Bankr. N.D. Tex. 1985) ..................................................................................6

*Messenger v. Anderson*,
  225 U.S. 436 (1912) ............................................................................................................9

*Morris v. R.T.C. (In re Mid Am. Entm't Plus, Inc.)*,
  135 B.R. 419 (D. Kan. 1991) ...............................................................................................6

*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*,
  28 F.3d 376 (3d Cir. 1994) ...................................................................................................8

*Praxis Props, Inc. v. Colonial Sav. Bank*,
  947 F.2d 49 (3d Cir. 1991) ................................................................................................7-8

*Rosa v. R.T.C.*,
  938 F.2d 383, 396 (3d Cir. 1991), *cert. denied*, 502 U.S. 981 (1991) ...............................8

*Sullivan v. Hiser (In re St. Mary Hosp.)*,
  115 B.R. 495 (E.D. Pa. 1990) ...........................................................................................5-6

*United States v. Johns-Manville Corp. (In re John-Manville)*,
  63 B.R. 600 (S.D.N.Y. 1986) ..............................................................................................6

*United States v. MCorp Fin. (In re MCorp Fin.)*,
    170 B.R. 899 (S.D. Tex. 1994) ................................................................................ 9-10

*Vill. of Oakwood v. State Bank & Trust Co.*,
    519 F. Supp. 2d 730 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008) .............. 8, 10

*Village of Oakwood v. State Bank & Tr. Co.*,
    539 F.3d 373 (6th Cir. 2008) .......................................................................................... 6

*Wedtech Corp. v. London (In re Wedtech Corp.)*,
    81 B.R. 237 (S.D.N.Y 1987) ........................................................................................ 10

## STATUTES

12 U.S.C. §§ 371c, 371c-1 .................................................................................................. 9

12 U.S.C. § 1821(d)(5)(D)(i) ............................................................................................... 3

12 U.S.C. § 1821(d)(6)(A) ............................................................................................ 4, 6, 7

12 U.S.C. § 1821(d)(13)(D) ........................................................................................ *passim*

28 U.S.C. § 157(d) ..................................................................................................... *passim*

Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-
    73, 103 Stat. 183 ("FIRREA") .................................................................................. 4, 6

## OTHER AUTHORITIES

59 Fed. Reg. 10,663, 10,664 (1994) ................................................................................... 8

63 Fed. Reg. 64,757, 64759 (Nov. 23, 1998) ..................................................................... 8

Fed. R. Civ. P. 6(e) ............................................................................................................. 1

The Federal Deposit Insurance Corporation, in its capacity as receiver (the "FDIC-Receiver") for Washington Mutual Bank, Henderson, Nevada ("WMB") files this response in support of the motion of JPMorgan Chase Bank, N.A. ("JPMC") to withdraw the reference of the above-captioned adversary proceedings pursuant to 28 U.S.C. § 157(d) and to transfer those actions to the United States District Court for the District of Columbia. The FDIC-Receiver is a party in both adversary proceedings.[2]

## PRELIMINARY STATEMENT

The motion to withdraw the reference should be granted. The Debtors' prosecution of redundant litigation against JPMC in the Bankruptcy Court violates the plain language of the jurisdictional bar set forth in the FDIC-Receiver's governing statute, 12 U.S.C. § 1821(d)(13)(D), and reflects a transparent attempt to end run the receivership claims process overseen by the FDIC-Receiver in violation of that statute and Third Circuit authority applying it.

The Debtors' claims and counterclaims against JPMC in these two adversary proceedings are obviously redundant of substantially identical claims that the Debtors have asserted against the FDIC-Receiver in an earlier filed action pending in the United States District Court for the District of Columbia, styled *Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.). Resolution of the claims and counterclaims asserted here would require "substantial

---

[2] JPMC served its motion to withdraw the reference on June 23, 2009. Under the Bankruptcy Court's Local Rule 5011-1, the motion is governed by the rules of the United States District Court for the District of Delaware. Under the District Court's Standing Order entitled Electronic Case Filing Policies and Procedures, dated February 8, 2005, service of a motion by electronic means pursuant to the ECF system "shall be treated the same as service by mail for the purpose of adding three (3) days to the prescribed period to respond in accordance with Fed. R. Civ. P. 6(e). The FDIC-Receiver reserves the right to seek withdrawal of the reference of the two adversary proceedings at issue on the grounds set forth herein or any other basis in its own motion and does not waive such rights by filing this response.

and meaningful" reference to banking laws that govern, *inter alia*, the resolution of claims against the FDIC in its capacity as receiver and the priority of distributions to creditors. Having already started their district court action against the FDIC-Receiver, as required by statute, the Debtors' litigation in Bankruptcy Court of essentially identical claims against JPMC reflects a statutorily impermissible collateral attack on the FDIC-Receiver's disallowance of WMI's receivership claims.

The claims and counterclaims asserted in the adversary proceedings also will require material and substantial consideration of other federal laws concerning, among other things, allocation of tax attributes among members of a consolidated tax group in a holding company structure and banking laws governing transactions among affiliates. Mandatory withdrawal of the reference is appropriate under 28 U.S.C. § 157(d), which provides for substantial issues of non-bankruptcy law to be addressed in the district courts.

In the alternative, the FDIC-Receiver also supports JPMC's arguments for permissive withdrawal of the reference to promote uniform bankruptcy administration, reduce the risk of inconsistent rulings and preserve the resources of the Debtors, their estates and the parties to the adversary proceedings.

## BACKGROUND

In its motion, JPMC sets forth the general factual and procedural background. The pertinent aspects of that background as to the FDIC-Receiver are summarized here. Until September 25, 2008, the debtor WMI was a thrift holding company, the principal thrift subsidiary of which was WMB. In an order issued on September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") closed WMB and appointed the FDIC-Receiver as its receiver. The FDIC-Receiver thereafter entered into a Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008, with JPMC (the "P&A Agreement"), under which

2

JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of WMB's deposit liabilities.

On September 26, 2008, the day after WMB was closed by the OTS, the Debtors filed their petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Those bankruptcy cases are pending before United States Bankruptcy Judge Mary F. Walrath.

In accordance with its governing statute, the FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership. On that date, WMI filed a proof of claim with the FDIC-Receiver asserting claims relating to a variety of WMB assets that WMI asserted it owned. Among others, WMI asserted claims against the WMB receivership for: (1) income tax refunds and other tax related assets; (2) certain trust preferred securities with a liquidation preference of $4 billion that had been issued by a subsidiary of WMB; (3) recovery of $6.5 billion in capital contributions made by WMI to WMB before the receivership, as allegedly fraudulent transfers; (4) certain employee benefit plans, insurance policies and trusts; and (5) for the balances held in certain alleged demand deposit accounts that WMI claimed it had maintained with WMB or its subsidiary Washington Mutual Bank fsb ("WMBfsb"), which according to WMI amounted to approximately $4 billion. By letter dated January 23, 2009, the FDIC-Receiver disallowed all of Debtors' claims because they had not been proved to the satisfaction of the receiver. *See* 12 U.S.C. § 1821(d)(5)(D)(i).

Under the Federal Deposit Insurance Act, as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), a claimant whose receivership claim has been disallowed must within 60 days either pursue an administrative appeal of the disallowance within the FDIC or commence an

action in United States District Court seeking a judicial determination of the claims. *See* 12 U.S.C. § 1821(d)(6)(A).[3] Other than as thus provided, "no court shall have jurisdiction" over any claim or action concerning a receivership. 12 U.S.C. § 1821(d)(13)(D).

WMI recognized the jurisdictional significance of these provisions. On March 20, 2009, although they were chapter 11 debtors with bankruptcy cases pending before Judge Walrath, WMI and its subsidiary WMI Investment Corp. filed their complaint in the District for the District of Columbia against the FDIC-Receiver seeking a judicial determination of WMI's disallowed receivership claims pursuant to 12 U.S.C. § 1821(d)(6)(A) and asserting a variety of other claims against the FDIC-Receiver and the FDIC in its corporate capacity. The Debtors' district court action against the FDIC is pending.

On March 24, 2009, JPMC commenced an adversary proceeding in the Bankruptcy Court against the Debtors and the FDIC, both as receiver and in its corporate capacity, styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW). JPMC's complaint sought declaratory and other relief with respect to many of the assets that were the subject of WMI's receivership claim and the Debtors' ensuing district court action against the FDIC. On May 29, 2009, the Debtors filed their answer and asserted a number of counterclaims against JPMC. In many respects, the Debtors' counterclaims essentially track the claims the Debtors are pursuing against the FDIC-Receiver in district court. The counterclaims include, among others, a claim that the entire P&A Agreement between JPMC and the FDIC-Receiver was a fraudulent transfer that should be unwound by the Bankruptcy Court.

---

[3] The statute specifies that such an action must be brought either in the United States District Court for the District of Columbia or in the district in which the failed bank had its principal place of business, which in the case of WMB would be the Western District of Washington. *Id.*

4

Separately, on April 27, 2009, the Debtors commenced an adversary proceeding against JPMC seeking immediate turnover of the alleged balances held in six demand deposit accounts that the Debtors contend are property of their estate and that were already a subject of the Debtors' district court action and of the JPMC adversary proceeding. That second adversary proceeding is styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW).

On June 1, 2009, the FDIC-Receiver filed a motion to stay both adversary proceedings until judgment has been entered in the district court action on the ground that the Bankruptcy Court lacked subject matter jurisdiction over the claims asserted by the Debtors and JPMC against one another under the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) and also under the first-filed rule. The Bankruptcy Court heard argument on the motions on June 24, 2009, and stated on the record at that hearing that it would deny the motions. The Bankruptcy Court orders denying the motions were entered on July 6, 2009. The FDIC-Receiver has filed notices of appeal to this Court from those orders and, in the alternative, has moved for leave of this Court to appeal the orders.

## ARGUMENT

### I. Mandatory Withdrawal of the Reference Is Warranted

The FDIC-Receiver agrees with JPMC that withdrawal of the reference of the two adversary proceedings pursuant to 28 U.S.C. § 157(d) is appropriate because adjudication of the adversary proceedings will require substantial and material consideration of federal banking law, including, but not limited to, the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D).

Mandatory withdrawal is available under section 157(d) in order to provide for "the withdrawal of matters requiring the application of non-bankruptcy law from the relatively less experienced Bankruptcy Court to the more experienced District Court." *Sullivan v. Hiser (In re*

5

*St. Mary Hosp.)*, 115 B.R. 495, 497 (E.D. Pa. 1990). "Mandatory withdrawal has been used where difficult, interpretive questions, usually of first impression, are raised with regard to non-bankruptcy statutes." *Morris v. R.T.C. (In re Mid Am., Entm't Plus, Inc.)*, 135 B.R. 419, 422 (D. Kan. 1991) (withdrawing reference of adversary proceeding based on application of 12 U.S.C. § 1821(d)(13)(D)).

Section 157(d) requires withdrawal of the reference when analysis of the issues requires "significant interpretation of federal law that Congress would have intended to have decided by a district judge, rather than a bankruptcy judge." *United States v. Johns-Manville Corp. (In re John-Manville)*, 63 B.R. 600, 602 (S.D.N.Y. 1986). Mandatory withdrawal is especially appropriate where federal laws and regulations reflect "active intervention by government agencies occupying a watchdog role pursuant to a regulatory mandate." *In re Fresh Approach, Inc.*, 51 B.R. 412, 415 (Bankr. N.D. Tex. 1985).

Such issues are presented here. The Debtors' attempt to collaterally attack the FDIC-Receiver's disallowance of WMI's receivership claims through Bankruptcy Court litigation against the assuming bank under a purchase and assumption agreement is without precedent. Indeed, in a recent case rejecting a similar attempt by failed bank creditors to evade the jurisdictional bar and obtain recovery from an assuming bank, the Sixth Circuit concluded that "'permit[ting] claimants to avoid [the] provisions of [1821](d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid'" *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008).[4]

---

[4] *Hassett v. F.D.I.C. (In re CIS Corp.)*, 140 B.R. 351 (S.D.N.Y. 1992), cited by the Debtors, did not involve a debtor's attempt to sue an assuming bank when its claims against a failed bank receivership already had been disallowed. Instead, the only question was whether the debtors had failed to exhaust their administrative remedies. If so, the district court concluded, the bankruptcy court "will dismiss the action," an analysis that the court concluded was

6

The jurisdictional bar of section 1821(d)(13)(D) was added to the Federal Deposit Insurance Act as part of FIRREA, a broad revison of the FDIC's governing statute in the wake of the savings and loan crisis that was enacted to "enhance certain powers of the FDIC and to eliminate impediments to the efficient resolution of failed financial institutions." *F.D.I.C. v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 131 (3rd Cir. 1991). In FIRREA, Congress established a comprehensive procedure, overseen by the FDIC, for determining claims against failed depository institutions and providing for the possibility of a judicial determination of such claims by specified federal district courts to the extent they are disallowed by the FDIC. *See* 12 U.S.C. § 1821(d)(6)(A). The jurisdictional bar provides:

> (D) **Limitation on judicial review**
>
> Except as otherwise provided in this subsection, *no court shall have jurisdiction over* --
>
> (i) any claim or action for payment from, *or any action seeking a determination of rights with respect to*, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to *any act or omission* of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added). Jurisdiction is "otherwise provided" under section 1821(d) only for those claims that have been filed with, and disallowed by, the FDIC as receiver. *See* 12 U.S.C. § 1821(d)(6)(A); *see Praxis Props, Inc. v. Colonial Sav. Bank*, 947 F.2d

---

"straightforward." *Id.* at 353. The decision in *Best Prods. Co., Inc. v. R.T.C. (In re Best Prods. Co., Inc.)*, 93 Civ. 1115 (CSH), 1994 U.S. Dist. LEXIS 5088 (S.D.N.Y. Apr. 20, 1994), is also distinguishable. Unlike *Best*, in this case the Debtors *first* commenced litigation against the FDIC-Receiver in their district court action concerning their receivership claims and thereafter attempted to assert identical claims against JPMC, rather than the FDIC-Receiver, in the Bankruptcy Court.

7

49, 63 (3d Cir. 1991) ("FIRREA expressly limits a claimant's ability to circumvent the above administrative claims procedure, providing for a strict limitation on judicial review").

As the Third Circuit has recognized, "[o]ne of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation," *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). Courts, including the Third Circuit, have consistently held that the "[FIRREA] claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821." *Shain, Schaffer & Rafanello*, 994 F.2d at 132; *see Nat'l Union Fire Ins. Co*, 28 F.3d at 383; *see also Vill. of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 733 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008).[5]

Here, all of the Debtors' claims and counterclaims in the two adversary proceedings violate the jurisdictional bar. Most of those claims "seek[] a determination of" WMI's rights with respect to assets of WMB. *See* 12 U.S.C. § 1821(d)(13)(D)(i). Any claims that do not violate this clause of the jurisdictional bar "relate[] to acts or omissions of" the FDIC-Receiver as WMB's receiver, specifically, the FDIC-Receiver's decision to enter into the P&A Agreement

---

[5] *See also Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843, 849 (3d Cir. 1994) ("the purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs with claims against failed depository institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court"); *Rosa v. R.T.C.*, 938 F.2d 383, 396 (3d Cir. 1991) ("The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation."), *cert. denied*, 502 U.S. 981 (1991); RTC Interim Statement of Policy Regarding Procedures To Be Used With Regard To Claims Based Upon Acts or Omissions of the Receiver, 59 Fed. Reg. 10,663, 10,664 (1994) ("The legislative history of [1821(d)] reveals that the dual purpose behind requiring exhaustion of claims before suit can be filed is: (1) [t]o minimize costs to the receivership estate, and to the legitimate claimants who share in the distributions from the estate and (2) to minimize the burden on federal courts by avoiding needless litigation.").

with JPMC under which it sold substantially all of WMB's assets. These include the outlandish claim that the entire P&A Agreement represented a fraudulent transfer that the Bankruptcy Court should unwind. See 12 U.S.C. § 1821(d)(13)(D)(ii).[6]

In addition, as JPMC has argued, the Debtors' claims and counterclaims in the adversary proceedings will require the court that is evaluating them to engage in detailed and extensive consideration of other federal laws. For example, WMI's purported transfer of $3.7 billion in alleged deposit funds from WMB to WMBfsb and purportedly simultaneous loan back from WMBfsb to WMB on the eve of WMB's receivership raises serious issues under sections 23A and 23B of the Federal Reserve Act, which requires transactions between affiliates in a bank holding company structure to be on terms as favorable to a bank as those prevailing for comparable transactions among unaffiliated entities. See 12 U.S.C. §§ 371c, 371c-1. Similarly, the Debtors' claims to tax-related assets directly implicate federal law applicable to consolidated tax groups involving bank holding companies. See Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 64,757, 64759 (Nov. 23, 1998) (thrift holding company "that receives a tax refund from a taxing authority obtains these funds as agent for the consolidated group on behalf of the group members," and a tax sharing agreement therefore "should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent.").[7]

---

[6] Consideration of the effect of the jurisdictional bar under 28 U.S.C. § 157(d) is not somehow precluded by the Bankruptcy Court's denial of the FDIC-Receiver's motions to stay the adversary proceedings. The "law of the case" doctrine is prudential and does not limit the courts' authority. See Messenger v. Anderson, 225 U.S. 436, 444 (1912) (Holmes, J.). In any event, law of the case does not extend to a court's subsequent consideration of a motion raising different issues, as does the motion to withdraw the reference here. See Fagan v. City of Vineland, 22 F. 3d 1283, 1290 (3d Cir. 1994).

[7] United States v. MCorp Fin. (In re MCorp Fin.), 170 B.R. 899 (S.D. Tex. 1994), was decided before the Interagency Policy Statement was issued and, unlike the tax sharing

It is precisely such a situation that Congress sought to address in enacting the mandatory withdrawal provisions of 28 U.S.C. § 157(d). The FDIC-Receiver respectfully submits that mandatory withdrawal of the reference is warranted and, therefore, JPMC's motion for mandatory withdrawal should be granted.

## II. In the Alternative, Permissive Withdrawal Is Appropriate

In the alternative, permissive withdrawal of the adversary proceedings, and transfer of the adversary proceedings to the United States District Court for the District of Columbia, is warranted because it will promote uniform bankruptcy administration, reduce the risk of inconsistent rulings and preserve the resources of the court and parties to the adversary proceedings. *See Wedtech Corp. v. London, (In re Wedtech Corp.)*, 81 B.R. 237, 238 (S.D.N.Y 1987) ("where there is significant overlapping of facts, transactions, issues and law between a case referred to the bankruptcy court and a district court case, judicial economy demands that the cases be consolidated."); *see also Elscint Ltd. v. First Wisconsin Fin. Corp (In re Xonics, Inc.)*, 67 B.R. 33, 33-34 (N.D. Ill 1986); *F.S.L.I.C. v. Musacchio*, 695 F. Supp. 1053 (N.D. Cal 1988).

If the adversary proceedings are permitted to move forward, the Debtors will have circumvented what the Third Circuit and other courts have acknowledged to be the "exclusive" claims process of 12 U.S.C. § 1821(d). *Shain, Schaffer & Rafanello*, 994 F.2d at 132; *see Nat'l Union*, 28 F.3d at 383; *see also Vill. of Oakwood*, 519 F. Supp. 2d at 733. In enacting section 1821(d)(13)(D), Congress specifically addressed the inherent risk to the banking system and the public interest of competing and prolonged litigation. To permit the Debtors' collateral attack

---

agreement entered into between WMI and certain of its affiliates here, the tax sharing agreement at issue in *MCorp* was not required to comply with the policy statement's specific requirements regarding ownership of tax-related assets.

10

on both the FDIC-Receiver's disallowance of their claims and any eventual determination by the district court regarding those claims will result in the very burden Congress sought to avoid.

## CONCLUSION

For the foregoing reasons, the FDIC-Receiver respectfully submits that JPMC's Motion to Withdraw the Reference of the Adversary Proceedings be granted.

Dated: Wilmington, Delaware
July 13, 2009

                                                 YOUNG CONAWAY STARGATT
                                                 & TAYLOR, LLP

                                                 */s/ M. Blake Cleary*
                                                 _____
                                                 Robert S. Brady (Bar No. 2847)
                                                 M. Blake Cleary (Bar No. 3614)
                                                 Jaime N. Luton (Bar No. 4936)
                                                 The Brandywine Building
                                                 1000 West Street, 17th Floor
                                                 Wilmington, Delaware 19801
                                                 Telephone: (302) 655-5000
                                                 Facsimile: (302) 658-6395
                                                 rbrady@ycst.com
                                                 mbcleary@ycst.com
                                                 jluton@ycst.com

                                                        - and -

                                                 Thomas R. Califano
                                                 John J. Clarke, Jr
                                                 DLA PIPER LLP (US)
                                                 1251 Avenue of the Americas
                                                 New York, New York 10020
                                                 Telephone: (212) 335-4500
                                                 Facsimile: (212) 335-4501
                                                 thomas.califano@dlapiper.com
                                                 john.clarke@dlapiper.com

                                                 Attorneys for the FDIC-Receiver

# CERTIFICATE OF SERVICE

I, M. Blake Cleary, hereby certify that I am not less than 18 years of age, and that on July 13, 2009, I caused a copy of the **Response of Defendant Federal Deposit Insurance Corporation, as Receiver, in Support of Motion of Plaintiff and Counterclaim Defendant JPMorgan Chase Bank, N.A. to Withdraw the Reference** to be served upon the parties identified below in the manner indicated.

_____
M. Blake Cleary (No. 3614)

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

| | |
|---|---|
| Rafael X. Zahralddin-Aravena, Esq.<br>Neil Raymond Lipinski, Esq.<br>Shelley A. Kinsella, Esq.<br>Elliot Greenleaf<br>P.O. Box 2327<br>Wilmington, Delaware 19899<br>(Counsel for Washington Mutual, Inc. and WMI Investments Corp.)<br>***Hand Delivery*** | Mark D. Collins, Esq.<br>Chun I. Jang, Esq.<br>Lee E. Kaufman, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>(Counsel for Debtors and Debtors in Possession)<br>***Hand Delivery*** |
| Peter E. Calamari, Esq.<br>Michael B. Carlinsky, Esq.<br>Susheel Kirpalani, Esq.<br>David Elsberg, Esq.<br>Quinn Emanuel Urquhart Oliver & Hedges LLP<br>51 Madison Avenue<br>New York, New York 10010<br>(Counsel for Washington Mutual, Inc. and WMI Investments Corp.)<br>***First Class Mail*** | Marcia L. Goldstein, Esq.<br>Brian S. Rosen, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>(Counsel for Debtors and Debtors in Possession)<br>***First Class Mail*** |
| Robert A. Sacks, Esq.<br>Hydee R. Feldstein, Esq.<br>Sullivan & Cromwell LLP<br>1888 Century Park East<br>Los Angeles, California 90067<br>(Counsel for JPMorgan Chase Bank, N.A.)<br>***First Class Mail*** | David B. Stratton, Esq.<br>Evelyn J. Meltzer, Esq.<br>John H. Schanne, II, Esq.<br>Pepper Hamilton LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>Wilmington, Delaware 19801<br>(Counsel for Official Committee of Unsecured Creditors)<br>***Hand Delivery*** |

Ashley Doherty, Esq.
Federal Deposit Insurance Corporation
3501 Fairfax Drive
VS-D7022
Arlington, Virginia 22226
(Federal Deposit Insurance Corp. in its Corporate Capacity)
*First Class Mail*

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
(Counsel for JPMorgan Chase Bank, N.A.)
*Hand Delivery*

Bruce E. Clark, Esq.
Stacey R. Friedman, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(Counsel for JPMorgan Chase Bank, N.A.)
*First Class Mail*

Kurt F. Gwynne, Esq.
Mark W. Eckard, Esq.
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
(Counsel for The Trust Committee and the Ad Hoc Committee)
*Hand Delivery*

J. Andrew Rahl, Esq.
James M. Andriola, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
(Counsel for The Trust Committee and the Ad Hoc Committee)
*First Class Mail*

Jeffrey M. Schlerf, Esq.
Eric M. Sutty, Esq.
Fox Rothschild LLP
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington, Delaware 19801
(Counsel for Washington Mutual, Inc. Noteholders Group)
*Hand Delivery*

David S. Rosner, Esq.
Adam L. Shiff, Esq.
Paul M. O'Connor, III, Esq.
Seth A. Moskowitz, Esq.
Kasowitz Benson Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(Counsel for Washington Mutual, Inc. Noteholders Group)
*First Class Mail*

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801
*Hand Delivery*